Suzy C. Moore, Esq. (SBN 151502)
LAW OFFICES OF SUZY C. MOORE
8411 La Mesa Boulevard
La Mesa, CA 91942
Telephone:     619-469-9490
Facsimile:     619-469-9419

Attorney for Plaintiff AARON REEL

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AARON REEL | Case No. **'22CV526  W     KSC** |
| Plaintiff, | **COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF: DEMAND FOR JURY TRIAL** |
| vs. | |
| THE CITY OF EL CENTRO, a Public Entity; CHIEF OF POLICE BRIAN JOHNSON, individually and in his official capacity as Chief of Police of the El Centro Police Department; CITY MANAGER MARCELA PIEDRA, individually and in her official capacity; and DOES 1-10 inclusive. | **(1)    Negligent Hiring, Supervision and Training;** |
| | **(2)    Violation of Government Code Section 12940(h) Retaliation for filing Discrimination and Retaliation Complaints;** |
| Defendants. | **(3)    Violation of Government Code§ 12945.2(l) - Retaliation for taking leave under the California Family Rights Act;** |
| | **(4)    Employment Discrimination in Violation of California Government Code §12940(a);** |
| | **(5)    Failure to Remedy Discrimination and Harassment in Violation of Gov. Code §12940(k);** |
| | **(6)    Violation of Statutory Duty pursuant to California Labor Code §6310;** |
| | **(7)    Violation of California Labor Code §1102.5** |
| | **(8)    Violation of 42 U.S.C. §1983-First Amendment Retaliation** |
| | **(9)    Violation of 42. U.S.C. §1983-Due Process Violations** |

## JURISDICTION AND VENUE

1.    Jurisdiction of this court is invoked under 28 U.S.C. §1331 and §1343 as this is an action for money damages and injunctive relief under Title 42 U.S.C. § 1983 for First Amendment retaliation and due process violations. The Court has subject matter jurisdiction over

1  this action for the federal claims and has supplemental jurisdiction pursuant to 28 U.S.C. §1367

2  over the state law claims as they arise from the same nucleus of operative facts as the federal

3  claims. In addition, this Court has jurisdiction to provide declaratory and injunctive relief

4  pursuant to 28 U.S.C. §2201 and 2202.

5      2.    Venue is proper in the Southern District of California because the wrongs alleged

6  herein occurred within the City of El Centro, which lies in Imperial County, which is located

7  within the Southern District of California.

8                                    **PARTIES**

9      1.    Plaintiff, AARON REEL, was, at all times relevant herein, a resident of Imperial

10  County and employed by Defendant THE CITY OF EL CENTRO as a Commander of the El

11  Centro Police Department which resides in Imperial County, in the State of California, within the

12  jurisdiction of the above-entitled Court.

13      2.    Defendant CITY OF EL CENTRO is a duly constituted municipality organized

14  and existing under the laws of the State of California and is wholly situated in the County of

15  Imperial. The El Centro Police Department (hereinafter DEFENDANT or ECPD or department)

16  is an operating department of Defendant CITY OF EL CENTRO.

17      3.    Defendant Brian Johnson (Johnson) was at all times relevant the Chief of Police for

18  the El Centro Police Department. Plaintiff is suing Defendant Johnson both in his individual

19  capacity and in his official capacity. Plaintiff is informed and believes that Plaintiff Johnson was

20  intentionally acting as an individual in the constitutional violations and retaliatory conduct taken

21  against Plaintiff.  Plaintiff is further informed and believes that in doing the things alleged herein,

22  Johnson acted under the color of state law, within the course and scope of his employment, and

23  as an official policy-making authority over actions such as the ones at issue in this Complaint.

24      4.    Defendant Marcela Piedra (Piedra), was at all times relevant the City Manager for

25  the City of El Centro. Plaintiff is suing Defendant Piedra acting as an individual in the

26  constitutional violations and retaliatory conduct taken against Plaintiff. Plaintiff is further

27  informed and believes that in doing the things alleged herein, Piedra acted under the color of

28  state law, within the course and scope of her employment, and as an official policy-making

1   authority over actions such as the ones at issue in this Complaint. Plaintiff is informed and
2   believes and based thereupon allege that both Defendant Johnson and Defendant Piedra were
3   involved in a personal relationship and acted in concert to deprive Plaintiff of his constitutional
4   rights and such actions were taken intentionally exposing each of these Defendants to punitive
5   damages.

6         5.     Defendant Does 1-10 (Does) inclusive, are not unknown or unidentified at this
7   time, but are employees of the City of El Centro. Upon information and belief, Plaintiff alleges
8   that each Doe is in some manner responsible for the wrongs alleged herein, and that each such
9   defendant advised, encouraged, participated in, ratified, directed or conspired to do, the wrongful
10  acts alleged herein. When the true names and capacities of said defendants become known.
11  Plaintiff will seek relief to amend this Complaint to show the true identities of each said Doe in
12  place of their fictitious names as Does 1 through 10.

13        6.     Plaintiff is informed and believes, and based thereupon alleges, unless otherwise
14  alleged in this Complaint, that all relevant times herein, Defendants and Does 1 - 10 were the
15  agents, employees and/or servants, masters or employers of each other and of the remaining
16  DOES 1-10, and in doing the things herein alleged, were acting within the course and scope of
17  such agency or employment, and with the approval and ratification of each of the other
18  Defendants.

19        7.     As a direct and proximate result of the unlawful actions of Defendants, Plaintiff
20  was denied due process, suffered and continues to suffer from loss of wages and earnings,
21  emotional distress, damages to his reputation and other damages in amounts as yet unascertained,
22  but subject to proof at trial. Plaintiff has also incurred costs and attorneys fees in attempting to
23  vindicate his rights. In addition, Plaintiff is entitled to punitive damages against the individual
24  Defendants he has sued in their individual capacities and his entitled to injunctive and declaratory
25  relief as alleged herein.

26  **EXHAUSTION OF ADMINISTRATIVE REMEDIES**

27        8.   All necessary prerequisites to suit for Plaintiff's pendent state claims have been
28  exhausted. From November 24, 2019 through the date of the filing of this lawsuit, Plaintiff has

1    either closed his investigations and/or had right to sue notices issued regarding all of the adverse

2    employment actions he was subjected to during his tenure with Defendants. (Exhibit 1-3) In

3    addition, on October 8, 2021, Plaintiff filed a claim for damages for the retaliatory adverse

4    employment actions resulting in his termination, naming all Defendants and received a rejection

5    of his claims on October 27, 2021. Exhibit 4.

6                              **FACTS COMMON TO ALL CAUSES**

7          9.    Plaintiff Aaron Reel, has spent his entire career of 25 years in law enforcement with

8    the El Centro Police Department working for Defendant City of El Centro. After completing the

9    San Diego Police Academy in 1996, Mr. Reel was ultimately hired as a full time police officer

10   after serving as both a volunteer and reserve police officer. In 2004, he was promoted to a Special

11   Agent in the Narcotic Task Force, and became a Detective serving in these capacities for

12   approximately six years. Thereafter, he was promoted to a police Sergeant in 2009. In 2013, Mr.

13   Reel was promoted to the position of Commander and was acting Executive Commander for 14

14   months, and thereafter Commander directly under to Executive Commander and the Chief of

15   Police. However, in 2021, Mr. Reel's long, honorable twenty-five year career unceremoniously

16   came to an end with his involuntary separation from the ECPD, after he reported his reasonable

17   belief that Defendant, Chief of Police Brian Johnson, was discriminating against female

18   employees, retaliating against him for his reports, and had jeopardized the safety of police officers

19   by not following Covid-19 protocols.

20         10.    To demonstrate the pretextual nature of the Defendant Chief Johnson and the

21   City's decision to terminate him, Commander Reel had an impeccable 25 year unblemished

22   record.  He consistently received high performance ratings on his evaluations, outstanding officer

23   and team member of the year awards. By 2001, after serving for four and a half years, he had

24   become the officer others sought out for advice. In 2002, Mr. Reel was recognized as a senior

25   member of the SWAT team and had participated in several successful missions. At this point, Mr.

26   Reel was certified as a firearms instructor, an armorer, a field training officer and an off-road

27   vehicle instructor. In 2004, Mr. Reel had become a senior officer in the department and had been

28   designated as one of the team leaders of the SWAT team. Mr. Reel had become known for being

     invariably punctual, the last to leave the office and rarely ever called out sick. Also, Mr. Reel was

1   selected as the ECPD representative in the Imperial County Narcotics Task Force. Mr. Reel had

2   led the task force in arrests, accounting for 25 percent of all arrests made.

3       11.   In August of 2004, Mr. Reel received a commander's commendation for his

4   excellent work on an investigation involving narcotics dealers in the City of El Centro. By 2005,

5   Mr. Reel was recommended to assume a leadership role after his outstanding work as the Training

6   Coordinator. In 2007, Mr. Reel was an NFT agent of the year, and was recognized both by the

7   City Mayor and California State Legislature and Representative Bonnie Garcia, for outstanding

8   community service in drug enforcement. In October of 2007, he was performing exceptionally in

9   criminal investigations and on August 14, 2008, Mr. Reel received a commendation from the

10  Chief of Police Harold Carter, for his professionalism and performing his duties in an exemplary

11  manner.

12      12.   On April 1, 2009, Mr. Reel was promoted to Sergeant. He had several assignments

13  as a supervisor including Sergeant Detective, Administrative Sergeant and SWAT Supervisor. In

14  six months of being a supervisor, Mr. Reel was commended for some solid supervisory decisions.

15  In January of 2010, his progress was above average for new supervisors.

16      13.   On June 30, 2013, Mr. Reel earned his Bachelors in Criminal Justice

17  Administration. Two months later, Mr. Reel was successful in the test for the Commander

18  position. On October 29, 2013, based upon his performance and dedication to the City of El

19  Centro Police Department, Mr. Reel was promoted by then Chief of Police Jim McGinley to

20  Commander and joined the management team. Plaintiff performed well in his position,

21  supervising approximately 30-40 staff members. In 2014, upon the retirement of Chief McGinley,

22  Executive Commander Eddie Madueno became the Chief of Police. This left the Executive

23  Commander position open. A decision was made to have Commander Reel act as Acting

24  Executive Commander for the first 14 months and Alvaro Ramirez assumed the role for an

25  additional 14 months. This would allow both men to obtain valuable management experience in

26  the Department due to past turnover rates in the management team.

27      14.   On May 27, 2014, Commander Reel began his assignment as the Acting Executive

28  Commander.  In this capacity, Commander Reel met on a regular basis with the two Commanders

1   Robert Sawyer and Alvaro Ramirez to share ideas related to improving departmental operations.
2   Chief of Police Eddie Madueno evaluated Reel in his position as Acting Executive Commander
3   and solicited input  from Commander Alvaro Ramirez, Commander Robert Sawyer and Staff
4   Assistant to the Chief of Police, Amanda Curiel. The overall assessment was that Mr. Reel was
5   very helpful to them in the performance of their respective duties and they appreciated him. Not
6   only did Plaintiff fulfill his duties in an exemplary manner, during this 14 month period, but he
7   also managed to earn his Masters in Public Administration by November 15, 2015.

8        15.    When Mr. Reel finished his term, Alvaro Ramirez became Acting Executive
9   Commander and Mr. Reel reported directly to him. According to Mr. Ramirez, Mr. Reel had
10  worked well with those supervisors under his command. Ramirez opined that he had no doubt Mr.
11  Reel believed in the department's mission statement and his decisions had been made in the best
12  interests of the Department. From 2015 forward, the El Centro Police Department had been
13  experiencing an understaffed management team, which made Mr. Reel's contributions as Acting
14  Executive Commander and Commander not only valuable but also critical. There were several
15  retirements in a short period and six vacancies creating a burden on the Police Department.
16  Commander Reel did not complain about the additional workload and continued to perform
17  exceptionally given the conditions.

18       16.    In July of 2017, Alvaro Ramirez became the official Executive Commander.
19  Shortly thereafter, in approximately December of 2017, Chief of Police Eddie Madueno retired
20  leaving the City of El Centro to recruit for a new Chief of Police. In the meantime, for
21  approximately three to four months, Ramirez was the Acting Chief of Police while several
22  candidates were interviewed for the position.

23       17.    In April of 2018, Defendant Brian Johnson was hired as the new Chief of Police for
24  the City of El Centro after a short stint of two and a half years as Chief of Police at Upland Police
25  Department. Unfortunately, Defendant City of El Centro, by and through Defendant City
26  Manager, Marcela Piedra, failed to perform a mandatory POST background check on Defendant
27  Brian Johnson. The post-background check is a mandatory statutory requirement pursuant to Cal.
28  Code Regs. Tit. 11 §1953.  POST checks ensure the candidates are screened for their moral
    character, communication skills, interpersonal skills and trustworthiness.

1    18.    Plaintiff is also informed and believes that Defendant City of El Centro, by and

2    through Defendant City Manager Marcela Piedra, also failed to administer a polygraph

3    examination to Defendant Johnson. Had these background measures been taken, the information

4    would have revealed that Defendant Brian Johnson had been forced to resign as the Chief of

5    Police for Upland Police Department in October of 2017 due to a vote of no confidence by the

6    Upland Police Officer's Association. The impetus for Defendant Johnson's forced departure from

7    Upland was his retaliatory terminations of 29 year veteran Captain Anthony Yoakum and 23 year

8    veteran Sgt. Marcus Simpson, after they had reported Chief Johnson's misconduct. These

9    management officers had reported Defendant Johnson for violating officer safety protocols and

10    exposing the Upland Police Department to liability for his illegal actions for false arrests at a

11    marijuana dispensary. Plaintiff is informed and believes that Defendant Brian Johnson was

12    formally reprimanded for his officer safety violations and other illegalities which was placed in

13    his personnel file. A POST background would have revealed a pattern and practice of retaliatory

14    conduct unbecoming of the Chief of Police.

15    19.    After Yoakum and Simpson reported Defendant Johnson's conduct, these senior

16    management officers were falsely accused of misconduct, insubordination and improperly

17    disparaging the Chief of Police Brian Johnson and were placed on administrative leave and,

18    thereafter, terminated. Both officers brought lawsuits alleging numerous violations of their civil

19    rights against the City of Upland and Defendant Johnson both in his individual and official

20    capacity. Plaintiff is informed and believes that a POST background would have revealed a

21    pattern and practice of taking adverse employment actions against employees who engage in

22    protected activity.

23    20.    A further investigation of Defendant Brian Johnson's tenure at Upland Police

24    Department revealed that in the nearly two and a half years he was there, Chief Johnson was at

25    odds with nearly four fifths of his officers who either resigned or were unfairly terminated and

26    that he was out of step with the men and smaller complement of women he commanded resulting

27    in his forced resignation.

28    21.    Unfortunately for Plaintiff Aaron Reel, Defendant Brian Johnson's pattern and

practice of taking adverse action against officers who reported his misconduct was to be repeated

1  at the City of El Centro causing the loss of his 25 year career. At the time of Defendant Brian

2  Johnson's hire, he was the first in command as the Chief, the second in command was Executive

3  Commander Alvaro Ramirez and there were two commanders, Plaintiff Reel and Commander

4  Robert Sawyer. The same Administrative staff assistant, Amanda Curiel who had served under

5  both Chief McGinley and Chief Madueno was now serving under Chief Johnson and had worked

6  with Commander Reel for several years.

7       22.    In approximately August of 2018, in the first few months of Defendant Chief

8  Johnson's tenure, Chief Johnson appeared to respect Commander Reel's leadership skills and

9  commitment to the El Centro Police Department. In a letter drafted to the Commission of Peace

10  Officer Standards and Training, Chief Johnson gave the highest recommendation to nominate

11  Commander Reel to attend the POST Command College Program. His recommendation stated in

12  pertinent part:

13          "As the Support Services Commander, Aaron provides the
          leadership and guidance to both sworn and civilian personnel with the El
14          Centro Police Department. Commander Reel is a progressive leader who
          is dedicated to the law enforcement profession...He has proven that he has
15          the skill set, commitment, and discipline...Commander Reel has taken the
          leadership role to develop and lead the personnel assigned to our training
16          and background unit to maximize their effectiveness. He has helped to
          develop a plan to fill the critical vacancies within our sworn and civilian
17          ranks... In the next three to five years, Commander Reel will have a
          critical role in the design, review and awarding of a contract through the
18          RFP process to build the new El Centro Policy Facility."

19       23.    However, in the following months, Commander Reel observed that Chief Johnson

20  had an aggressive management style with a quick temper and often using foul and vulgar language

21  in the workplace. Commander Reel also observed Chief Johnson's disrespectful treatment of

22  women often causing the female staff to be left in tears due to Plaintiff's abusive, foul and

23  inappropriate language. At first, Plaintiff Reel attempted to respect the chain of command by

24  reporting to the Chief himself as his supervisor that the female staff were upset and gently suggest

25  he apologize. However, this was never done. In addition, Defendant Johnson would make several

26  demeaning and degrading comments about females to the Plaintiff to the effect that he should be

27  aware that "women in positions of power can be vicious" and that the Director of Human

28  Resources was difficult to work with "because she was a woman."  Plaintiff made another

attempt to suggest to Defendant Johnson that his comments could be perceived as sexist at which

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF: DEMAND FOR JURY TRIAL

1    time Chief Johnson directly threatened Plaintiff Reel by telling him that he was lucky he had made

2    those comments in a closed door meeting.

3        24.    Defendant Johnson's inappropriate conduct continued into 2019.  On March 19,

4    2019, Chief Johnson raised his voice and used vulgarity to his female staff assistant Ms. Curiel

5    when she submitted the budget request for training to Mr. Johnson. Defendant Johnson became

6    enraged when Ms. Curiel submitted the documents to him and yelled at her, "Aaron is fucking

7    working for me, he needs to ask my permission" in front of other staff.  There were several other

8    instances Commander Reel and management staff witnessed Chief Johnson verbally abuse his

9    administrative assistant Ms Curiel. This conduct was offensive and created a hostile environment

10    for Ms. Curiel and those around her. Commander Reel attempted to intervene on Ms. Curiel's

11    behalf to remedy the hostile environment and encouraged Defendant Johnson to apologize to her.

12    Mr. Reel's objections caused Defendant Johnson to become more irate and to direct threats

13    toward Commander Reel. In July of 2019, Executive Commander Alvaro Ramirez abruptly

14    resigned. Many staff members believe that his resignation was prompted by the hostile

15    environment created by Defendant Johnson.

16

17        25.    Chief Johnson's retaliatory animus toward Commander Reel came to a head on

18    August 16, 2019 when Chief Johnson accused Mr. Reel of not apprising him of a school threat

19    that Commander Reel believed he had under control and, in fact, turned out to be hyperbole; and

20    not a real threat. Chief Johnson berated and humiliated Commander Reel by engaging in

21    inappropriate, loud and vulgar language directed at Plaintiff, which was heard by several other

22    staff members. Commander Reel's peers and subordinates heard Defendant Johnson scream at

23    him using the f word asking him how long he had been with the department, how long he had

24    been a sergeant and mocking him that he was a commander. During this berating of the Plaintiff,

25    Defendant Johnson threatened Commander Reel that he would never promote him to the

26    Executive Commander position. The staff that overheard this exchange felt very uncomfortable

27    and embarrassed for Commander Reel to the point that they collectively made a decision to knock

28    on the door to alert Chief Johnson that everyone could hear what he was saying.

26.    On August 16, 2019, Plaintiff Reel made a formal complaint against Defendant Johnson with the Director of Human Resources due to the culmination of the discriminatory conduct directed toward female employees; his hostility directed against him, and Plaintiff's inability to work out a remedy with the Chief. In the complaint, Plaintiff Reel reported his concerns that Chief Johnson had engaged in sex discrimination against female employees and hostility directed toward him and that he feared retaliation. As a result of these reports, Human Resources Director hired an outside investigating company to investigate Commander Reel's claims.

27.    On or about September 3, 2019, in close proximity to Plaintiff Reel's complaint, Chief Johnson informed Commander Reel that a decision had been made to change the Executive Commander position into a Deputy position that would serve at will without any due process protections. Despite Defendant Johnson informing Plaintiff Reel he would never promote him, he actually offered Commander Reel the at-will position of Deputy Chief which he declined. Plaintiff is informed and believes the offer was made in order to be able to terminate Plaintiff at will without affording him due process.

28.    In addition, on September 19, 2019, Defendant Johnson violated El Centro Police Department policy and procedures by failing to place Commander Reel in the position of Acting Chief of Police in his absence with a 10 percent increase in pay. Instead, Chief Johnson selected Commander Ray Bonillas who had only been in the position for less than a year instead of Commander Reel who had six years seniority. On September 23, 2019, when Defendant Chief of Police Johnson returned from his vacation, he informed Plaintiff Reel that Officer Thompson (under Commander Reel's chain of command) had filed a complaint of unfair treatment against Reel. Interestingly, Officer Thompson's complaint contained allegations of his perceived belief that administrative assistant Curiel and Commander Reel were trying to undermine the Chief and his opinion that Reel was being "insubordinate to the Chief" when, in fact, an ongoing investigation was being conducted as to the Chief's discriminatory and retaliatory animus toward Commander Reel and Curiel. The Director of Human Resources believed that Chief Johnson was behind the allegations made by Officer Thompson.

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF: DEMAND FOR JURY TRIAL

29. At the time of Thompson's complaint, Plaintiff had only supervised Officer Thompson for approximately seventeen days and found the timing of this complaint and the Chief's knowledge of it to be suspect. In addition, prior to Officer Thompson coming under the supervision of Commander Reel, the City of El Centro had settled the largest police misconduct wrongful death settlement of $4.1 million in the history of the Southern District of California for the negligent supervision and training of Officer Thompson. Officer Thompson had also been involved in a lawsuit in prior years for engaging in sexual harassment resulting in another million dollar settlement. Needless to say, Officer Thompson had serious performance issues prior to being supervised by Commander Reel. Director of Human Resources had actually warned Defendant Johnson that he should review Officer Thompson's personnel file prior to making a decision to promote him. In fact, Chief Johnson had encouraged Commander Reel to issue Officer Thompson a counseling memo for performance deficiencies a month earlier on August 13, 2019 prior to Commander Reel formally complaining about Defendant Johnson.

30. While these investigations were on going, in the September and October of 2019 time frame, Plaintiff Reel e-mailed Defendant Johnson his list of accomplishments for the 2018-2019 time frame as was his custom and practice. He sent the e-mail to the Chief because Executive Commander Alvaro Ramirez, who Plaintiff directly reported to, had left the Department and Chief Johnson was now in charge of his performance review. Although Plaintiff's review was an overall satisfactory rating, the list Plaintiff sent Chief Johnson was a two page list of the achievements he had accomplished in his position as Commander. Chief Johnson ignored Plaintiff's e-mail and none of those items were placed in his annual review.

31. On November 6, 2019, the City of El Centro's outside administrative investigation issued a confidential report to the City of El Centro regarding Commander Reel's August complaint of discrimination and retaliation against Chief Johnson, with two sustained findings: (1) Defendant Chief Johnson had used inappropriate language and raised his voice in the presence of subordinate employees in 2019 and (2) Defendant Chief Johnson had violated department policy concerning succession of command on September 19, 2019. Despite these sustained findings, no one informed Commander Reel of the results of the investigation. Unbeknownst to

Plaintiff Reel, Chief Johnson was issued a reprimand in his personnel file for these sustained findings. Despite these sustained findings, Plaintiff Reel was not immediately compensated for the loss of his pay entitlement when he was deprived the role of Acting Chief.

32.     On or about November 20, 2019, the El Centro Police Department was audited by the California Commission on Police Officers and Training. The Commission determined that Defendant City of El Centro had failed to perform a background investigation on Defendant Brian Johnson in violation of the law. Plaintiff is informed and believes that the City of El Centro was ordered to complete a POST background on Chief Johnson by December 20, 2019 or they would order him to resign.  Plaintiff is further informed and believes that Defendants Johnson and the City of Centro deliberately failed to obtain the appropriate background information, which would have demonstrated Chief Johnson's pattern and practice of retaliation to Officers in his chain of command that engage in protected activity by reporting his illegal conduct.

33.     On November 25, 2019, Plaintiff contacted the Department of Fair Employment and Housing to open an investigation for discrimination, harassment and retaliation. The DFEH claim stated in pertinent part:

> "Chief Johnson has engaged in a year and a half long campaign to accost, attack, and otherwise discredit and isolate me in the workplace. This has gone on shortly (a couple of months) after he was hired and has been intermittent in frequency however consistent in reoccurrence. I have been yelled at and cussed at, and personally attacked in a number of interactions by Chief Johnson to the point that I filed a complaint against him with the City of El Centro Police Department on August 19th of this year. The complaint consisted of workplace harassment, mistreatment and unprofessional misconduct. The complaint is being investigated by an outside firm on behalf of the City of El Centro. During the investigation, I disclosed Chief Johnson's sexist and defamatory remarks about women, specifically women in positions of power, and my confronting him on such statements. Chief Johnson is aware of the complaint and has remarked to others, maybe to the point even slightly manipulating the process/investigation."

This DFEH complaint and the right to sue is attached to this complaint as Exhibit "1)

34.     On or about November 28, 2019, Chief Johnson went on vacation and again intentionally retaliated against Plaintiff by selecting the other Junior Commander Ray Bonillas for Acting Chief in violation of Department policy. This deprived Plaintiff to the title and extra

1  incentive pay he was entitled to receive. Plaintiff again reported to Human Resources Director that

2  Defendant Johnson was continuing to retaliate against him for violating department policy

3  because he had filed a complaint. Again, despite the City having a Confidential Report sustaining

4  findings that Chief Johnson's actions were policy violations, Plaintiff was not immediately paid

5  for the loss of the opportunity to be placed in as Acting Chief.

6      35.    In further retaliation, in December of 2019, Defendant Chief Johnson deliberately

7  changed the Department policy along with the approval of Defendant City Manager Marcela

8  Piedra that the Chief now had the discretion to choose the Commander he wished to be in charge

9  in the event of his absence. This effectively caused Commander Reel to be permanently blocked

10  from exercising his right to act in the capacity of Acting Chief for the remainder of his tenure.

11  Plaintiff is informed and believes that this decision was done intentionally to deprive Plaintiff of

12  his rights and was in violation of the law.

13      36.  On December 11, 2019, Plaintiff was informed by several of his direct report

14  subordinate officers that they had been interrogated by Defendant Brian Johnson while Plaintiff

15  Reel had been out taking care of one of his sick little girls. These subordinate officers in

16  Commander Reel's chain of command informed Plaintiff that Chief Johnson was trying to make

17  an issue out of the detail regarding a Christmas parade in an attempt to find some fault with

18  Commander Reel while he was out of the office. Upon his return to the office, Staff Assistant to

19  the Chief of Police Amanda Curiel informed Commander Reel that "he needed to watch his back"

20  because Chief Johnson was after him. Other staff members offered their support to Commander

21  Reel that he should not have to tolerate this type of retaliatory behavior.

22      37.    After learning of Chief Johnson's behavior, that same morning of December 11,

23  2019 at 8:54 a.m., Plaintiff Reel reached out again to Human Resources Director by e-mail stating

24  in pertinent part:

25          "I really hate coming to you with this however, I really can't turn
            to anyone here with the issues. My tank is pretty full when it comes to my
26          stress levels. I have been subjected to quite a bit and really have to come
            to grips with the fact that I am in need of something other than what I
27          have tried. I'm losing sleep, can't sleep, wake up early (like this morning
            at 3:30 am and with work weighing on my mind. I have anxiety, which I
28          am honestly unfamiliar with, my heart pounds through my chest thinking
            about some of the things I have been subjected to. In the absence of
            another commander, I have taken on additional workload which used to

be assigned to the commander. In many cases, I would thrive on the
challenge however, I can't focus, my mind wanders, and even at home all
I think about is the negativity. I was home taking care of a sick little girl
over the last two days only to return to work to be warned by an employee
that I need to be careful because there is a target on my back...I know that
you and I had a conversation with regard to the policy issue, retaliation
(either real or perceived) and by being generally isolated by this chief. All
of this is taking a toll and I absolutely, although reluctantly and
embarrassingly admit that I may not be handling all the stresses very well
on my own...If you have time, I would like a little direction."

38.   Under the direction of HR Director, Commander Reel filed a worker's compensation claim due to Defendant Johnson's discriminatory and retaliatory actions. Plaintiff had never had any treatment nor symptoms prior to this time. On December 11, 2019, Plaintiff Reel was seen by a physician which immediately placed him on an anti-anxiety medication of Ativan and sent him for a psychological assessment. Commander Reel was diagnosed with anxiety and depression, and was placed on medical leave. Upon his return from medical leave, the worker's compensation physician advised him to take five minutes per hour to psychologically recharge to be able to handle his work environment.

39.     On January 27, 2020, Commander Reel returned after six and a half weeks of medical leave to find that his office belongings had been packed up and his office had been moved to a much smaller office next to the Chief's office. Commander Reel was also stripped of all his previous job duties: field operations, SWAT, field training program and all areas related to police operations. Commander Reel was told by Chief Johnson that he was to assume the duties of an "administrative" Commander, which is the less attractive of assignments and usually given to the junior Commander. Plaintiff formed the reasonable belief that he was continuing to be retaliated against. Despite repeated requests by Commander Reel regarding his job description, Chief Johnson ignored him and shut him out of all important meetings or decisions regarding the organizational structure and informed him that he would find out his duties once the new Deputy Chief was hired. From this point forward, Chief Johnson refused to meet with Commander Reel one on one. In the meantime, Commander Reel continued with his psychological therapy to deal with the adverse employment actions and the continuous hostile environment. After he returned from medical leave and was continuing his therapy, his personal therapist, Dr. Quiero, advised

1   him that he needed to psychologically unplug himself from his job while not at work by turning

2   off his phone and e-mails, and to just spend time with his family.

3        40.    On January 28, 2020, Commander Reel was finally informed that his original

4   discriminatory complaint against Chief Johnson had been sustained and that he was entitled to the

5   pay of Acting Chief that he had been deprived.  Despite the Director of HR directing Chief

6   Johnson to pay the Plaintiff, he refused.  Plaintiff continued to not receive his extra compensation.

7        41.    On February 11, 2020, Commander Reel received his performance evaluation from

8   Defendant Chief Johnson which was favorable and did not contain any performance issues or

9   deficiencies. However, unbeknowst to Plaintiff, Defendant Johnson was negotiating the re-hire of

10  former Commander Robert Sawyer who had previously been at El Centro to fill the position of

11  Deputy Chief and was formulating a plan to get rid of Commander Reel.

12

13       42.    On February 18, 2020, Chief Johnson hired Robert Sawyer as the new Deputy

14  Chief. Chief Johnson admitted to the Director of Human Resources and other City Management

15  officials that he was bringing back Sawyer so he could get rid of Commander Reel. Prior to the

16  arrival of Deputy Chief Sawyer, the HR Director had informed Plaintiff that there were no

17  sustained findings with regard to Officer Thompson's complaints and that it had been completed

18  by the outside investigation firm. Without the Director of Human Resources' knowledge ( who

19  was in charge of the investigation), Chief Johnson directly contacted the outside investigator and

20  directed him to begin interviewing additional witnesses to compile derogatory information in

21  order to build a case against Commander Reel as it was his intent to separate him from the

22  department. In addition, Chief Johnson directed Deputy Chief Sawyer to collect any information

23  regarding Commander Reel that could be utilized against him. This plan was condoned and

24  ratified by Defendant City Manager Marcela Piedra.

25       43.    After the hiring of Deputy Chief Sawyer, Commander Reel was now under the

26  direction of Deputy Chief Sawyer who Chief Johnson had shared his discriminatory animus

27  against.  On March 13, 2020, the City of El Centro declared a local state of emergency and

28  Commander Reel was designated and took an active role as the Planning Chief for the Emergency

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF: DEMAND FOR JURY TRIAL

1  Operations Center for the City of El Centro. This position required him to submit reports by 7:00

2  a.m. to the Fire Chief, which effectively changed his work hours to begin his shift at

3  approximately 5-5:30 a.m.

4        44.    On March 30, 2020, during a command staff meeting, Commander Reel identified

5  two police officers who met the criteria of high-risk individuals who should be protected from the

6  risk of becoming infected with Covid-19. Commander Reel had been utilizing the Center for

7  Disease Control guidelines and had educated himself regarding high-risk factors including age,

8  obesity, medical issues such as immune deficiencies, diabetes, cancer survivors, and respiratory

9  illness. Commander Reel was intimately aware of the medical conditions of all officers.

10  Commander Reel identified two officers who met the high-risk category and strongly urged

11  Command Management to remove him from the field, based on his preexisting conditions.

12  Commander Reel identified one of the Officers, who will be referred to as Officer C, and

13  disclosed that he met all the criteria for high risk as he was over 50, overweight, diabetic and a

14  recipient of an organ transplant.    In attendance at this command staff meeting was Chief Brian

15  Johnson, Deputy Chief Robert Sawyer, Commander Ray Bonillas and staff assistant Amanda

16  Curiel, and Commander Reel. When Commander Reel requested that two officers be relieved of

17  field duties, he received immediate pushback from his chain of command because it would strain

18  staffing levels on patrol. As a consequence, no one acted on this recommendation and eight days

19  later Officer C was diagnosed with Covid-19. The other officer that Commander Reel had

20  identified as high-risk, who will be referred to as Officer H, also tested positive for Covid-19

21  which spread to his family, including the Officer H's wife, who became gravely ill and was

22  placed in intensive care. In addition, Commander Reel was concerned that the El Centro Police

23  Department did not have the proper protocols in place for the N-95 masks for their officers.

24        45.    When Officer C became ill, Commander Reel reminded Deputy Chief Sawyer and

25  Commander Bonillas that he had told them back in March that Officer C had needed to get out of

26  the field. Unfortunately, on May 27, 2020, Officer C was in critical condition. That same day,

27  Chief Johnson instituted new safety protocols, which Commander Reel had been trying to

28  effectuate since March.

46.     On June 2, 2020, after Officer C's condition became grave, Commander Reel became extremely emotional and went behind closed doors with Deputy Chief Sawyer and stated: "I f*ing told you that this was going to happen." The following day, Officer C passed away from Covid-19 and was considered an in the line of duty death. Plaintiff sought legal advice as to his rights in reporting his reasonable belief that the Command Management team had not properly protected Officer C by taking the necessary safety precautions by removing him from the field which contributed to the death of this Officer. At this point, Commander Reel was acting as a private citizen in objecting to the manner in which the El Centro Police Department Command had violated officer safety protocols to reduce the risk of Covid-19 infection.

47.     After the death of Officer C, several subordinate staff members who had known this officer for several years approached Commander Reel asking him to ask if Deputy Chief Sawyer could deliver the devastating news about Officer C's passing because he had known him the longest. In response to this request, Commander Reel privately informed Deputy Chief Sawyer that he thought he should be the one to inform the staff as he had been approached about the issue because of the long-standing relationships Commander Reel, Sawyer and Officer C had which spanned approximately 25 years. Plaintiff is informed and believes that Chief of Police Johnson was angry at Commander Reel because he had reported his belief that the Command Management team had not properly protected Officer C. Plaintiff is further informed and believes that Chief Johnson took offense to Plaintiff's private request that Deputy Sawyer handle the news of Officer C's death, which Plaintiff did not mean any disrespect, and was not even his idea but a message he passed to Chief Sawyer from other staff members.

48.     On June 8, 2020, Commander Reel and other staff members were transporting Officer C's body from the mortuary which was a very emotional event for all staff who were very close to this officer who had passed away. As Commander Reel was assisting other staff officers with the placement of a flag over the transport box of Officer C's body, Chief Johnson approached Commander Reel and asked him who was coordinating the parking, at which time Commander Reel responded that he did not know but that he was hopeful that it would self-organize. Although Deputy Chief Sawyer had the full oversight of the coordination efforts of

1  transporting Officer C home, Chief Johnson became angry with Commander Reel who told him

2  "if you ever f*ing disrespect me in front of my troops again, I will sideline your ass in a f*ing

3  heartbeat." After this interaction, Chief Johnson began to walk off. Plaintiff told Defendant

4  Johnson he did not know what he was talking about because he was not in charge of the event and

5  he was merely helping as asked. Chief Johnson told him: "you are f*ing Commander of Police,

6  you didn't make any of the decisions here?", Mr. Reel said no. Mr. Reel was visibly shaken by

7  this event which was noticed by the surrounding officers and he was once again embarrassed and

8  humiliated by Defendant Johnson's actions, Within a couple of hours of this incident, Mr. Reel

9  reported this additional threat by Defendant Johnson to the  HR Director by text requesting to

10  meet with her again.

11       49.    On June 9, 2020, the following day, Plaintiff met with HR Director, reporting that

12  he was continuing to be retaliated against and that he wanted to formally report the failure of the

13  El Centro Police Department to protect its most at risk personnel from Covid-19. During this

14  meeting, HR Director requested that he place both his formal complaints in writing.  Plaintiff Reel

15  complied and turned in two separate complaints: (1) for continuous retaliation and hostile

16  environment due to his earlier reports of Johnson's conduct and (2) for officer safety violations of

17  the command staff, including Defendant Chief Johnson, which contributed to Officer C's

18  contracting Covid-19 and his unfortunate death.  Plaintiff turned in his formal written complaints

19  on or about June 15, 2020.

20       50.    On July 7, 2020, Plaintiff was informed by the HR Director that she had notified

21  Defendant Brian Johnson of his complaints. HR Director had waited until Officer C had been laid

22  to rest. Defendant Brian Johnson immediately went into defense mode suggesting that he intended

23  to place Plaintiff Reel on administrative leave but could not articulate any valid reasons to the HR

24  Director. HR Director also became aware that Defendant Johnson was falsely spreading

25  information that Officer C had requested to stay in the field which his wife had vehemently

26  denied.

27       51.    The following day, on July 8, 2020, HR Director met with Commander Reel and

28  asked if there would be any possibility to mediate the complaints given all of the investigations

1   that were going to have to be conducted. Commander Reel explained that he had been attempting

2   to remedy the hostile environment caused by Chief Johnson since August of 2018, and he

3   believed that he had been subjected to so much retaliation he was not sure he would be able to

4   continue to work with him. The next day on July 9, 2020, Commander Reel was placed on

5   administrative leave pending an investigation into "potential misconduct and policy violations."

6   The vague allegations violated Government Code Section §3303(c) by failing to properly notify

7   Plaintiff of the allegations levied against him. Chief Johnson's request to place Commander Reel

8   on administrative leave just two days after becoming aware of Plaintiff's retaliation and officer

9   safety violations demonstrates clear evidence of Chief Johnson's retaliatory intent.

10          52.     Defendant Johnson lied to Commander Reel regarding the reasons he was being

11  placed on administrative leave by telling him it was due to another employee complaint against

12  him and that he would have to find out the reasons through contacting Human Resources. When

13  Commander Reel contacted HR Director about the complaint, she confirmed that the Chief was

14  the one who had issued the complaint and that she had notified Defendant Johnson of Commander

15  Reel's formal complaints just days prior to his decision to place Commander Reel on leave.

16          53.     On July 10, 2020, Plaintiff followed up with his Department of Fair Employment

17  and Housing investigation which informed him that his case of 2019 against Defendant Johnson

18  was still being investigated. Commander Reel also contacted the Department of Labor to file an

19  OSHA complaint for them to investigate the lack of Covid-19 field protocols and the death of

20  Officer C.

21

22          54.     On August 25, 2020, Defendant Johnson finally came up with some false

23  allegations against Plaintiff Reel after interviewing and collecting information which he had no

24  first hand knowledge and e-mailed HR Director:

25                  "The following is a summary of the allegations of
        misconduct alleged against Commander Reel. As we discussed during our
26      meeting, I am not a witness to all the allegations, but they were brought to
        my attention as the Police Chief. The allegations fall into the following
27      allegations of misconduct:

28                  1.      Allegations of dishonesty, false and misleading statements
        while Commander Reel was on duty, in the performance of his official

duties. Command staff will need to be interviewed for these allegations, Former Exec. Commander Ramirez will probably need to be interviewed too.

       2.     Insubordination, Conduct Unbecoming an Officer, and unprofessional behavior in violation of department and City policy. Various department employees will need to be interviewed regarding these allegations.

       3.     Made false complaints against me that could be violation of various state laws and statutes. Some of the allegations he's made against me, I believe that he knowingly made the complaints against me, knowing they were false and there was no evidence to support his allegations. If true, these are forms of creating a hostile work environment and retaliation.

       On another note, what is the status of Sgt. Thompson's complaint. I am sure he will be asking me now that I am back to work."

55.     On August 26, 2020, the City Attorney for the City of El Centro, Elizabeth Martyn, informed the DFEH in the City's response to Plaintiff's 2018 complaint that two findings were sustained against Chief Johnson for violation of police department policy and represented that Commander Reel was in the process of being paid for each time that he was not designated as the acting Police Chief. However, Commander Reel was not paid until October of 2020, which demonstrates that it took two years for the City of El Centro to pay what Commander Reel was entitled to, two years earlier. In this City Attorney's response she also reported that Commander Reel had filed several other complaints against Chief Johnson for retaliation, and that an internal investigation had begun on those complaints. This was untrue. There was not an investigation regarding Plaintiff's retaliation complaints. Rather, the investigation was about to begin  focusing, instead, on Chief Johnson's trumped up false allegations regarding Commander Reel's performance.  Plaintiff contends that there was a continuous violations of rights from the first time he reported Defendant Johnson's conduct and brings this lawsuit under the continuing violations theory.

56.     On September 18, 2020, while Mr. Reel was on administrative leave pending the investigation of Chief Johnson's allegations against him, Commander Reel received a notice of intended disciplinary action-written reprimand and a 20-day suspension on Officer Thomson's complaints that had earlier been closed. This was the earlier investigation that had been reopened by Defendant Johnson who had gone behind HR Director's back and poisoned the investigation

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF: DEMAND FOR JURY TRIAL

1  by adding new charges and witnesses, that Commander Reel had never had an opportunity to
2  defend himself against. Although Plaintiff Reel was on administrative paid leave pending another
3  investigation, a twenty day suspension for supervising a problem employee over a 17 day period
4  was excessive and based on false allegations. Defendant Johnson tampering with the investigation
5  and violated Commander Reel's due process rights as he was not able to rebut the accusers that
6  Defendant Johnson had illegally added to the already closed investigation. In addition, Plaintiff
7  never received the actual written reprimand that was referred to in the disciplinary suspension.

8       57.    On September 24, 2020, Defendant City of El Centro began an investigation through
9  an outside investigator for what Plaintiff Reel believed was for his two complaints regarding
10 continual retaliation and officer safety violations. Instead, the investigation focused on what
11 Defendant Chief Johnson had alleged against Commander Reel regarding dishonesty,
12 insubordination and making false complaints against Chief Johnson. As Chief Johnson had done
13 with the previous Thompson investigation, he manipulated and coerced his command staff to
14 make false allegations and even went to lunch with the investigator. At no time was Commander
15 Reel's complaints addressed during this investigation as it was one sided and none of Commander
16 Reel's witnesses were interviewed. Plaintiff is informed and believes that the City of El Centro
17 further violated his due process rights by not providing an independent investigation with a
18 separate investigator regarding the continuous retaliation and the reporting of officer safety
19 protocols.

20      58.    On October 1, 2020, Mr. Reel contacted the Employee's Assistance Program for a
21 face to face counseling referral for stress and anxiety. He finally got an appointment with a
22 counselor on October 9 and was diagnosed with generalized anxiety disorder.

23      59.    On November 24, 2020, HR Director reviewed Plaintiff Reel's rebuttal to the
24 Suspension and reduced the original 20-day suspension to a 3-day, based on the lack of evidence
25 and the tainted investigation.

26      60.    This would be short lived, however, because on February 1, 2021, the City
27 Manager, Defendant Piedra ( who had a intimate personal relationship with Defendant Johnson)
28 reversed the HR Director's decision and reinstated the twenty day suspension resulting in a

1 | monetary loss of approximately $10,000.00 to Commander Reel.

2 | 61.    Shortly thereafter, on February 11, 2021, Commander Reel received another letter

3 | entitled "Notice of intended disciplinary action-termination from employment," where the basis

4 | for this personnel action was that Reel had violated the ECPD's Policies and Procedures and the

5 | City's Personnel Rules and Regulations for the following unsubstantiated reasons:

6 |

7 | •    dishonesty regarding his medical restrictions and other non-sensical reasons regarding a
      vehicle that had been on a removal from service list,

8 |

9 | •    insubordination for informing the Chief during the transport of Officer C that he did not

10 |      know about the parking situation; and

11 | •    for bringing false complaints about retaliation and regarding officer safety protocols not

12 |      being followed for Covid-19 because that made the Department look bad.

13 | After receiving this information, Plaintiff Reel contacted the Department of Fair

14 | Employment and Housing to add his proposed termination to his investigation and was told to file

15 | another complaint which he did. Attached as Exhibit 2 is his formal complaint and right to sue

16 | from the DFEH.

17 | 62.    While Commander Reel was appealing this notice through the Skelly process, HR

18 | Director was named as the Skelly Officer, a role that she had never performed.  While the Skelly

19 | process was pending, both the HR Director and the City Attorney disagreed with the decision to

20 | terminate Commander Reel because the reasons did not substantiate a termination of Commander

21 | Reel's twenty-five year employment career. HR Director informed the City Attorney, City

22 | Manager Piedra and the  City Council that it was the Chief of Police that should be fired for lying

23 | and that Commander Reel should retain his position.

24 | 63.    It was the HR Director's position that it was obvious that Defendant Johnson was

25 | adding anything and everything that he could think of to discredit Commander Reel, even calling

26 | his performance out for typographical errors which certainly would never be a basis for a

27 | termination. According to HR Director, if Commander Reel had indicated that his therapist

28 | wanted him to not be contacted after hours due to his anxiety and depression, all they had to do

1   was request a note instead of accusing him of lying. In addition, HR Director told City Manager

2   Piedra and the City Attorney that his allegations against Commander Reel for dishonesty were

3   ridiculous and that there was not one instance regarding any of the allegations that Commander

4   Reel that would lead to a termination. Despite HR's reports, Defendant City of El Centro ignored

5   the recommendations of their own HR Director and the City Attorney and terminated Commander

6   Reel effective April 15, 2021.

7        64.    To demonstrate the retaliatory animus of Defendant Johnson, he issued another

8   letter of intent to terminate on March 24, 2021, which regurgitated the reasons of dishonesty over

9   a stored vehicle; the facts of which were falsely alleged. During the Skelly hearing regarding this

10  issue, HR Director informed Plaintiff Reel's representative that she was going to immediately

11  dismiss this claim and that she was going to resign due to Chief Johnson's illegal actions toward

12  Commander Reel and the hostility she had also experienced first hand. HR Director resigned after

13  complaining to City Manager Piedra regarding Chief Johnson's conduct and discriminatory

14  behavior. After the Skelly dismissal, Plaintiff again contacted DFEH and opened another claim

15  with his recent date of harm being June 9, 2021. Plaintiff has requested his right to sue. The

16  DFEH claim is attached as Exhibit 3.

17       65.    Plaintiff Reel is informed and believes and thereon alleges that the Defendants, and

18  each of them, conspired to and did deprive him of his right to Due Process. The first being that

19  Defendant Johnson improperly contacted the Investigator regarding Officer Thompson's

20  investigation behind the HR Director's back, interviewing additional witnesses to elicit false and

21  damaging information without giving Commander Reel the opportunity to be heard regarding

22  these new allegations. When the suspension was initiated, it indicated that Plaintiff was to be

23  issued a Notice of Reprimand but he was never given a copy of the Reprimand to dispute the

24  allegations in further violation of his Due Process Rights. Thereafter, Plaintiff was given a

25  defective notice related to his administrative leave as he was deprived of the reasons he was being

26  placed on leave in violation of his due process rights.

27       66.    Plaintiff's rights were further violated by Defendants attempts to discipline him

28  twice for the same claimed violation regarding dishonesty about a stored vehicle which had no

1   basis in fact. Plaintiff was further denied a fair investigation based on a series of conflicts of

2   interest. Plaintiff did not receive an impartial investigation regarding his claims of retaliation and

3   officer safety violations with regard to the lack of Covid-19 precautions.   He was further denied

4   due process by failing to provide an independent investigator to investigate his claims as opposed

5   to the same investigator who was being directed by Chief Johnson in a blatant attempt to trump up

6   baseless charges to terminate Plaintiff.  Plaintiff's Skelly process was further lacking in due

7   process as the HR Director, who had never been involved in the process, was under orders to

8   terminate Plaintiff despite her objections to the City Manager, City Attorney and City Council that

9   the Chief was lying and that it was the Chief who should have been fired. Therefore, the Skelly

10  process was tainted and the Chief of Police, Defendant Johnson and the City Manager, Marcela

11  Piedra, were integral participants in the discharge of the Plaintiff and the violation of his due

12  process to a fair and impartial hearing.

13      67.    Plaintiff is further informed and believes that the actions of Defendants Johnson and

14  Piedra as described herein were malicious, fraudulent, oppressive, done with a willful and

15  conscious design to injure Plaintiff and with a blatant disregard for Plaintiff's rights. Defendants,

16  and each of them and/or their agents/employees, supervised, authorized, condoned and ratified the

17  unlawful conduct of Defendant Johnson.

18  **FIRST  CAUSE OF ACTION**

19  **(Negligent Hiring, Supervision and Training Against Defendant City of El Centro and**

20  **Defendant Marcela Piedra , and DOES 1 through 10)**

21      68.    Plaintiff hereby incorporates by reference paragraphs 1 through 67, inclusive, as if

22  set forth herein in full.

23      69.    At all times relevant hereto, Defendants City of El Centro and City Manager

24  Marcela Piedra were responsible for the hiring, supervision and control of their employees, agents,

25  and other personnel, including, but not limited to Defendant Brian Johnson.  As such, Defendants

26  and each of them owed a duty of due care to their current employees, including the Plaintiff, to

27  properly hire, supervise and train their employees and other personnel to comply with and to place

28  adequate procedures to prevent the actions of Defendant Brian Johnson from occurring.

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF: DEMAND FOR JURY TRIAL

70.     Plaintiff is informed and believes that Defendants were aware that, prior to his employment with City of El Centro, Defendant Brian Johnson was employed as the Chief of Police for both Los Angeles and the City of Upland, located in Southern California. California Government Code Section 1031 required Defendant City of El Centro, through City Manager Piedra, to conduct a full background check on Defendant Brian Johnson prior to his hire, including but not limited to, the past ten years of his employment including his relationship with his colleagues and subordinate employees. The background check also required a search of Defendant Johnson's general personnel file or any other separate file designated by any previous law enforcement agency pursuant to California Penal Code §832.12 (b).

71.     Defendant City Manager, Marcela Piedra, failed to perform a mandatory POST background check on Defendant Brian Johnson. The post-background check is a mandatory statutory requirement pursuant to Cal. Code Regs. Tit. 11 §1953. Defendant City of El Centro and Defendant City Manager Marcela Piedra cannot claim immunity from their failure to perform this mandatory duty.

72.     Plaintiff is also informed and believes that Defendant City of El Centro, by and through Defendant City Manager Marcela Piedra, also failed to administer a polygraph examination to Defendant Johnson. Had these background measures been taken, the information would have revealed that Defendant Brian Johnson had been forced to resign as the Chief of Police for Upland Police Department in October of 2017 due to a vote of no confidence by the Upland Police Officer's Association. The impetus for Defendant Johnson's forced departure from Upland was his retaliatory terminations of 29 year veteran Captain Anthony Yoakum and 23 year veteran Sgt. Marcus Simpson, after they had reported Chief Johnson's misconduct. These management officers had reported Defendant Johnson for violating officer safety protocols and exposing the Upland Police Department to liability for his illegal actions for false arrests at a marijuana dispensary. Plaintiff is informed and believes that Defendant Brian Johnson was formally reprimanded for his officer safety violations and other illegalities which was placed in his personnel file. A POST background would have revealed a pattern and practice of retaliatory conduct unbecoming of the Chief of Police.

73.    A POST background search would have also revealed that Chief Johnson had a pattern and practice of retaliating against officers who reported his illegal conduct by falsely accusing them of misconduct, insubordination and improperly disparaging the Chief of Police Brian Johnson. He would placed officers who reported his conduct on administrative leave and, make up false accusations to be investigated and would thereafter terminate them.

74.    Plaintiff is further informed and believes that the California Commission on Police Officers and Training notified Defendant City of El Centro that they had determined that Defendant City of El Centro had failed to perform a background investigation on Defendant Brian Johnson in violation of the law. Plaintiff is informed and believes that the City of El Centro was ordered to complete a POST background on Chief Johnson by December 20, 2019 or they would order him to resign.  Plaintiff is further informed and believes that Defendants Johnson and the City of Centro deliberately failed to obtain the appropriate background information, which would have demonstrated Chief Johnson's pattern and practice of retaliation to Officers in his chain of command that engage in protected activity by reporting his illegal conduct. Both officers brought lawsuits alleging numerous violations of their civil rights against the City of Upland and Defendant Johnson both in his individual and official capacity. Plaintiff is informed and believes that a proper POST background would have revealed a pattern and practice of taking adverse employment actions against officers such as Plaintiff Reel who had engaged in protected activity.

75.    Plaintiff is also informed and believes and based thereupon alleges that if Defendants had actual notice of Defendant Johnson's previous conduct, they deliberately failed to protect Commander Reel from a foreseeable risk of harm given that Officer Reel continued to inform Defendant City of El Centro that he had been targeted by Chief Johnson for retaliatory behavior and the same fact pattern that had happened to the officers at the Upland Police Department was happening to him. Alternatively, Plaintiff alleges if they did not have actual notice of Defendant's previous retaliatory conduct, they should have known as they have a mandatory duty to perform an adequate background check on the Chief of Police to avoid him presenting an undue risk of harm to Commander Reel.

/ / /

76.     Plaintiff is further informed and believes that he brought several complaints to the attention of the HR Director who informed Defendant City Manager Piedra, the City Attorney and City Council that Defendant Chief was lying and manipulating the investigations and that there was not any basis to terminate Plaintiff Reel. Defendant City of El Centro deliberately failed to properly train and supervise Defendant Chief Johnson to prevent him from retaliating against Commander Reel when they were on actual notice of his behavior.

77.     Defendants' negligent failure to properly train and supervise Defendant Johnson made said defendants accountable to Plaintiff for all of the wrongful acts taken against him as they had actual notice of his retaliatory actions taken against the Plaintiff and failed to prevent them.

78.     Plaintiff is informed and believes and herein alleges that Defendant City of El Centro and Defendant Marcela Piedra and DOES 1 through 10, inclusive, were negligent in the hiring, training, retention, discipline and supervision of its employee, Defendant Johnson which proximately caused the injuries and damages alleged in the complaint herein.

79.     As a result of the acts and omissions alleged herein, Plaintiff has sustained and will continue to sustain substantial losses in earnings, promotions, bonuses, deferred compensation and other employment and career benefits,  all to his damage in an amount according to proof.  In addition, Plaintiff has suffered and will continue to suffer damage to his career and reputation, in an amount to be determined according to proof.

80.     As a further result of the acts and omissions alleged herein, Plaintiff has suffered and continues to suffer humiliation, fear, embarrassment, emotional anguish and extreme mental stress, requiring him to seek the services of medical professionals for appropriate treatment to his damage, in an amount to be determined according to proof.

WHEREFORE, Plaintiff requests relief as hereinafter provided.

/ / /

/ / /

/ / /

/ / /

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF: DEMAND FOR JURY TRIAL

## SECOND CAUSE OF ACTION

### Violation of Government Code Section 12940(h)-

### Retaliation against City of El Centro

81.     Plaintiff incorporates by reference each and every allegation contained in paragraphs 1 through 80 as though fully set forth herein.

82.     At all times herein mentioned, Government Code Section 12940(h) was in full force and effect and binding upon Defendants, and each of them. Government Code §12940, subdivision (h), for protesting and/or reporting illegal discrimination and/or harassment occurring in the workplace.

83.     As previously alleged in the Complaint, Commander Reel made several reports to Defendant Johnson and Director of Human Resources that he reasonably believed that Chief Johnson was subjecting women to sexist and degrading behavior in the workplace and as a direct consequence of his reports, he was subjected to a hostile environment and adverse employment actions.   From the time of  Commander Reel's first report of sexual discrimination and retaliation towards him on August 16, 2019,  he was subjected to retaliatory adverse employment actions, including but not limited to the following actions:

- • threatening that the Chief would never promote him;

- • attempting to convince Plaintiff to take an at-will position;

- • violating departmental policy by failing to place Commander Reel in the Acting Chief position in his absence on two occasions resulting in the loss of pay;

- • deliberately changing the policy to deprive Commander Reel from ever being given the Acting Chief position;

- • interfering with the investigation process regarding Officer Thompson's complaints by requesting the investigation to interview additional witnesses and obtaining derogatory information behind HR Director's back to improperly influence the investigation process and violate Plaintiff's due process rights;

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF: DEMAND FOR JURY TRIAL

1         &bull;    issuing a twenty day suspension after violating Commander Reel's due

2            process rights resulting in a loss of approximately $10,000.00 in pay

3         &bull;    refusing to list Plaintiff's achievements in his performance evaluation;

4         &bull;    interrogating Plaintiff's direct reports in his absence to attempt to falsely

5            accuse Commander Reel of not properly assigning detail to the Christmas

6            parade;

7         &bull;    forcing Plaintiff on medical leave for creating a hostile and stressful

8            environment resulting in a diagnosis of anxiety and depression;

9         &bull;    packing Plaintiff's office belongings and moving his office during his

10           medical leave;

11         &bull;   stripping Plaintiff of all his duties as the operational commander effectively

12           demoting him to administrative commander usually reserved for a junior

13           commander;

14         &bull;   refusing to meet with Plaintiff and excluding him from all meetings

15           regarding the organizational structure of the Police Department;

16         &bull;   after sustained policy violations by City of El Centro, refusing to

17           compensate Plaintiff for two years for his additional pay he was denied by

18           the designation of Acting Commander;

19         &bull;   purposefully undermining Plaintiff's employment by informing other

20           command officials and management behind his back that it was his intent to

21           get rid of him without informing Plaintiff;

22         &bull;   informing staff members to gather documents to disparage Plaintiff's

23           performance;

24         &bull;   interfering with the investigation of Plaintiff and lying to the City Manager,

25           City Attorney and City Council regarding his actions and Plaintiff's alleged

26           performance deficiencies;

27         &bull;   falsely accusing Plaintiff of lying and insubordination;

28

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF: DEMAND FOR JURY TRIAL

1        •     publicly humiliating Plaintiff by cussing at him and insulting him while

2                threatening him that he was going to sideline him;

3        •     placing him on administrative leave with inadequate notice and lying about

4                the reasons in violation of his due process;

5        •     terminating his employment after 25 years of exceptional service without

6                adequate justification and based upon willful misrepresentations.

7    84.    As a direct and proximate result of Defendants' willful and intentional

8 discrimination against the Plaintiff, he has sustained losses in earnings, and other job benefits and

9 have suffered and continues to suffer, humiliation, embarrassment, mental pain and anguish, and

10 distress, all damages in the amount not as yet ascertained.

11    85.    As a further direct and proximate result of Defendants' conduct as described above,

12 Plaintiff has been required to obtain legal counsel to protect his rights, and he has thereby incurred

13 attorney's fees in an amount to be proven at the time of trial. Pursuant to Government Code

14 Section 12900 et. seq., and specifically Section 12965(b), Plaintiff is entitled to an award of

15 reasonable attorney's fees, costs, and expenses against Defendants, and each of them.

16                           **THIRD CAUSE OF ACTION**

17 **Violation of Government Code§ 12945.2(l) - Retaliation for taking leave under the California**

18                     **Family Rights Act (City of El Centro)**

19    86.    Plaintiff incorporates by reference each and every allegation contained in

20 paragraphs 1 through 85 as though fully set forth herein.

21    87.    At all times herein mentioned, Government Code § 12945.2(l), was in full force and

22 effect and was binding upon Defendants, and each of them. Said section prevents employers from

23 retaliating against employees for exercising their right to take leave under this section. Plaintiff

24 reasonably requested from Defendants, and each of them, leave pursuant to California Government

25 Code §12945.2(a).

26 / / /

27 / / /

28 / / /

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF: DEMAND FOR JURY TRIAL

1    88.    After Plaintiff exercised his right to take CFRA leave, Defendant subjected him to

2  retaliatory actions, including but not limited to the following:

3    •    packing Plaintiff's office belongings and moving his office during his

4        medical leave;

5    •    stripping Plaintiff of all his duties as the operational commander effectively

6        demoting him to administrative commander usually reserved for a junior

7        commander;

8    •    refusing to meet with Plaintiff and excluding him from all meetings

9        regarding the organizational structure of the Police Department;

10    •    after sustained policy violations by City of El Centro, refusing to

11        compensate Plaintiff for two years for his additional pay he was denied by

12        the designation of Acting Commander;

13    •    purposefully undermining Plaintiff's employment by informing other

14        command officials and management behind his back that it was his intent to

15        get rid of him without informing Plaintiff;

16    •    informing staff members to gather documents to disparage Plaintiff's

17        performance;

18    •    interfering with the investigation of Plaintiff and lying to the City Manager,

19        City Attorney and City Council regarding his actions and Plaintiff's alleged

20        performance deficiencies;

21    •    falsely accusing Plaintiff of lying and insubordination;

22    •    publicly humiliating Plaintiff by cussing at him and insulting him while

23        threatening him that he was going to sideline him;

24    •    placing him on administrative leave with inadequate notice and lying about

25        the reasons in violation of his due process;

26    •    terminating his employment after 25 years of exceptional service without

27        adequate justification and based upon willful misrepresentations.

28  / / /

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF: DEMAND FOR JURY TRIAL

89.    As a result of Defendant's discriminatory conduct, Plaintiff lost income, benefits, experience, and other related advantages of his employment entitling him to special damages thereof in an amount to be determined according to proof at trial.

90.    As a further result of the acts and omissions alleged herein, Plaintiff has suffered and continues to suffer humiliation, fear, embarrassment, emotional anguish and extreme mental stress, requiring him to seek the services of medical professionals for appropriate treatment to his damage, in an amount to be determined according to proof.

91.    Plaintiff was required to obtain legal counsel to protect his rights, and thereby will incur attorneys fees in an amount to be ascertained after trial.  Pursuant to Government Code § 12965(b) Plaintiff requests an award of reasonable attorneys fees incurred against Defendants, and each of them.

WHEREFORE, Plaintiff requests relief as hereinafter provided.

### **FOURTH CAUSE OF ACTION**

**Employment Discrimination in Violation of California Government Code §**
**12940(a)–Disability Discrimination (against City of El Centro)**

92.    Plaintiff incorporates by reference each and every allegation contained in paragraphs 1 through 91, as though fully set forth herein.

93.    At  all relevant times, Plaintiff's employment was governed by California Government Code § 12940(a) which imposes on employers a duty to keep the workplace free of employment discrimination on account of an actual or perceived disability. Plaintiff was a qualified individual with a disability of  anxiety. As a result of the adverse employment actions of Chief Johnson, Commander Reel informed HR Director that he could not concentrate, he could not focus, that his heart was pounding and he was experiencing difficulties with his job duties.

94.    Defendant City of El Centro was aware that Plaintiff's condition of anxiety was affecting the quality of his work and was directly related to his disability. Despite being on notice of  Plaintiff's disability impacting his work performance, City of El Centro used certain mistakes that Plaintiff made in news releases and typographical letters as a basis for his termination which constitutes direct evidence of disability discrimination. In addition, Plaintiff was told after he came

1   back from his medical leave by his personal therapist that he should not engage in work activities

2   such as checking his phone or e-mails after hours as this would affect his therapeutic progress with

3   regard to his therapy. Instead of requesting a note from Plaintiff's personal physician regarding this

4   accommodation, Defendant instead accused Plaintiff of lying because they mixed up their duties to

5   accommodate under the California Government Code and the work restrictions issued by a

6   worker's compensation doctor. The Human Resources Director indicated that all the City would

7   have had to do to clear this issue up is to request a note from Plaintiff's therapist instead of

8   accusing him of lying as part of the reason to terminate him.

9       95.    As a result of Defendant's discriminatory conduct, Plaintiff lost income, benefits,

10  experience, and other related advantages of his employment entitling her to special damages

11  thereof in an amount to be determined according to proof at trial.

12      96.    As a further result of the acts and omissions alleged herein, Plaintiff has suffered and

13  continues to suffer humiliation, fear, embarrassment, emotional anguish and extreme mental stress,

14  requiring him to seek the services of medical professionals for appropriate treatment to his damage,

15  in an amount to be determined according to proof.

16      97.    Plaintiff was required to obtain legal counsel to protect his rights, and thereby will

17  incur attorneys fees in an amount to be ascertained after trial.  Pursuant to Government Code §

18  12965(b) Plaintiff requests an award of reasonable attorneys fees incurred against Defendants, and

19  each of them.

20          WHEREFORE, Plaintiff requests relief as hereinafter provided.

21              **FIFTH CAUSE OF ACTION**

22  **Failure to Remedy Discrimination and Harassment in Violation of Gov. Code §12940(k)**

23              **(against City of El Centro)**

24      98.    Plaintiff incorporates herein by reference each and every allegation contained in

25  paragraphs 1 through 97, inclusive, of this complaint as if fully set forth herein.

26      99.    As set forth above, at all times relevant, the California Government Code section

27  12900, et seq., was in force and effect. The Fair Employment and Housing Act, section 12940(k)

28  provides that it is an unlawful employment practice for "An employer...to fail to take all reasonable

1  steps necessary to prevent discrimination and harassment from occurring."

2      100.    As previously alleged in the Complaint, Commander Reel made several reports to

3  Defendant Johnson and Director of Human Resources that he reasonably believed that Chief

4  Johnson was subjecting women to sexist and degrading behavior in the workplace and as a direct

5  consequence of his reports, he was subjected to a hostile environment and adverse employment

6  actions.  From the time of  Commander Reel's first report of sexual discrimination and retaliation

7  towards him on August 16, 2019,  he was subjected to additional retaliatory adverse employment

8  actions. Despite Commander Reel's multiple reports, he continued to be discriminated and

9  retaliated against by Defendant Johnson through the time of his termination on April 15, 2021 over

10  a period of two years. Despite City of El Centro's knowledge of Plaintiff's complaints, they failed

11  to remedy his hostile environment caused by Chief Johnson.

12      101.    By performing the acts and/or omissions as described above, among others,

13  Defendants, and each of them, violated the Fair Employment and Housing Act, Section 12940(k),

14  by failing to take all steps to prevent discrimination against Plaintiff, and others, from occurring on

15  the basis of  sex, retaliation, disability and request for medical leave pursuant to the California

16  Family Rights Act.

17      102.    As a direct and proximate result of Defendant's failure to remedy the discrimination

18  and retaliation against the Plaintiff, he has sustained losses in earnings, and other job benefits and

19  have suffered and continues to suffer, humiliation, embarrassment, mental pain and anguish, and

20  distress, all to his damage in the amount not as yet ascertained.

21      103.    As a further direct and proximate result of Defendants' conduct as described above,

22  Plaintiff has been required to obtain legal counsel to protect his rights, and he has thereby incurred

23  attorney's fees in an amount to be proven at the time of trial. Pursuant to Government Code

24  Section 12900 et. seq., and specifically Section 12965(b), Plaintiff is entitled to an award of

25  reasonable attorney's fees, costs, and expenses against Defendants, and each of them.

26          WHEREFORE, Plaintiff prays for relief as set forth herein.

27  / / /

28  / / /

**SIXTH CAUSE OF ACTION**

**Violation of Statutory Duty pursuant to California Labor Code §6310 (Plaintiff Aaron Reel against All Defendants)**

104.    Plaintiffs incorporate by reference each and every allegation contained in paragraphs 1 through 103 as though fully set forth herein.

105.    Defendant City of El Centro is an"employer" and Defendants Johnson and Piedra are " persons" pursuant to California Labor Code Section 6310(a) who shall not discharge, or in any manner discriminate against an employee for complaining in good faith about working conditions or practices which he reasonably believes to be unsafe, whether or not there exists at the time of the complaint an occupational heath and safety standard or order which is being violated. This section specifically prohibited Defendants City of El Centro, Johnson and Piedra from discriminating and discharging Plaintiff Aaron Reel for his complaints that the Command Team at El Centro Police Department had created unsafe workplace conditions by not taking adequate safety requirements for their high risk officers and follow the safety protocols recommended by the CDC and other state and local regulations put in place to protect the public during the Covid-19 pandemic. Plaintiff is informed and believes that Defendants Johnson and Defendant Piedra were persons acting on behalf of Defendant City of El Centro at the time the discriminatory actions occurred.

106.    As aforementioned, Plaintiff filed a complaint internally with the HR Director of the El Centro Police Department as well as the Labor Commissioner wherein he expressed his reasonable belief that the failure of the command staff to follow the officer safety protocols recommended by the CDC and other governmental agencies to not expose their high risk employees to unnecessary risks and to secure N95 masks for their officers had contributed to the death of an officer.

107.    Defendants discriminated against Plaintiff Aaron Reel  and discharged him, in part, on account of his  health and safety complaints regarding the lack of officer safety protocols.

108.    As a proximate result of Defendants' conduct, Plaintiff has suffered, and will continue to suffer, special damages (including, but not limited to past and future lost earnings and

1  employment benefits) in an amount to be proven at trial.

2      109.   California Labor Code Section 6310(b) also provides that any employee who

3  prevails on a claim under section 6310 is also entitled to reinstatement in addition to lost wages.

4      110.   In the event that Plaintiff is the prevailing party in this action, he will also be

5  entitled to recover attorneys fees under California Code of Civil Procedure Section 1021.5 in that

6  this action will have resulted in the enforcement of an important right affecting the public interest.

7      WHEREFORE, Plaintiffs pray for judgment against Defendants, and each of them, as more

8  fully set forth below.

9  ### SEVENTH CAUSE OF ACTION

10  **Violation of California Labor Code §1102.5 (Plaintiff Aaron Reel Against Defendant City of**

11  **El Centro)**

12      111.   Plaintiffs incorporate by reference each and every allegation contained in

13  paragraphs 1 through 110, as fully set forth herein.

14      112.   California Labor Code §1102.5 provides, amongst other things, that an employer,

15  or any person acting on behalf of the employer, shall not retaliate against an employee for

16  disclosing information about illegal activity or because the employer believes that the employee

17  disclosed or may disclose information. The Code specifically states: An employer, or any person

18  acting on behalf of the employer, shall not retaliate against an employee for disclosing information,

19  or because the employer believes that the employee disclosed or may disclose information, to a

20  government or law enforcement agency, to a person with authority over the employee or another

21  employee who has the authority to investigate, discover, or correct the violation or non-

22  compliance...if the employee has reasonable cause to believe that the information discloses a

23  violation of state or federal statute, or a violation of or noncompliance with a local, state, or federal

24  rule or regulation.

25      113.   As set forth above,  Plaintiff Aaron Reel  disclosed his reasonable belief that

26  Defendant City of El Centro Police Department and Defendant Brian Johnson had violated

27  California state and local regulations pursuant to the guidelines of the CDC and other state and

28  federal Health and Safety regarding protecting their high risk officers from being infected by

1    Covid-19 by taking the necessary precautions in assignments and in proper facial N-95 masks. As

2    set forth in detail in the above-referenced facts, Plaintiff Reel reported his reasonable belief that

3    Defendant Johnson's actions and the command staff in failing to follow CDC guideline and officer

4    safety protocols by protecting their high risk officers from coming into contact with potential

5    exposure to Covid-19 had resulted in an unnecessary death of an officer. Plaintiff reported this to

6    his own law enforcement agency, the City, by and through the HR Director and the Department of

7    Labor by opening a formal investigation.

8        114.    Defendants retaliated against Plaintiff Reel and discharged him on account of his

9    complaints that Defendants had not followed appropriate officer safety protocols in violation of

10   Labor Code 1102.5.

11       115.    As a proximate result of Defendants' conduct, Plaintiff has suffered and will

12   continue to suffer special damages (including, but not limited to past and future lost earnings and

13   employment benefits), the exact amount to be proven at trial.

14       116.    In the event that Plaintiff is the prevailing parties in this action, he will also be

15   entitled to recover attorneys fees under California Labor Code Section 1102.5(j) which specifically

16   authorizes the court to award reasonable attorneys fees to a Plaintiff who brings a successful action

17   for violation of these provisions. In addition, Plaintiff would also be entitled to attorneys fees

18   pursuant to California Code of Civil Procedure Section 1021.5 in that this action will have resulted

19   in the enforcement of an important right affecting the public interest.

20       WHEREFORE, Plaintiffs pray for judgment against Defendants, and each of them, as more

21   fully set forth below.

22                          **EIGHTH CAUSE OF ACTION**

23   **Violation of 42 U.S.C. § 1983 First Amendment Retaliation Against the City of El Centro**

24       117.    Plaintiff incorporates herein by reference each and every allegation contained in

25   paragraphs 1 through 116, inclusive, of this complaint as though fully set forth herein.

26       118.    Plaintiff is a public employee of The City of El Centro, an entity of the County of

27   Imperial and State of California, and he has a right guaranteed to engage in constitutionally

28   protected speech on matters of public concern pursuant to the First Amendment to the United

1  States Constitution, through 42 U.S.C. §1983. Plaintiff's rights to be free from retaliation for

2  exercising his right to report matters of sex discrimination, retaliation and  health and safety

3  violations were also clearly established under the First Amendment, by judicial precedent at all

4  times, and at all times relevant to the events stated in this Complaint.

5      119.    Plaintiff exercised his First Amendment right to report his public concerns,

6  including that Defendant Johnson was sexually discriminating against female employees and that

7  he had been illegally subjected to retaliation for his reports. In addition, Plaintiff engaged in his

8  first amendment right to speak out regarding his reasonable belief that the El Centro Police

9  Department Command Staff did not have the proper infection control procedures in place to

10  protect their high risk officers from the transmission of the deadly Covid-19 virus. As such,

11  Commander Reel engaged in constitutionally protected speech on  matters of public concern.

12      120.    Any reasonable public official such as Defendant Johnson and Defendant Marcela

13  Piedra in their respective positions would have known that retaliating against a public employee for

14  engaging in reporting sex discrimination, retaliation, and health and safety violations regarding the

15  transmission of Covid-19 was illegal, unlawful, and in violation of constitutionally protected First

16  Amendment rights. As such, Defendants are not entitled to qualified immunity for their intentional

17  retaliatory acts taken against the Plaintiff in their official capacities a the Chief of Police and the

18  City Manager. In addition, Plaintiff has sued Defendants Johnson and Piedra in their individual

19  capacities for retaliating against him for exercising his First Amendment rights.

20      121.    Defendants Johnson and Piedra were integral participants in taking adverse actions

21  against Plaintiff, because of his first amendment speech by engaging in retaliatory actions which

22  included, but were not limited to: interfering with the investigations of Plaintiff, accusing

23  Plaintiff's of performance deficiencies; falsely accusing Plaintiff of lying and insubordination;

24  placing him on administrative leave with inadequate notice and lying about the reasons in violation

25  of his due process; and terminating his employment after 25 years of exceptional service without

26  adequate justification and based upon willful misrepresentations.

27      122.    Plaintiff's protected speech was a substantial and motivating factor for the adverse

28  employment actions taken against the Plaintiff by Defendants and each of them. Defendants cannot

1    demonstrate by clear and convincing evidence that they would have taken the adverse action

2    against the Plaintiff even absent the protected speech.

3         123.    Defendants Johnson and Piedra acted intentionally and exhibited an extreme

4    reckless disregard of, and callous indifference to Plaintiff's clearly established constitutionally

5    protected right to express matters of public concern pursuant to the First Amendment. Here,

6    Plaintiff has been stigmatized in his law enforcement career and his personal reputation by being

7    terminated for false reasons of dishonesty and insubordination.

8         124.    Defendants' actions as described above have injured Plaintiff by causing him loss of

9    income, pain and suffering, public humiliation and damaged his standing as a member of the law

10   enforcement community, entitling him to compensatory damages against the individual

11   Defendants.

12        125.    Defendants' conduct, as described herein, was done maliciously, with unlawful

13   purpose to cause such damage and loss and without right or justifiable cause, thereby warranting

14   punitive damages against Defendants Johnson and Piedra.

15        WHEREFORE, Plaintiff prays for relief as set forth herein

16                              **NINTH CAUSE OF ACTION**

17        **Violation 42 U.S.C. §1983 -Due Process Violations Against All Defendants)**

18        126.    Plaintiff incorporates herein by reference each and every allegation contained in

19   paragraphs 1 through 125 inclusive, of this complaint as though fully set forth herein

20        127.    Plaintiff had a property interest in his position as Commander with the El Centro

21   Police Department for the City of El Centro under the Fourteenth Amendment.

22        128.    Plaintiff had a fundamental and vested property interest in employment with The

23   City of El Centro that necessarily included the right to procedural and fundamental fairness in any

24   administrative process concerning the status of this property interest right with regard to his

25   employment as a Commander with Defendant City of El Centro.

26   / / /

27   / / /

28   / / /

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF: DEMAND FOR JURY TRIAL

129.   Plaintiff is informed and believes and thereupon alleges that he was deprived of his constitutionally guaranteed due process by the following actions:

- Defendant Johnson improperly contacted the Investigator regarding Officer Thompson's investigation behind the HR Director's back, interviewing additional witnesses to elicit false and damaging information without giving Commander Reel the opportunity to be heard regarding these new allegations;

- When the suspension was initiated, it indicated that Plaintiff was to be issued a Notice of Reprimand but he was never given a copy of the Reprimand to dispute the allegations in further violation of his Due Process Rights;

- Plaintiff was given a defective notice related to his administrative leave as he was deprived of the reasons he was being placed on leave in violation of his due process rights;

- Defendants attempts to discipline him twice for the same claimed violation regarding dishonesty about a stored vehicle which had no basis in fact;

- Plaintiff was further denied a fair investigation based on a series of conflicts of interest. Plaintiff did not receive an impartial investigation regarding his claims of retaliation and officer safety violations with regard to the lack of Covid-19 precautions;

- Plaintiff was further denied due process by failing to provide an independent investigator to investigate his claims as opposed to the same investigator who was being directed by Chief Johnson in a blatant attempt to trump up baseless charges to terminate Plaintiff;

- Plaintiff's Skelly process was further lacking in due process as the HR Director, who had never been involved in the process, was under orders to terminate Plaintiff despite her objections to the City Manager, City Attorney and City Council that the Chief was lying and that it was the Chief who should have been fired;

- The Skelly process was tainted and the Chief of Police, Defendant Johnson and the City Manager, Marcela Piedra, were integral participants in the discharge of the

1        Plaintiff and the violation of his due process to a fair and impartial hearing;

2      130.   The aforementioned actions and omissions by Defendants violated Plaintiff's rights

3 to due process pursuant to 42 U.S.C. 1983 and the Fifth and Fourteenth Amendments to the United

4 States Constitution to due process as well as the California Government Code Section 3300.

5      131.   It was, or should have been, obvious to any reasonable official of the Defendant

6 City of El Centro that the acts and omissions of Defendants as alleged herein directly violated and

7 continued to violate Plaintiff's clearly established constitutional and statutory rights.

8      132.   In doing the things alleged herein, Defendants Johnson and Piedra acted with

9 malicious intent to violate Plaintiff's rights and in conscious, reckless and callous disregard of

10 Plaintiff's rights entitling the Plaintiff to punitive damages against the individual defendants.

11     133.   As a direct and proximate result of defendants' unlawful conduct, Plaintiff has

12 suffered and will continue to suffer severe physical and mental distress, humiliation,

13 embarrassment, anxiety, loss of earnings, loss of other employment benefits, medical expenses,

14 lack of professional opportunities and advancement, and other general and special damages in an

15 amount to be proven at trial.

16     134.   General and special damages are sought according to proof, in addition to

17 attorneys' fees and costs of suit as allowed by law.

18                   **PRAYER FOR RELIEF**

19     1.   For compensatory damages including lost wages, lost employee benefits, bonuses,

20 vacation benefits, the cost of Plaintiff's clothing that was destroyed, and other miscellaneous

21 special damages, according to proof;

22     2.   Mental and emotional distress, and other general damages according to proof;

23     3.   For an award of punitive damages against the individual Defendants where allowed

24 according to proof;

25     4.   For an award of attorney's fees and costs where allowed by each statutory cause of

26 action;

27     5.   For the injunctive and declaratory relief for the violation of Plaintiff's due process

28 violations including, but not limited to, expunge any negative personnel documents relating to any

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF: DEMAND FOR JURY TRIAL

1  adverse actions taken against the Plaintiff including his termination;

2       6.       For the court to take any and all necessary and reasonable steps to remove the

3  stigma and negative perception of Plaintiff created by Defendants' illegal conduct and false

4  comments made about him, including,  his honesty as a law enforcement officer;

5       7.       For such other relief as the court may deem necessary and proper.

6                                          Respectfully submitted,

7                                          LAW OFFICES OF SUZY C. MOORE

8

9  Dated: April 15,  2022              By:

10                                         Suzy C. Moore, Esq.
                                           Attorney for Plaintiff

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF: DEMAND FOR JURY TRIAL