Suzy C. Moore, Esq. (SBN 151502)
LAW OFFICES OF SUZY C. MOORE
8411 La Mesa Boulevard
La Mesa, CA 91942
Telephone:    619-469-9490
Facsimile:     619-469-9419

Attorney for Plaintiff AARON REEL

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AARON REEL | Case No. 22-cv-526-W-(KSC) |
| Plaintiff, | **FIRST AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF: DEMAND FOR JURY TRIAL** |
| vs. | |
| THE CITY OF EL CENTRO, a Public Entity; CHIEF OF POLICE BRIAN JOHNSON, individually and in his official capacity as Chief of Police of the El Centro Police Department; CITY MANAGER MARCELA PIEDRA, individually and in her official capacity; and DOES 1-10 inclusive. | **(1)   Failure to Perform Mandatory Duty against Defendant City of El Centro pursuant to Gov. Code §815.6 (a);** |
| | **(2)   Negligent Hiring, Supervision & Training against Defendant Piedra and City of El Centro pursuant to Gov. Code §815.2 (a);** |
| Defendants. | **(3)   Violation of Government Code §12940(h) Retaliation for filing Discrimination and Retaliation Complaints;** |
| | **(4)   Violation of Government Code§ 12945.2(l) - Retaliation for taking leave under the California Family Rights Act;** |
| | **(5)   Employment Discrimination in Violation of California Government Code §12940(a);** |
| | **(6)   Failure to Remedy Discrimination and Harassment in Violation of Gov. Code §12940(k);** |
| | **(7)   Violation of Statutory Duty pursuant to California Labor Code §6310;** |
| | **(8)   Violation of California Labor Code §1102.5** |
| | **(9)   Violation of 42 U.S.C. §1983-First Amendment Retaliation** |

## JURISDICTION AND VENUE

1.     Jurisdiction of this court is invoked under 28 U.S.C. §1331 and §1343 as this is an action for money damages and injunctive relief under Title 42 U.S.C. § 1983 for First Amendment retaliation and due process violations. The Court has subject matter jurisdiction over this action for the federal claims and has supplemental jurisdiction pursuant to 28 U.S. C. §1367 over the state law claims as they arise from the same nucleus of operative facts as the federal claims. In addition, this Court has jurisdiction to provide declaratory and injunctive relief pursuant to 28 U.S.C. §2201 and 2202.

2.     Venue is proper in the Southern District of California because the wrongs alleged herein occurred within the City of El Centro, which lies in Imperial County, which is located within the Southern District of California.

## PARTIES

1.     Plaintiff, AARON REEL, was, at all times relevant herein, a resident of Imperial County and employed by Defendant THE CITY OF EL CENTRO as a Commander of the El Centro Police Department which resides in Imperial County, in the State of California, within the jurisdiction of the above-entitled Court.

2.     Defendant CITY OF EL CENTRO is a duly constituted municipality organized and existing under the laws of the State of California and is wholly situated in the County of Imperial. The El Centro Police Department (hereinafter DEFENDANT or ECPD or department) is an operating department of Defendant CITY OF EL CENTRO.

3.     Defendant Brian Johnson (Johnson) was at all times relevant the Chief of Police for the El Centro Police Department. Plaintiff is suing Defendant Johnson both in his individual capacity and in his official capacity. Plaintiff is informed and believes that Plaintiff Johnson was intentionally acting as an individual in the constitutional violations and retaliatory conduct taken against Plaintiff. Plaintiff is further informed and believes that in doing the things alleged herein, Johnson acted under the color of state law, within the course and scope of his employment, and as an official policy-making authority over actions such as the ones at issue in this Complaint.

FIRST AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF: DEMAND FOR JURY TRIAL

4.     Defendant Marcela Piedra (Piedra), was at all times relevant the City Manager for the City of El Centro. Plaintiff is suing Defendant Piedra acting as an individual in the constitutional violations and retaliatory conduct taken against Plaintiff. Plaintiff is further informed and believes that in doing the things alleged herein, Piedra acted under the color of state law, within the course and scope of her employment, and as an official policy-making authority over actions such as the ones at issue in this Complaint. Plaintiff is informed and believes and based thereupon allege that both Defendant Johnson and Defendant Piedra were involved in a personal relationship and acted in concert to deprive Plaintiff of his constitutional rights and such actions were taken intentionally exposing each of these Defendants to punitive damages.

5.     Defendant Does 1-10 (Does) inclusive, are not unknown or unidentified at this time, but are employees of the City of El Centro. Upon information and belief, Plaintiff alleges that each Doe is in some manner responsible for the wrongs alleged herein, and that each such defendant advised, encouraged, participated in, ratified, directed or conspired to do, the wrongful acts alleged herein. When the true names and capacities of said defendants become known. Plaintiff will seek relief to amend this Complaint to show the true identities of each said Doe in place of their fictitious names as Does 1 through 10.

6.     Plaintiff is informed and believes, and based thereupon alleges, unless otherwise alleged in this Complaint, that all relevant times herein, Defendants and Does 1 - 10 were the agents, employees and/or servants, masters or employers of each other and of the remaining DOES 1-10, and in doing the things herein alleged, were acting within the course and scope of such agency or employment, and with the approval and ratification of each of the other Defendants.

7.     As a direct and proximate result of the unlawful actions of Defendants, Plaintiff was denied due process, suffered and continues to suffer from loss of wages and earnings, emotional distress, damages to his reputation and other damages in amounts as yet unascertained, but subject to proof at trial. Plaintiff has also incurred costs and attorneys fees in attempting to vindicate his rights. In addition, Plaintiff is entitled to punitive damages against the individual

1  Defendants he has sued in their individual capacities and his entitled to injunctive and declaratory

2  relief as alleged herein.

3  **EXHAUSTION OF ADMINISTRATIVE REMEDIES**

4       8.    All necessary prerequisites to suit for Plaintiff's pendent state claims have been

5  exhausted. From November 24, 2019 through the date of the filing of this lawsuit, Plaintiff has

6  either closed his investigations and/or had right to sue notices issued regarding all of the adverse

7  employment actions he was subjected to during his tenure with Defendants. (Exhibit 1-3) In

8  addition, on October 8, 2021, Plaintiff filed a claim for damages for the retaliatory adverse

9  employment actions resulting in his termination, naming all Defendants and received a rejection

10  of his claims on October 27, 2021. Exhibit 4.

11  **FACTS COMMON TO ALL CAUSES OF ACTION**

12       9.    Plaintiff Aaron Reel, has spent his entire career of 25 years in law enforcement with

13  the El Centro Police Department working for Defendant City of El Centro. After completing the

14  San Diego Police Academy in 1996, Mr. Reel was ultimately hired as a full time police officer

15  after serving as both a volunteer and reserve police officer. In 2004, he was promoted to a Special

16  Agent in the Narcotic Task Force, and became a Detective serving in these capacities for

17  approximately six years. Thereafter, he was promoted to a police Sergeant in 2009. In 2013, Mr.

18  Reel was promoted to the position of Commander and was acting Executive Commander for 14

19  months, and thereafter Commander directly under to Executive Commander and the Chief of

20  Police. However, in 2021, Mr. Reel's long, honorable twenty-five year career unceremoniously

21  came to an end with his involuntary separation from the ECPD, after he reported his reasonable

22  belief that Defendant, Chief of Police Brian Johnson, was discriminating against female

23  employees, retaliating against him for his reports, and had jeopardized the safety of police officers

24  by not following Covid-19 protocols.

25       10.    To demonstrate the pretextual nature of the Defendant Chief Johnson and the

26  City's decision to terminate him, Commander Reel had an impeccable 25 year unblemished

27  record. He consistently received high performance ratings on his evaluations, outstanding officer

28  and team member of the year awards. By 2001, after serving for four and a half years, he had

become the officer others sought out for advice. In 2002, Mr. Reel was recognized as a senior

FIRST AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF: DEMAND FOR JURY TRIAL

1  member of the SWAT team and had participated in several successful missions. At this point, Mr.

2  Reel was certified as a firearms instructor, an armorer, a field training officer and an off-road

3  vehicle instructor. In 2004, Mr. Reel had become a senior officer in the department and had been

4  designated as one of the team leaders of the SWAT team. Mr. Reel had become known for being

5  invariably punctual, the last to leave the office and rarely ever called out sick. Also, Mr. Reel was

6  selected as the ECPD representative in the Imperial County Narcotics Task Force. Mr. Reel had

7  led the task force in arrests, accounting for 25 percent of all arrests made.

8       11.    In August of 2004, Mr. Reel received a commander's commendation for his

9  excellent work on an investigation involving narcotics dealers in the City of El Centro. By 2005,

10  Mr. Reel was recommended to assume a leadership role after his outstanding work as the Training

11  Coordinator. In 2007, Mr. Reel was an NFT agent of the year, and was recognized both by the

12  City Mayor and California State Legislature and Representative Bonnie Garcia, for outstanding

13  community service in drug enforcement. In October of 2007, he was performing exceptionally in

14  criminal investigations and on August 14, 2008, Mr. Reel received a commendation from the

15  Chief of Police Harold Carter, for his professionalism and performing his duties in an exemplary

16  manner.

17       12.    On April 1, 2009, Mr. Reel was promoted to Sergeant. He had several assignments

18  as a supervisor including Sergeant Detective, Administrative Sergeant and SWAT Supervisor. In

19  six months of being a supervisor, Mr. Reel was commended for some solid supervisory decisions.

20  In January of 2010, his progress was above average for new supervisors.

21       13.    On June 30, 2013, Mr. Reel earned his Bachelors in Criminal Justice

22  Administration. Two months later, Mr. Reel was successful in the test for the Commander

23  position. On October 29, 2013, based upon his performance and dedication to the City of El

24  Centro Police Department, Mr. Reel was promoted by then Chief of Police Jim McGinley to

25  Commander and joined the management team. Plaintiff performed well in his position,

26  supervising approximately 30-40 staff members. In 2014, upon the retirement of Chief McGinley,

27  Executive Commander Eddie Madueno became the Chief of Police. This left the Executive

28  Commander position open. A decision was made to have Commander Reel act as Acting

Executive Commander for the first 14 months and Alvaro Ramirez assumed the role for an

1   additional 14 months. This would allow both men to obtain valuable management experience in

2   the Department due to past turnover rates in the management team.

3       14.    On May 27, 2014, Commander Reel began his assignment as the Acting Executive

4   Commander.  In this capacity, Commander Reel met on a regular basis with the two Commanders

5   Robert Sawyer and Alvaro Ramirez to share ideas related to improving departmental operations.

6   Chief of Police Eddie Madueno evaluated Reel in his position as Acting Executive Commander

7   and solicited input  from Commander Alvaro Ramirez, Commander Robert Sawyer and Staff

8   Assistant to the Chief of Police, Amanda Curiel. The overall assessment was that Mr. Reel was

9   very helpful to them in the performance of their respective duties and they appreciated him. Not

10  only did Plaintiff fulfill his duties in an exemplary manner, during this 14 month period, but he

11  also managed to earn his Masters in Public Administration by November 15, 2015.

12      15.    When Mr. Reel finished his term, Alvaro Ramirez became Acting Executive

13  Commander and Mr. Reel reported directly to him. According to Mr. Ramirez, Mr. Reel had

14  worked well with those supervisors under his command. Ramirez opined that he had no doubt Mr.

15  Reel believed in the department's mission statement and his decisions had been made in the best

16  interests of the Department. From 2015 forward, the El Centro Police Department had been

17  experiencing an understaffed management team, which made Mr. Reel's contributions as Acting

18  Executive Commander and Commander not only valuable but also critical. There were several

19  retirements in a short period and six vacancies creating a burden on the Police Department.

20  Commander Reel did not complain about the additional workload and continued to perform

21  exceptionally given the conditions.

22      16.    In July of 2017, Alvaro Ramirez became the official Executive Commander.

23  Shortly thereafter, in approximately December of 2017, Chief of Police Eddie Madueno retired

24  leaving the City of El Centro to recruit for a new Chief of Police. In the meantime, for

25  approximately three to four months, Ramirez was the Acting Chief of Police while several

26  candidates were interviewed for the position.

27      17.    In April of 2018, Defendant Brian Johnson was hired as the new Chief of Police for

28  the City of El Centro after a short stint of two and a half years as Chief of Police at Upland Police

Department. Unfortunately, Defendant City of El Centro, by and through Defendant City

FIRST AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF; DEMAND FOR JURY TRIAL

1    Manager, Marcela Piedra, failed to perform a mandatory POST background check on Defendant

2    Brian Johnson. The post-background check is a mandatory statutory requirement pursuant to Cal.

3    Code Regs. Tit. 11 §1953.  POST checks ensure the candidates are screened for their moral

4    character, communication skills, interpersonal skills and trustworthiness.

5        18.   Plaintiff is also informed and believes that Defendant City of El Centro, by and

6    through Defendant City Manager Marcela Piedra, also failed to administer a polygraph

7    examination to Defendant Johnson. Had these background measures been taken, the information

8    would have revealed that Defendant Brian Johnson had been forced to resign as the Chief of

9    Police for Upland Police Department in October of 2017 due to a vote of no confidence by the

10    Upland Police Officer's Association. The impetus for Defendant Johnson's forced departure from

11    Upland was his retaliatory terminations of  29 year veteran Captain Anthony Yoakum and 23 year

12    veteran Sgt. Marcus Simpson, after they had reported Chief Johnson's misconduct. These

13    management officers had reported Defendant Johnson for violating officer safety protocols and

14    exposing the Upland Police Department to liability for his illegal actions for false arrests at a

15    marijuana dispensary. Plaintiff is informed and believes that Defendant Brian Johnson was

16    formally reprimanded for his officer safety violations and other illegalities which was placed in

17    his personnel file. A POST background would have revealed a pattern and practice of retaliatory

18    conduct unbecoming of the Chief of Police.

19        19.   After Yoakum and Simpson reported Defendant Johnson's conduct, these senior

20    management officers were falsely accused of misconduct, insubordination and improperly

21    disparaging the Chief of Police Brian Johnson and were placed on administrative leave and,

22    thereafter, terminated. Both officers brought lawsuits alleging numerous violations of their civil

23    rights against the City of Upland and Defendant Johnson both in his individual and official

24    capacity. Plaintiff is informed and believes that a POST background would have revealed a

25    pattern and practice of taking adverse employment actions against employees who engage in

26    protected activity.

27        20.   A further investigation of Defendant Brian Johnson's tenure at Upland Police

28    Department revealed that in the nearly two and a half years he was there, Chief Johnson was at

   odds with nearly four fifths of his officers who either resigned or were unfairly terminated and

FIRST AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF: DEMAND FOR JURY TRIAL

1  that he was out of step with the men and smaller complement of women he commanded resulting

2  in his forced resignation.

3        21.     Unfortunately for Plaintiff Aaron Reel, Defendant Brian Johnson's pattern and

4  practice of taking adverse action against officers who reported his misconduct was to be repeated

5  at the City of El Centro causing the loss of his 25 year career. At the time of Defendant Brian

6  Johnson's hire, he was the first in command as the Chief, the second in command was Executive

7  Commander Alvaro Ramirez and there were two commanders, Plaintiff  Reel and Commander

8  Robert Sawyer. The same Administrative staff assistant, Amanda Curiel who had  served under

9  both Chief McGinley and Chief Madueno was now serving under Chief Johnson and had worked

10  with Commander Reel for several years.

11        22.     In approximately August of 2018, in the first few months of Defendant Chief

12  Johnson's tenure, Chief Johnson appeared to respect Commander Reel's leadership skills and

13  commitment to the El Centro Police Department. In a letter drafted to the Commission of Peace

14  Officer Standards and Training, Chief Johnson gave the highest recommendation to nominate

15  Commander Reel to attend the POST Command College Program. His recommendation stated in

16  pertinent part:

17        "As the Support Services Commander, Aaron provides the
          leadership and guidance to both sworn and civilian personnel with the El
18        Centro Police Department. Commander Reel is a progressive leader who
          is dedicated to the law enforcement profession...He has proven that he has
19        the skill set, commitment, and discipline...Commander Reel has taken the
          leadership role to develop and lead the personnel assigned to our training
20        and background unit to maximize their effectiveness. He has helped to
          develop a plan to fill the critical vacancies within our sworn and civilian
21        ranks... In the next three to five years, Commander Reel will have a
          critical role in the design, review and awarding of a contract through the
22        RFP process to build the new El Centro Policy Facility."

23        23.     However, in the following months, Commander Reel observed that Chief Johnson

24  had an aggressive management style with a quick temper and often using foul and vulgar language

25  in the workplace. Commander Reel also observed Chief Johnson's disrespectful treatment of

26  women often causing the female staff to be left in tears due to Plaintiff's abusive, foul and

27  inappropriate language.  At first, Plaintiff  Reel attempted to respect the chain of command by

28  reporting to the Chief himself as his supervisor that the female staff were upset and gently suggest

he apologize. However, this was never done. In addition,  Defendant Johnson would make several

1    demeaning and degrading comments about females to the Plaintiff to the effect that he should be

2    aware that "women in positions of power can be vicious" and that the Director of Human

3    Resources was difficult to work with "because she was a woman."   Plaintiff made another

4    attempt to suggest to Defendant Johnson that his comments could be perceived as sexist at which

5    time Chief Johnson directly threatened Plaintiff Reel by telling him that he was lucky he had made

6    those comments in a closed door meeting.

7         24.    Defendant Johnson's inappropriate conduct continued into 2019.  On March 19,

8    2019, Chief Johnson raised his voice and used vulgarity to his female staff assistant Ms. Curiel

9    when she submitted the budget request for training to Mr. Johnson. Defendant Johnson became

10   enraged when Ms. Curiel submitted the documents to him and yelled at her, "Aaron is fucking

11   working for me, he needs to ask my permission" in front of other staff.  There were several other

12   instances Commander Reel and management staff witnessed Chief Johnson verbally abuse his

13   administrative assistant Ms Curiel. This conduct was offensive and created a hostile environment

14   for Ms. Curiel and those around her. Commander Reel attempted to intervene on Ms. Curiel's

15   behalf to remedy the hostile environment and encouraged Defendant Johnson to apologize to her.

16   Mr. Reel's objections caused Defendant Johnson to become more irate and to direct threats

17   toward Commander Reel. In July of 2019, Executive Commander Alvaro Ramirez abruptly

18   resigned. Many staff members believe that his resignation was prompted by the hostile

19   environment created by Defendant Johnson.

20        25.    Chief Johnson's retaliatory animus toward Commander Reel came to a head on

21   August 16, 2019 when Chief Johnson accused Mr. Reel of not apprising him of a school threat

22   that Commander Reel believed he had under control and, in fact, turned out to be hyperbole; and

23   not a real threat. Chief Johnson berated and humiliated Commander Reel by engaging in

24   inappropriate, loud and vulgar language directed at Plaintiff, which was heard by several other

25   staff members. Commander Reel's peers and subordinates heard Defendant Johnson scream at

26   him using the f word asking him how long he had been with the department, how long he had

27   been a sergeant and mocking him that he was a commander. During this berating of the Plaintiff,

28   Defendant Johnson threatened Commander Reel that he would never promote him to the

Executive Commander position. The staff that overheard this exchange felt very uncomfortable

1   and embarrassed for Commander Reel to the point that they collectively made a decision to knock

2   on the door to alert Chief Johnson that everyone could hear what he was saying.

3        26.    On August 16, 2019, Plaintiff Reel made a formal complaint against Defendant

4   Johnson with the Director of Human Resources due to the culmination of the discriminatory

5   conduct directed toward female employees; his hostility directed against him, and Plaintiff's

6   inability to work out a remedy with the Chief.  In the complaint, Plaintiff  Reel reported his

7   concerns that Chief Johnson had engaged in sex discrimination against female employees and

8   hostility directed toward him and that he feared retaliation. As a result of these reports, Human

9   Resources Director hired an outside investigating company to investigate Commander Reel's

10  claims.

11       27.    On or about September 3, 2019, in close proximity to Plaintiff Reel's complaint,

12  Chief Johnson informed Commander Reel that a decision had been made to change the Executive

13  Commander position into a Deputy position that would serve at will without any due process

14  protections. Despite Defendant Johnson informing Plaintiff Reel he would never promote him, he

15  actually offered Commander Reel the at-will position of Deputy Chief which he declined. Plaintiff

16  is informed and believes the offer was made in order to be able to terminate Plaintiff at will

17  without affording him due process.

18       28.    In addition, on September 19, 2019, Defendant Johnson violated El Centro Police

19  Department policy and procedures by failing to place Commander Reel in the position of Acting

20  Chief of Police in his absence with a 10 percent increase in pay. Instead, Chief Johnson selected

21  Commander Ray Bonillas who had only been in the position for less than a year instead of

22  Commander Reel who had six years seniority. On September 23, 2019, when Defendant Chief of

23  Police Johnson returned from his vacation, he informed Plaintiff Reel that Officer Thompson

24  (under Commander Reel's chain of command) had filed a complaint of unfair treatment against

25  Reel. Interestingly, Officer Thompson's complaint contained allegations of his perceived belief

26  that administrative assistant Curiel and Commander Reel were trying to undermine the Chief and

27  his opinion that Reel was being "insubordinate to the Chief" when, in fact, an ongoing

28  investigation was being conducted as to the Chief's discriminatory and retaliatory animus toward

FIRST AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF; DEMAND FOR JURY TRIAL

1   Commander Reel and Curiel. The Director of Human Resources believed that Chief Johnson was
2   behind the allegations made by Officer Thompson.

3         29.   At the time of Thompson's complaint, Plaintiff had only supervised Officer
4   Thompson for approximately seventeen days and found the timing of this complaint and the
5   Chief's knowledge of it to be suspect. In addition, prior to Officer Thompson coming under the
6   supervision of Commander Reel, the City of El Centro had settled the largest police misconduct
7   wrongful death settlement of $4.1 million in the history of the Southern District of California for
8   the negligent supervision and training of Officer Thompson. Officer Thompson had also been
9   involved in a lawsuit in prior years for engaging in sexual harassment resulting in another million
10  dollar settlement. Needless to say, Officer Thompson had serious performance issues prior to
11  being supervised by Commander Reel. Director of Human Resources had actually warned
12  Defendant Johnson that he should review Officer Thompson's  personnel file prior to making a
13  decision to promote him. In fact, Chief Johnson had encouraged Commander Reel to issue Officer
14  Thompson a counseling memo for performance deficiencies a month earlier on August 13, 2019
15  prior to Commander Reel formally complaining about Defendant Johnson.

16        30.   While these investigations were on going, in the September and October of 2019
17  time frame, Plaintiff  Reel e-mailed Defendant Johnson his list of accomplishments for the 2018-
18  2019 time frame as was his custom and practice. He sent the e-mail to the Chief because
19  Executive Commander Alvaro Ramirez, who Plaintiff directly reported to, had left the
20  Department and Chief Johnson was now in charge of his performance review. Although Plaintiff's
21  review was an overall satisfactory rating, the list Plaintiff sent Chief Johnson was a two page list
22  of the achievements he had accomplished in his position as Commander. Chief Johnson ignored
23  Plaintiff's e-mail and none of those items were placed in his annual review.

24        31.   On November 6, 2019, the City of El Centro's outside administrative investigation
25  issued a confidential report to the City of El Centro regarding Commander Reel's August
26  complaint of discrimination and retaliation against Chief Johnson, with two sustained findings:
27  (1)  Defendant Chief Johnson had used inappropriate language and raised his voice in the presence
28  of subordinate employees in 2019 and (2) Defendant Chief Johnson had violated department
policy concerning succession of command on September 19, 2019. Despite these sustained

1  findings, no one informed Commander Reel of the results of the investigation. Unbeknownst to

2  Plaintiff Reel, Chief Johnson was issued a reprimand in his personnel file for these sustained

3  findings. Despite these sustained findings, Plaintiff Reel was not immediately compensated for the

4  loss of his pay entitlement when he was deprived the role of Acting Chief.

5      32.    On or about November 20, 2019, the El Centro Police Department was audited by

6  the California Commission on Police Officers and Training. The Commission determined that

7  Defendant City of El Centro had failed to perform a background investigation on Defendant Brian

8  Johnson in violation of the law. Plaintiff is informed and believes that the City of El Centro was

9  ordered to complete a POST background on Chief Johnson by December 20, 2019 or they would

10  order him to resign.  Plaintiff is further informed and believes that Defendants Johnson and the

11  City of Centro deliberately failed to obtain the appropriate background information, which would

12  have demonstrated Chief Johnson's pattern and practice of retaliation to Officers in his chain of

13  command that engage in protected activity by reporting his illegal conduct.

14      33.    On November 25, 2019, Plaintiff contacted the Department of Fair Employment and

15  Housing to open an investigation for discrimination, harassment and retaliation. The DFEH claim

16  stated in pertinent part:

17          "Chief Johnson has engaged in a year and a half long
           campaign to accost, attack, and otherwise discredit and isolate me in the
18          workplace. This has gone on shortly (a couple of months) after he was
           hired and has been intermittent in frequency however consistent in
19          reoccurrence. I have been yelled at and cussed at, and personally attacked
           in a number of interactions by Chief Johnson to the point that I filed a
20          complaint against him with the City of El Centro Police Department on
           August 19th of this year. The complaint consisted of workplace
21          harassment, mistreatment and unprofessional misconduct. The complaint
           is being investigated by an outside firm on behalf of the City of El Centro.
22          During the investigation, I disclosed Chief Johnson's sexist and
           defamatory remarks about women, specifically women in positions of
23          power, and my confronting him on such statements. Chief Johnson is
           aware of the complaint and has remarked to others, maybe to the point
24          even slightly manipulating the process/investigation."
        This DFEH complaint and the right to sue is attached to this complaint as
25        Exhibit "1)

26      34.    On or about November 28, 2019, Chief Johnson went on vacation and again

27  intentionally retaliated against Plaintiff by selecting the other Junior Commander Ray Bonillas for

28  Acting Chief in violation of Department policy. This deprived Plaintiff to the title and extra

incentive pay he was entitled to receive. Plaintiff again reported to Human Resources Director that

FIRST AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF: DEMAND FOR JURY TRIAL

1  Defendant Johnson was continuing to retaliate against him for violating department policy

2  because he had filed a complaint. Again, despite the City having a Confidential Report sustaining

3  findings that Chief Johnson's actions were policy violations, Plaintiff was not immediately paid

4  for the loss of the opportunity to be placed in as Acting Chief.

5       35.    In further retaliation, in December of 2019, Defendant Chief Johnson deliberately

6  changed the Department policy along with the approval of Defendant City Manager Marcela

7  Piedra that the Chief now had the discretion to choose the Commander he wished to be in charge

8  in the event of his absence. This effectively caused Commander Reel to be permanently blocked

9  from exercising his right to act in the capacity of Acting Chief for the remainder of his tenure.

10 Plaintiff is informed and believes that this decision was done intentionally to deprive Plaintiff of

11 his rights and was in violation of the law.

12      36.  On December 11, 2019, Plaintiff was informed by several of his direct report

13 subordinate officers that they had been interrogated by Defendant Brian Johnson while Plaintiff

14 Reel had been out taking care of one of his sick little girls. These subordinate officers in

15 Commander Reel's chain of command informed Plaintiff that Chief Johnson was trying to make

16 an issue out of the detail regarding a Christmas parade in an attempt to find some fault with

17 Commander Reel while he was out of the office. Upon his return to the office, Staff Assistant to

18 the Chief of Police Amanda Curiel informed Commander Reel that "he needed to watch his back"

19 because Chief Johnson was after him. Other staff members offered their support to Commander

20 Reel that he should not have to tolerate this type of retaliatory behavior.

21      37.    After learning of Chief Johnson's behavior, that same morning of December 11,

22 2019 at 8:54 a.m., Plaintiff Reel reached out again to Human Resources Director by e-mail stating

23 in pertinent part:

24         "I really hate coming to you with this however, I really can't turn
           to anyone here with the issues. My tank is pretty full when it comes to my
25         stress levels. I have been subjected to quite a bit and really have to come
           to grips with the fact that I am in need of something other than what I
26         have tried. I'm losing sleep, can't sleep, wake up early (like this morning
           at 3:30 am and with work weighing on my mind. I have anxiety, which I
27         am honestly unfamiliar with, my heart pounds through my chest thinking
           about some of the things I have been subjected to. In the absence of
28         another commander, I have taken on additional workload which used to
           be assigned to the commander. In many cases, I would thrive on the
           challenge however, I can't focus, my mind wanders, and even at home all

FIRST AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF: DEMAND FOR JURY TRIAL

I think about is the negativity. I was home taking care of a sick little girl over the last two days only to return to work to be warned by an employee that I need to be careful because there is a target on my back...I know that you and I had a conversation with regard to the policy issue, retaliation (either real or perceived) and by being generally isolated by this chief. All of this is taking a toll and I absolutely, although reluctantly and embarrassingly admit that I may not be handling all the stresses very well on my own...If you have time, I would like a little direction."

38. Under the direction of HR Director, Commander Reel filed a worker's compensation claim due to Defendant Johnson's discriminatory and retaliatory actions. Plaintiff had never had any treatment nor symptoms prior to this time. On December 11, 2019, Plaintiff Reel was seen by a physician which immediately placed him on an anti-anxiety medication of Ativan and sent him for a psychological assessment. Commander Reel was diagnosed with anxiety and depression, and was placed on medical leave. Upon his return from medical leave, the worker's compensation physician advised him to take five minutes per hour to psychologically recharge to be able to handle his work environment.

39. On January 27, 2020, Commander Reel returned after six and a half weeks of medical leave to find that his office belongings had been packed up and his office had been moved to a much smaller office next to the Chief's office. Commander Reel was also stripped of all his previous job duties: field operations, SWAT, field training program and all areas related to police operations. Commander Reel was told by Chief Johnson that he was to assume the duties of an "administrative" Commander, which is the less attractive of assignments and usually given to the junior Commander. Plaintiff formed the reasonable belief that he was continuing to be retaliated against. Despite repeated requests by Commander Reel regarding his job description, Chief Johnson ignored him and shut him out of all important meetings or decisions regarding the organizational structure and informed him that he would find out his duties once the new Deputy Chief was hired. From this point forward, Chief Johnson refused to meet with Commander Reel one on one. In the meantime, Commander Reel continued with his psychological therapy to deal with the adverse employment actions and the continuous hostile environment. After he returned from medical leave and was continuing his therapy, his personal therapist, Dr. Quiero, advised him that he needed to psychologically unplug himself from his job while not at work by turning off his phone and e-mails, and to just spend time with his family.

FIRST AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF; DEMAND FOR JURY TRIAL

40.     On January 28, 2020, Commander Reel was finally informed that his original discriminatory complaint against Chief Johnson had been sustained and that he was entitled to the pay of Acting Chief that he had been deprived.  Despite the Director of HR directing Chief Johnson to pay the Plaintiff, he refused.  Plaintiff continued to not receive his extra compensation.

41.     On February 11, 2020, Commander Reel received his performance evaluation from Defendant Chief Johnson which was favorable and did not contain any performance issues or deficiencies. However, unbeknowst to Plaintiff, Defendant Johnson was negotiating the re-hire of former Commander Robert Sawyer who had previously been at El Centro to fill the position of Deputy Chief and was formulating a plan to get rid of Commander Reel.

42.     On February 18, 2020, Chief Johnson hired Robert Sawyer as the new Deputy Chief. Chief Johnson admitted to the Director of Human Resources and other City Management officials that he was bringing back Sawyer so he could get rid of Commander Reel. Prior to the arrival of Deputy Chief Sawyer, the HR Director had informed Plaintiff that there were no sustained findings with regard to Officer Thompson's complaints and that it had been completed by the outside investigation firm. Without the Director of Human Resources' knowledge ( who was in charge of the investigation), Chief Johnson directly contacted the outside investigator and directed him to begin interviewing additional witnesses to compile derogatory information in order to build a case against Commander Reel as it was his intent to separate him from the department. In addition, Chief Johnson directed Deputy Chief Sawyer to collect any information regarding Commander Reel that could be utilized against him. This plan was condoned and ratified by Defendant City Manager Marcela Piedra.

43.     After the hiring of Deputy Chief Sawyer, Commander Reel was now under the direction of Deputy Chief Sawyer who Chief Johnson had shared his discriminatory animus against.  On March 13, 2020, the City of El Centro declared a local state of emergency and Commander Reel was designated and took an active role as the Planning Chief for the Emergency Operations Center for the City of El Centro. This position required him to submit reports by 7:00 a.m. to the Fire Chief, which effectively changed his work hours to begin his shift at approximately 5-5:30 a.m.

44.     On March 30, 2020, during a command staff meeting, Commander Reel identified two police officers who met the criteria of high-risk individuals who should be protected from the risk of becoming infected with Covid-19. Commander Reel had been utilizing the Center for Disease Control guidelines and had educated himself regarding high-risk factors including age, obesity, medical issues such as immune deficiencies, diabetes, cancer survivors, and respiratory illness. Commander Reel was intimately aware of the medical conditions of all officers. Commander Reel identified two officers who met the high-risk category and strongly urged Command Management to remove him from the field, based on his preexisting conditions. Commander Reel identified one of the Officers, who will be referred to as Officer C, and disclosed that he met all the criteria for high risk as he was over 50, overweight, diabetic and a recipient of an organ transplant.  In attendance at this command staff meeting was Chief Brian Johnson, Deputy Chief Robert Sawyer, Commander Ray Bonillas and staff assistant Amanda Curiel, and Commander Reel. When Commander Reel requested that two officers be relieved of field duties, he received immediate pushback from his chain of command because it would strain staffing levels on patrol. As a consequence, no one acted on this recommendation and eight days later Officer C was diagnosed with Covid-19. The other officer that Commander Reel had identified as high-risk, who will be referred to as Officer H, also tested positive for Covid-19 which spread to his family, including the Officer H's wife, who became gravely ill and was placed in intensive care. In addition, Commander Reel was concerned that the El Centro Police Department did not have the proper protocols in place for the N-95 masks for their officers.

45.     When Officer C became ill, Commander Reel reminded Deputy Chief Sawyer and Commander Bonillas that he had told them back in March that Officer C had needed to get out of the field. Unfortunately, on May 27, 2020, Officer C was in critical condition. That same day, Chief Johnson instituted new safety protocols, which Commander Reel had been trying to effectuate since March.

46.     On June 2, 2020, after Officer C's condition became grave, Commander Reel became extremely emotional and went behind closed doors with Deputy Chief Sawyer and stated: "I f*ing told you that this was going to happen." The following day, Officer C passed away from

FIRST AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF; DEMAND FOR JURY TRIAL

1  Covid-19 and was considered an in the line of duty death. Plaintiff sought legal advice as to his

2  rights in reporting his reasonable belief that the Command Management team had not properly

3  protected Officer C by taking the necessary safety precautions by removing him from the field

4  which contributed to the death of this Officer.  At this point, Commander Reel was acting as a

5  private citizen in objecting to the manner in which the El Centro Police Department Command

6  had violated officer safety protocols to reduce the risk of Covid-19 infection.

7       47.     After the death of Officer C, several subordinate staff members who had known

8  this officer for several years approached Commander Reel asking him to ask if Deputy Chief

9  Sawyer could deliver the devastating news about Officer C's passing because he had known him

10  the longest. In response to this request, Commander Reel privately informed Deputy Chief Sawyer

11  that he thought he should be the one to inform the staff as he had been approached about the issue

12  because of the long-standing relationships Commander Reel, Sawyer and Officer C had which

13  spanned approximately 25 years. Plaintiff is informed and believes that Chief of Police Johnson

14  was angry at Commander Reel because he had reported his belief that the Command Management

15  team had not properly protected Officer C. Plaintiff is further informed and believes that Chief

16  Johnson took offense to Plaintiff's private request that Deputy Sawyer handle the news of Officer

17  C's death, which Plaintiff did not mean any disrespect, and was not even his idea but a message

18  he passed to Chief Sawyer from other staff members.

19       48.     On June 8, 2020, Commander Reel and other staff members were transporting

20  Officer C's body from the mortuary which was a very emotional event for all staff who were very

21  close to this officer who had passed away.  As Commander Reel was assisting other staff officers

22  with the placement of a flag over the transport box of Officer C's body,  Chief Johnson

23  approached Commander Reel and asked him who was coordinating the parking, at which time

24  Commander Reel responded that he did not know but that he was hopeful that it would self-

25  organize. Although Deputy Chief Sawyer had the full oversight of the coordination efforts of

26  transporting Officer C home, Chief Johnson became angry with Commander Reel who told him

27  "if you ever f*ing disrespect me in front of my troops again, I will sideline your ass in a f*ing

28  heartbeat." After this interaction, Chief Johnson began to walk off. Plaintiff told Defendant

1  Johnson he did not know what he was talking about because he was not in charge of the event and

2  he was merely helping as asked. Chief Johnson told him: "you are f*ing Commander of Police,

3  you didn't make any of the decisions here?", Mr. Reel said no. Mr. Reel was visibly shaken by

4  this event which was noticed by the surrounding officers and he was once again embarrassed and

5  humiliated by Defendant Johnson's actions, Within a couple of hours of this incident, Mr. Reel

6  reported this additional threat by Defendant Johnson to the  HR Director by text requesting to

7  meet with her again.

8        49.    On June 9, 2020, the following day, Plaintiff met with HR Director, reporting that

9  he was continuing to be retaliated against and that he wanted to formally report the failure of the

10  El Centro Police Department to protect its most at risk personnel from Covid-19. During this

11  meeting, HR Director requested that he place both his formal complaints in writing.  Plaintiff Reel

12  complied and turned in two separate complaints: (1) for continuous retaliation and hostile

13  environment due to his earlier reports of Johnson's conduct and (2) for officer safety violations of

14  the command staff, including Defendant Chief Johnson, which contributed to Officer C's

15  contracting Covid-19 and his unfortunate death.  Plaintiff turned in his formal written complaints

16  on or about June 15, 2020.

17        50.    On July 7, 2020, Plaintiff was informed by the HR Director that she had notified

18  Defendant Brian Johnson of his complaints. HR Director had waited until Officer C had been laid

19  to rest. Defendant Brian Johnson immediately went into defense mode suggesting that he intended

20  to place Plaintiff Reel on administrative leave but could not articulate any valid reasons to the HR

21  Director. HR Director also became aware that Defendant Johnson was falsely spreading

22  information that Officer C had requested to stay in the field which his wife had vehemently

23  denied.

24        51.    The following day, on July 8, 2020, HR Director met with Commander Reel and

25  asked if there would be any possibility to mediate the complaints given all of the investigations

26  that were going to have to be conducted. Commander Reel explained that he had been attempting

27  to remedy the hostile environment caused by Chief Johnson since August of 2018, and  he

28  believed that he had been subjected to so much retaliation he was not sure he would be able to

FIRST AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF; DEMAND FOR JURY TRIAL

1 continue to work with him. The next day on July 9, 2020, Commander Reel was placed on

2 administrative leave pending an investigation into "potential misconduct and policy violations."

3 The vague allegations violated Government Code Section §3303(c) by failing to properly notify

4 Plaintiff of the allegations levied against him. Chief Johnson's request to place Commander Reel

5 on administrative leave just two days after becoming aware of Plaintiff's retaliation and officer

6 safety violations demonstrates clear evidence of Chief Johnson's retaliatory intent.

7     52.    Defendant Johnson lied to Commander Reel regarding the reasons  he was being

8 placed on administrative leave by telling him it was due to another employee complaint against

9 him and that he would have to find out the reasons through contacting Human Resources. When

10 Commander Reel contacted HR Director about the complaint, she confirmed that the Chief was

11 the one who had issued the complaint and that she had notified Defendant Johnson of Commander

12 Reel's formal complaints just days prior to his decision to place Commander Reel on leave.

13     53.    On July 10, 2020, Plaintiff followed up with his Department of Fair Employment

14 and Housing investigation which informed him that his case of 2019 against Defendant Johnson

15 was still being investigated. Commander Reel also contacted the Department of Labor to file an

16 OSHA complaint for them to investigate the lack of Covid-19 field protocols and the death of

17 Officer C.

18     54.    On August 25, 2020, Defendant Johnson finally came up with some false

19 allegations against Plaintiff Reel after interviewing and collecting information which he had no

20 first hand knowledge and e-mailed HR Director:

21         "The following is a summary of the allegations of misconduct alleged against Commander Reel. As we discussed during our

22 meeting, I am not a witness to all the allegations, but they were brought to my attention as the Police Chief. The allegations fall into the following

23 allegations of misconduct:

24         1.    Allegations of dishonesty, false and misleading statements while Commander Reel was on duty, in the performance of his official duties. Command staff will need to be interviewed for these allegations,

25 Former Exec. Commander Ramirez will probably need to be interviewed too.

26         2.    Insubordination, Conduct Unbecoming an Officer, and unprofessional behavior in violation of department and City policy.

27 Various department employees will need to be interviewed regarding these allegations.

28         3.    Made false complaints against me that could be violation of various state laws and statutes. Some of the allegations he's made

FIRST AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF: DEMAND FOR JURY TRIAL

against me, I believe that he knowingly made the complaints against me, knowing they were false and there was no evidence to support his allegations. If true, these are forms of creating a hostile work environment and retaliation.

On another note, what is the status of Sgt. Thompson's complaint. I am sure he will be asking me now that I am back to work."

55.     On August 26, 2020, the City Attorney for the City of El Centro, Elizabeth Martyn, informed the DFEH in the City's response to Plaintiff's 2018 complaint that two findings were sustained against Chief Johnson for violation of police department policy and represented that Commander Reel was in the process of being paid for each time that he was not designated as the acting Police Chief. However, Commander Reel was not paid until October of 2020, which demonstrates that it took two years for the City of El Centro to pay what Commander Reel was entitled to, two years earlier. In this City Attorney's response she also reported that Commander Reel had filed several other complaints against Chief Johnson for retaliation, and that an internal investigation had begun on those complaints. This was untrue. There was not an investigation regarding Plaintiff's retaliation complaints. Rather, the investigation was about to begin  focusing, instead, on Chief Johnson's trumped up false allegations regarding Commander Reel's performance.  Plaintiff contends that there was a continuous violations of rights from the first time he reported Defendant Johnson's conduct and brings this lawsuit under the continuing violations theory.

56.     On September 18, 2020, while Mr. Reel was on administrative leave pending the investigation of Chief Johnson's allegations against him, Commander Reel received a notice of intended disciplinary action-written reprimand and a 20-day suspension on Officer Thomson's complaints that had earlier been closed. This was the earlier investigation that had been reopened by Defendant Johnson who had gone behind HR Director's back and poisoned the investigation by adding new charges and witnesses, that Commander Reel had never had an opportunity to defend himself against. Although Plaintiff Reel was on administrative paid leave pending another investigation, a twenty day suspension for supervising a problem employee over a 17 day period was excessive and based on false allegations. Defendant Johnson tampering with the investigation and violated Commander Reel's due process rights as he was not able to rebut the accusers that Defendant Johnson had illegally added to the already closed investigation. In addition, Plaintiff

1  never received the actual written reprimand that was referred to in the disciplinary suspension.

2       57.   On September 24, 2020, Defendant City of El Centro began an investigation through

3  an outside investigator for what Plaintiff Reel believed was for his two complaints regarding

4  continual retaliation and officer safety violations. Instead, the investigation focused on what

5  Defendant Chief Johnson had alleged against Commander Reel regarding dishonesty,

6  insubordination and making false complaints against Chief Johnson. As Chief Johnson had done

7  with the previous Thompson investigation, he manipulated and coerced his command staff to

8  make false allegations and even went to lunch with the investigator. At no time was Commander

9  Reel's complaints addressed during this investigation as it was one sided and none of Commander

10  Reel's witnesses were interviewed. Plaintiff is informed and believes that the City of El Centro

11  further violated his due process rights by not providing an independent investigation with a

12  separate investigator regarding the continuous retaliation and the reporting of officer safety

13  protocols.

14       58.   On October 1, 2020, Mr. Reel contacted the Employee's Assistance Program for a

15  face to face counseling referral for stress and anxiety. He finally got an appointment with a

16  counselor on October 9 and was diagnosed with generalized anxiety disorder.

17       59.   On November 24, 2020, HR Director reviewed Plaintiff Reel's rebuttal to the

18  Suspension and reduced the original 20-day suspension to a 3-day, based on the lack of evidence

19  and the tainted investigation.

20       60.   This would be short lived, however, because on February 1, 2021,  the City

21  Manager, Defendant Piedra ( who had a intimate personal relationship with Defendant Johnson)

22  reversed the HR Director's decision and reinstated the twenty day suspension resulting in a

23  monetary loss of approximately $10,000.00 to Commander Reel.

24       61.   Shortly thereafter, on February 11, 2021, Commander Reel received another letter

25  entitled  "Notice of intended disciplinary action-termination from employment," where the basis

26  for this personnel action was that Reel had violated the ECPD's Policies and Procedures and the

27  City's Personnel Rules and Regulations for the following unsubstantiated reasons:

28  / / /

FIRST AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF; DEMAND FOR JURY TRIAL

1   •     dishonesty regarding his medical restrictions and other non-sensical reasons regarding a

2         vehicle that had been on a removal from service list,

3   •     insubordination for informing the Chief during the transport of Officer C that he did not

4         know about the parking situation; and

5   •     for bringing false complaints about retaliation and regarding officer safety protocols not

6         being followed for Covid-19 because that made the Department look bad.

7         After receiving this information, Plaintiff Reel contacted the Department of Fair

8   Employment and Housing to add his proposed termination to his investigation and was told to file

9   another complaint which he did. Attached as Exhibit 2 is his formal complaint and right to sue

10  from the DFEH.

11        62.    While Commander Reel was appealing this notice through the Skelly process, HR

12  Director was named as the Skelly Officer, a role that she had never performed.  While the Skelly

13  process was pending, both the HR Director and the City Attorney disagreed with the decision to

14  terminate Commander Reel because the reasons did not substantiate a termination of Commander

15  Reel's twenty-five year employment career. HR Director informed the City Attorney, City

16  Manager Piedra and the  City Council that it was the Chief of Police that should be fired for lying

17  and that Commander Reel should retain his position.

18        63.    It was the HR Director's position that it was obvious that Defendant Johnson was

19  adding anything and everything that he could think of to discredit Commander Reel, even calling

20  his performance out for typographical errors which certainly would never be a basis for a

21  termination. According to HR Director, if Commander Reel had indicated that his therapist

22  wanted him to not be contacted after hours due to his anxiety and depression, all they had to do

23  was request a note instead of accusing him of lying. In addition, HR Director told City Manager

24  Piedra and the City Attorney that his allegations against Commander Reel for dishonesty were

25  ridiculous and that there was not one instance regarding any of the allegations that Commander

26  Reel that would lead to a termination. Despite HR's reports, Defendant City of El Centro ignored

27  the recommendations of their own HR Director and the City Attorney and terminated Commander

28  Reel effective April 15, 2021.

FIRST AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF: DEMAND FOR JURY TRIAL

64.     To demonstrate the retaliatory animus of Defendant Johnson, he issued another letter of intent to terminate on March 24, 2021, which regurgitated the reasons of dishonesty over a stored vehicle; the facts of which were falsely alleged. During the Skelly hearing regarding this issue, HR Director informed Plaintiff Reel's representative that she was going to immediately dismiss this claim and that she was going to resign due to Chief Johnson's illegal actions toward Commander Reel and the hostility she had also experienced first hand. HR Director resigned after complaining to City Manager Piedra regarding Chief Johnson's conduct and discriminatory behavior. After the Skelly dismissal, Plaintiff again contacted DFEH and opened another claim with his recent date of harm being June 9, 2021. Plaintiff has requested his right to sue. The DFEH claim is attached as Exhibit 3.

65.     Plaintiff  Reel is informed and believes and thereon alleges that the Defendants, and each of them, conspired to and did deprive him of his right to Due Process. The first being that Defendant Johnson improperly contacted the Investigator regarding Officer Thompson's investigation behind the HR Director's back, interviewing additional witnesses to elicit false and damaging information without giving Commander Reel the opportunity to be heard regarding these new allegations. When the suspension was initiated, it indicated that Plaintiff was to be issued a Notice of Reprimand but he was never given a copy of the Reprimand to dispute the allegations in further violation of his Due Process Rights. Thereafter, Plaintiff was given a defective notice related to his administrative leave as he was deprived of the reasons he was being placed on leave in violation of his due process rights.

66.     Plaintiff's rights were further violated by Defendants attempts to discipline him twice for the same claimed violation regarding dishonesty about a stored vehicle which had no basis in fact. Plaintiff was further denied a fair investigation based on a series of conflicts of interest. Plaintiff did not receive an impartial investigation regarding his claims of retaliation and officer safety violations with regard to the lack of Covid-19 precautions.   He was further denied due process by failing to provide an independent investigator to investigate his claims as opposed to the same investigator who was being directed by Chief Johnson in a blatant attempt to trump up baseless charges to terminate Plaintiff.  Plaintiff's Skelly process was further lacking in due

1   process as the HR Director, who had never been involved in the process, was under orders to

2   terminate Plaintiff despite her objections to the City Manager, City Attorney and City Council that

3   the Chief was lying and that it was the Chief who should have been fired. Therefore, the Skelly

4   process was tainted and the Chief of Police, Defendant Johnson and the City Manager, Marcela

5   Piedra, were integral participants in the discharge of the Plaintiff and the violation of his due

6   process to a fair and impartial hearing.

7       67.    Plaintiff is further informed and believes that the actions of Defendants Johnson and

8   Piedra as described herein were malicious, fraudulent, oppressive, done with a willful and

9   conscious design to injure Plaintiff and with a blatant disregard for Plaintiff's rights. Defendants,

10  and each of them and/or their agents/employees, supervised, authorized, condoned and ratified the

11  unlawful conduct of Defendant Johnson.

12                  **FIRST CAUSE OF ACTION**

13  **(Failure to Perform Mandatory Duty against Defendant City of El Centro pursuant to Gov.**

14                  **Code §815.6 (a))**

15      68.    Plaintiff hereby incorporates by reference paragraphs 1 through 67, inclusive, as if

16  set forth herein in full.

17      69.    Pursuant to Cal. Gov. Code § 815.6,  a public entity is directly liable for an injury

18  approximately caused by its failure to discharge a mandatory duty imposed by an enactment that is

19  designed to protect against the risk of a particular kind of injury unless the public entity

20  established that it exercised reasonable diligence to discharge the duty. As a public entity,

21  Defendant City of El Centro had a mandatory duty pursuant to California Government Code

22  §1031(d) to perform a mandatory background check prior to the hiring of Defendant Brian

23  Johnson. California Government Code §1031(d) is a mandatory legal requirement which required

24  the City of El Centro to ensure that peace officers, including Defendant Johnson, met certain

25  minimum standards at the time he was hired, including being of good moral character and the

26  absence of past behavior indicative of unsuitability to perform the duties of a peace officer as

27  determined by a thorough background investigation.  The mandatory background investigation

28  included the past ten years of a Defendant Johnson's employment, including his relationship with

1   his colleagues and subordinate employees.

2       70.   The California Code of Regulations Tit. 11 §1953 further provides that while the

3   use of the manual provided by the California Commission on Peace Officers Standard and

4   Training (POST) is discretionary, the POST Background Investigation Dimensions of Integrity,

5   Impulse Control/Attention to Safety, Substance Abuse and Other Risk-Taking Behavior, Stress

6   Tolerance, Confronting and Overcoming Problems, Obstacles, and Adversity, Conscientiousness,

7   Interpersonal Skills, Decision-Making and Judgment, Learning Ability and Communication skills

8   **shall** be considered in the conduct of every peace officer background investigation.

9       71.   Prior to Defendant Brian Johnson's hiring by the City of El Centro, the El Centro

10  Police Department had adopted the mandatory requirements of the California Commission on

11  Peace Officers Standards and Training in their hiring manual  including Integrity defined as the

12  intentional omission of facts and Credibility as a witness defined as any history of actions

13  resulting in civil lawsuits against the applicant or his employer.

14      72.   In approximately April of 2018, at the time Defendant Brian Johnson was hired by

15  the City of El Centro, Defendant Johnson had been forced to resign as the Chief of Police of the

16  Upland Police Department due to a vote of no confidence by the Upland Police Officer's

17  Association. As such, at the time of  Defendant Johnson's hire at the City of El Centro, he was no

18  longer a sworn peace officer. Instead, Defendant Johnson had been stripped of his title as the

19  Chief of Police for the City of Upland and was no longer a peace officer. During the application

20  and hiring process for the City of El Centro, Defendant Brian Johnson was a civilian, a former

21  peace officer, and "an applicant " with whom the Defendant City of El Centro had a mandatory

22  obligation to perform a background investigation as required by Cal. Gov. Code §1031(d).

23      73.   By failing to conduct any background investigation prior to the hiring of Defendant

24  Brian Johnson, Defendant City of El Centro violated the mandatory requirements of Cal. Gov.

25  Code §1031(d).

26      74.   Plaintiff is informed and believes that had Defendant City of El Centro not breached

27  their mandatory duty to conduct the mandatory background investigation, the City would have

28  known that his background violated POST background requirements because he had a history of

FIRST AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF; DEMAND FOR JURY TRIAL

1  actions that had resulted in civil lawsuits against him as the Chief of Police for Upland Police due

2  to his retaliatory terminations of 29 year veteran Captain Anthony Yoakum and 23 year veteran

3  Sgt. Marcus Simpson, after they had reported Chief Johnson's misconduct. These management

4  officers had reported Defendant Johnson for violating officer safety protocols and exposing the

5  Upland Police Department to liability for his illegal actions for false arrests at a marijuana

6  dispensary. A POST background would have revealed a pattern and practice of retaliatory conduct

7  unbecoming of the Chief of Police.

8        75.   Plaintiff is further informed and believed that a POST background search would

9  have also revealed that Chief Johnson had a pattern and practice of retaliating against officers who

10 reported his illegal conduct by falsely accusing them of misconduct, insubordination and

11 improperly disparaging the Chief of Police Brian Johnson. The background information would

12 have revealed that Defendant Johnson's conduct included placing officers who reported his

13 conduct on administrative leave; he would make up false accusations for the officers to be

14 investigated and he would thereafter make recommendations to terminate them.

15       76.   Plaintiff is further informed and believes that in December of 2019, Defendant City

16 of El Centro was ordered by the California Commission on Police Officers and Training to

17 complete a POST background because they were not able to locate a background file indicating

18 the City of El Centro' failure in their mandatory duty and demonstrating that the City had in fact

19 breached their duty as they were put on notice of their breach in 2019 that a background

20 investigation had never been performed on Defendant Brian Johnson.   At the time this directive

21 was issued by POST, the legislature had amended Penal Code §832.12 in January of 2019 which

22 required Defendant City of El Centro to obtain Defendant Brian Johnson's personnel file and/or

23 separate file involving investigations of his misconduct. Penal Code §832.12 was also a

24 mandatory duty required by Defendant City of El Centro.

25       77.   Despite this directive, Defendant City of El Centro violated POST's order and

26 continued to violate Government Code §1031(d) and Penal Code §832.12 by failing to obtain the

27 background personnel files of investigations of misconduct that were on file with Defendant

28 Johnson's previous employer, City of Upland.

78.     Plaintiff is informed and believes and based thereupon alleges that Defendant City of El Centro's failure to perform  their mandatory duties pursuant to Government Code §1031(d) and Penal Code §832.12, was a substantial factor in causing Plaintiff to be subjected to Defendant Johnson's retaliatory and adverse employment actions because his conduct against the officers at the Upland Police Department was substantially similar to the conduct that he became subjected to causing him substantial harm to his career.

79.     As a result of the acts and omissions alleged herein, Plaintiff has sustained and will continue to sustain substantial losses in earnings, promotions, bonuses, deferred compensation and other employment and career benefits,  all to his damage in an amount according to proof.  In addition, Plaintiff has suffered and will continue to suffer damage to his career and reputation, in an amount to be determined according to proof.

80.     As a further result of the acts and omissions alleged herein, Plaintiff has suffered and continues to suffer humiliation, fear, embarrassment, emotional anguish and extreme mental stress, requiring him to seek the services of medical professionals for appropriate treatment to his damage, in an amount to be determined according to proof.

WHEREFORE, Plaintiff requests relief as hereinafter provided.

**SECOND CAUSE OF ACTION**

**(Negligent Hiring, Supervision & Training against Defendant Piedra and City of El Centro pursuant to Gov. Code §815.2 (a))**

81.     Plaintiff hereby incorporates by reference paragraphs 1 through 80, inclusive, as if set forth herein in full.

82.     California state law permits municipalities to enact regulations creating a "City Manager form of government." Defendant City of  El Centro has enacted such regulations as part of their city charter. Pursuant to the City of El Centro's Municipal Code Sections 2-81 and 2-82, City Manager, Marcela Piedra was the "administrative head of the government of the city, The City of El Centro has delegated to the City Manager Piedra the authority to control, order, and give directions to all heads of departments and to subordinate officers and employees of the City. More specifically, it is the City Manager's duty to appoint, discipline, remove, promote and

1  demote any and all officers and employee's of the city except the city clerk and the city attorney.

2  In addition, City Manager Piedra had the duty and power to exercise control over all departments

3  of government of the city and over all appointive officers and employees thereof.

4      83.    At all times relevant hereto, City Manager Marcela Piedra was responsible for the

5  hiring, supervision and control of their employees, agents, and other personnel, including, but not

6  limited to Defendant Brian Johnson.  As such, Defendant Piedra owed a duty of due care to her

7  current employees, including the Plaintiff, to properly hire, supervise and train the employees and

8  other personnel to comply with and to place adequate procedures to prevent the actions of

9  Defendant Brian Johnson from occurring.

10      84.    Plaintiff is informed and believes that Defendant City Manager Piedra was aware

11  that prior to his employment with City of El Centro, Defendant Brian Johnson was employed as

12  the Chief of Police for both Los Angeles and the City of Upland, located in Southern California.

13  California Government Code Section 1031 required Defendant City of El Centro, through City

14  Manager Piedra, to conduct a full background check on Defendant Brian Johnson prior to his hire,

15  including but not limited to, the past ten years of his employment including his relationship with

16  his colleagues and subordinate employees. The background check also required a search of

17  Defendant Johnson's general personnel file or any other separate file designated by any previous

18  law enforcement agency pursuant to California Penal Code §832.12 (b).

19      85.    Defendant City Manager, Marcela Piedra, failed to perform a mandatory POST

20  background check on Defendant Brian Johnson. The post-background check is a mandatory

21  statutory requirement pursuant to Cal. Code Regs. Tit. 11 §1953.  Defendant City Manager

22  Marcela Piedra cannot claim immunity from her failure to perform this mandatory duty.

23      86.    Plaintiff is also informed and believes that Defendant City Manager Marcela Piedra,

24  also failed to administer a polygraph examination to Defendant Johnson. Had these background

25  measures been taken, the information would have revealed that Defendant Brian Johnson had

26  been forced to resign as the Chief of Police for Upland Police Department in October of 2017 due

27  to a vote of no confidence by the Upland Police Officer's Association. The impetus for Defendant

28  Johnson's forced departure from Upland was his retaliatory terminations of  29 year veteran

FIRST AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF; DEMAND FOR JURY TRIAL

1    Captain Anthony Yoakum and 23 year veteran Sgt. Marcus Simpson, after they had reported

2    Chief Johnson's misconduct. These management officers had  reported Defendant Johnson for

3    violating officer safety protocols and exposing the Upland Police Department to liability for his

4    illegal actions for false arrests at a marijuana dispensary. Plaintiff is informed and believes that

5    Defendant Brian Johnson was formally reprimanded for his officer safety violations and other

6    illegalities which was placed in his personnel file. A POST background would have revealed a

7    pattern and practice of retaliatory conduct unbecoming of the Chief of Police.

8         87.    A POST background search would have also revealed that Chief Johnson had a

9    pattern and practice of retaliating against officers who reported his illegal conduct by falsely

10   accusing them  of misconduct, insubordination and improperly disparaging the Chief of Police

11   Brian Johnson. He would place officers who reported his conduct on administrative leave and

12   make up false accusations to be investigated and would thereafter terminate them.

13        88.    Plaintiff is further informed and believes that the California Commission on Police

14   Officers and Training notified Defendant Piedra that the City of El Centro had failed to perform a

15   background investigation on Defendant Brian Johnson in violation of the law. Plaintiff is

16   informed and believes that the City of El Centro was ordered to complete a POST background on

17   Chief Johnson by December 20, 2019 or they would order him to resign.  Plaintiff is further

18   informed and believes that Defendant Piedra deliberately failed to obtain the appropriate

19   background information, which would have demonstrated Chief Johnson's pattern and practice of

20   retaliation to Officers in his chain of command that engage in protected activity by reporting his

21   illegal conduct. Both officers brought lawsuits alleging numerous violations of their civil rights

22   against the City of Upland and Defendant Johnson both in his individual and official capacity.

23   Plaintiff is informed and believes that a proper POST background would have revealed a pattern

24   and practice of taking adverse employment actions against officers such as Plaintiff Reel who had

25   engaged in protected activity.

26        89.    Plaintiff is also informed and believes and based thereupon alleges that if

27   Defendant Piedra had actual notice of Defendant Johnson's previous conduct, she deliberately

28   failed to protect Commander Reel from a foreseeable risk of harm given that Officer Reel

1   continued to inform Defendant City of El Centro that he had been targeted by Chief Johnson for

2   retaliatory behavior and the same fact pattern that had happened to the officers at the Upland

3   Police Department was happening to him. Plaintiff believes that since Defendant City Manager

4   Piedra was intimately involved with Defendant Johnson, she in all likelihood knew and

5   deliberately failed to take any action.  Alternatively, Plaintiff alleges if she did not have actual

6   notice of Defendant Johnson's previous retaliatory conduct, Defendant Piedra should have known

7   as she was responsible for performing the mandatory background check on the Chief of Police to

8   avoid him presenting an undue risk of harm to Commander Reel.

9         90.    Plaintiff is further informed and believes that he brought several complaints to the

10   attention of the HR Director who informed Defendant City Manager Piedra that Defendant Chief

11   Johnson was lying and manipulating the investigations and that there was not any basis to

12   terminate Plaintiff Reel. Defendant Piedra deliberately failed to properly train and supervise

13   Defendant Chief Johnson to prevent him from retaliating against Commander Reel when she was

14   on actual notice of his behavior.

15         91.    Defendant Piedra's negligent failure to properly train and supervise Defendant

16   Johnson made her accountable to Plaintiff for all of the wrongful acts taken against him as she had

17   actual notice of his retaliatory actions taken against the Plaintiff and failed to prevent them.

18         92.    Plaintiff is informed and believes and herein alleges that Defendant Marcela Piedra

19   was negligent in the hiring, training, retention, discipline and supervision of Chief Johnson who

20   was under her direct supervision and that she was aware that Defendant Johnson was retaliating

21   against Commander Reel which  proximately caused the injuries and damages alleged in the

22   complaint herein.

23         93.    At all times relevant herein, Defendant City Manager Marcela Piedra was employed

24   by the City of El Centro and was acting within the course and scope of her employment at the

25   time she negligently failed to perform a background investigation in the hiring, training, retention,

26   discipline and supervision of Defendant Johnson. Pursuant to California Government Code

27   Section 815.2 subdivision (a), Defendant City of El Centro is vicariously liable because the acts

28   that Defendant Marcela Piedra committed were in the course and scope of her employment.

FIRST AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF; DEMAND FOR JURY TRIAL

94.    As a result of the acts and omissions alleged herein, Plaintiff has sustained and will continue to sustain substantial losses in earnings, promotions, bonuses, deferred compensation and other employment and career benefits, all to his damage in an amount according to proof.  In addition, Plaintiff has suffered and will continue to suffer damage to his career and reputation, in an amount to be determined according to proof.

95.    As a further result of the acts and omissions alleged herein, Plaintiff has suffered and continues to suffer humiliation, fear, embarrassment, emotional anguish and extreme mental stress, requiring him to seek the services of medical professionals for appropriate treatment to his damage, in an amount to be determined according to proof.

WHEREFORE, Plaintiff requests relief as hereinafter provided.

**THIRD  CAUSE OF ACTION**

**(Violation of Government Code Section 12940(h)-**

**Retaliation against City of El Centro**)

96.    Plaintiff incorporates by reference each and every allegation contained in paragraphs 1 through 95 as though fully set forth herein.

97.    At all times herein mentioned, Government Code Section 12940(h) was in full force and effect and binding upon Defendants, and each of them. Government Code §12940, subdivision (h), for protesting and/or reporting illegal discrimination and/or harassment occurring in the workplace.

98.    As previously alleged in the Complaint, Commander Reel made several reports to Defendant Johnson and Director of Human Resources that he reasonably believed that Chief Johnson was subjecting women to sexist and degrading behavior in the workplace and as a direct consequence of his reports, he was subjected to a hostile environment and adverse employment actions.   From the time of  Commander Reel's first report of sexual discrimination and retaliation towards him on August 16, 2019,  he was subjected to retaliatory adverse employment actions, including but not limited to the following actions:

•       threatening that the Chief would never promote him;

•       attempting to convince Plaintiff to take an at-will position;

FIRST AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF: DEMAND FOR JURY TRIAL

1       •    violating departmental policy by failing to place Commander Reel in the
2           Acting Chief position in his absence on two occasions resulting in the loss
3           of pay;

4       •    deliberately changing the policy to deprive Commander Reel from ever
5           being given the Acting Chief position;

6       •    interfering with the investigation process regarding Officer Thompson's
7           complaints by requesting the investigation to interview additional witnesses
8           and obtaining derogatory information behind HR Director's back to
9           improperly influence the investigation process and violate Plaintiff's due
10          process rights;

11      •    issuing a twenty day suspension after violating Commander Reel's due
12          process rights resulting in a loss of approximately $10,000.00 in pay

13      •    refusing to list Plaintiff's achievements in his performance evaluation;

14      •    interrogating Plaintiff's direct reports in his absence to attempt to falsely
15          accuse Commander Reel of not properly assigning detail to the Christmas
16          parade;

17      •    forcing Plaintiff on medical leave for creating a hostile and stressful
18          environment resulting in a diagnosis of anxiety and depression;

19      •    packing Plaintiff's office belongings and moving his office during his
20          medical leave;

21      •    stripping Plaintiff of all his duties as the operational commander effectively
22          demoting him to administrative commander usually reserved for a junior
23          commander;

24      •    refusing to meet with Plaintiff and excluding him from all meetings
25          regarding the organizational structure of the Police Department;

26      •    after sustained policy violations by City of El Centro, refusing to
27          compensate Plaintiff for two years for his additional pay he was denied by
28          the designation of Acting Commander;

FIRST AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF; DEMAND FOR JURY TRIAL

1        •      purposefully undermining Plaintiff's employment by informing other

2            command officials and management behind his back that it was his intent to

3            get rid of him without informing Plaintiff;

4        •      informing staff members to gather documents to disparage Plaintiff's

5            performance;

6        •      interfering with the investigation of Plaintiff and lying to the City Manager,

7            City Attorney and City Council regarding his actions and Plaintiff's alleged

8            performance deficiencies;

9        •      falsely accusing Plaintiff of lying and insubordination;

10        •      publicly humiliating Plaintiff by cussing at him and insulting him while

11            threatening him that he was going to sideline him;

12        •      placing him on administrative leave with inadequate notice and lying about

13            the reasons in violation of his due process;

14        •      terminating his employment after 25 years of exceptional service without

15            adequate justification and based upon willful misrepresentations.

16     99.     As a direct and proximate result of Defendants' willful and intentional

17 discrimination against the Plaintiff, he has sustained losses in earnings, and other job benefits and

18 have suffered and continues to suffer, humiliation, embarrassment, mental pain and anguish, and

19 distress, all damages in the amount not as yet ascertained.

20     100.    As a further direct and proximate result of Defendants' conduct as described above,

21 Plaintiff has been required to obtain legal counsel to protect his rights, and he has thereby incurred

22 attorney's fees in an amount to be proven at the time of trial. Pursuant to Government Code

23 Section 12900 et. seq., and specifically Section 12965(b), Plaintiff is entitled to an award of

24 reasonable attorney's fees, costs, and expenses against Defendants, and each of them.

25 / / /

26 / / /

27 / / /

28

FIRST AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF; DEMAND FOR JURY TRIAL

**FOURTH CAUSE OF ACTION**

**(Violation of Government Code§ 12945.2(l) - Retaliation for taking leave under the California Family Rights Act against Defendant City of El Centro)**

101.   Plaintiff incorporates by reference each and every allegation contained in paragraphs 1 through 101 as though fully set forth herein.

102.   At all times herein mentioned, Government Code § 12945.2(l), was in full force and effect and was binding upon Defendants, and each of them. Said section prevents employers from retaliating against employees for exercising their right to take leave under this section. Plaintiff reasonably requested from Defendants, and each of them, leave pursuant to California Government Code §12945.2(a).

103.   After Plaintiff exercised his right to take CFRA leave, Defendant subjected him to retaliatory actions, including but not limited to the following:

- packing Plaintiff's office belongings and moving his office during his medical leave;

- stripping Plaintiff of all his duties as the operational commander effectively demoting him to administrative commander usually reserved for a junior commander;

- refusing to meet with Plaintiff and excluding him from all meetings regarding the organizational structure of the Police Department;

- after sustained policy violations by City of El Centro, refusing to compensate Plaintiff for two years for his additional pay he was denied by the designation of Acting Commander;

- purposefully undermining Plaintiff's employment by informing other command officials and management behind his back that it was his intent to get rid of him without informing Plaintiff;

- informing staff members to gather documents to disparage Plaintiff's performance;

/ / /

FIRST AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF: DEMAND FOR JURY TRIAL

1       •     interfering with the investigation of Plaintiff and lying to the City Manager,

2           City Attorney and City Council regarding his actions and Plaintiff's alleged

3           performance deficiencies;

4       •     falsely accusing Plaintiff of lying and insubordination;

5       •     publicly humiliating Plaintiff by cussing at him and insulting him while

6           threatening him that he was going to sideline him;

7       •     placing him on administrative leave with inadequate notice and lying about

8           the reasons in violation of his due process;

9       •     terminating his employment after 25 years of exceptional service without

10          adequate justification and based upon willful misrepresentations.

11     104.   As a result of Defendant's discriminatory conduct, Plaintiff lost income, benefits,

12 experience, and other related advantages of his employment entitling him to special damages

13 thereof in an amount to be determined according to proof at trial.

14     105.   As a further result of the acts and omissions alleged herein, Plaintiff has suffered

15 and continues to suffer humiliation, fear, embarrassment, emotional anguish and extreme mental

16 stress, requiring him to seek the services of medical professionals for appropriate treatment to his

17 damage, in an amount to be determined according to proof.

18     106.   Plaintiff was required to obtain legal counsel to protect his rights, and thereby will

19 incur attorneys fees in an amount to be ascertained after trial.  Pursuant to Government Code §

20 12965(b) Plaintiff requests an award of reasonable attorneys fees incurred against Defendants, and

21 each of them.

22           WHEREFORE, Plaintiff requests relief as hereinafter provided.

23 / / /

24 / / /

25 / / /

26 / / /

27 / / /

28 / / /

## FIFTH CAUSE OF ACTION

**(Employment Discrimination in Violation of California Government Code § 12940(a)–Disability Discrimination against Defendant City of El Centro)**

107.    Plaintiff incorporates by reference each and every allegation contained in paragraphs 1 through 106, as though fully set forth herein.

108.    At all relevant times, Plaintiff's employment was governed by California Government Code § 12940(a) which imposes on employers a duty to keep the workplace free of employment discrimination on account of an actual or perceived disability. Plaintiff was a qualified individual with a disability of anxiety. As a result of the adverse employment actions of Chief Johnson, Commander Reel informed HR Director that he could not concentrate, he could not focus, that his heart was pounding and he was experiencing difficulties with his job duties.

109.    Defendant City of El Centro was aware that Plaintiff's condition of anxiety was affecting the quality of his work and was directly related to his disability. Despite being on notice of Plaintiff's disability impacting his work performance, City of El Centro used certain mistakes that Plaintiff made in news releases and typographical letters as a basis for his termination which constitutes direct evidence of disability discrimination. In addition, Plaintiff was told after he came back from his medical leave by his personal therapist that he should not engage in work activities such as checking his phone or e-mails after hours as this would affect his therapeutic progress with regard to his therapy. Instead of requesting a note from Plaintiff's personal physician regarding this accommodation, Defendant instead accused Plaintiff of lying because they mixed up their duties to accommodate under the California Government Code and the work restrictions issued by a worker's compensation doctor. The Human Resources Director indicated that all the City would have had to do to clear this issue up is to request a note from Plaintiff's therapist instead of accusing him of lying as part of the reason to terminate him.

110.    As a result of Defendant's discriminatory conduct, Plaintiff lost income, benefits, experience, and other related advantages of his employment entitling her to special damages thereof in an amount to be determined according to proof at trial.

/ / /

1      111.   As a further result of the acts and omissions alleged herein, Plaintiff has suffered

2 and continues to suffer humiliation, fear, embarrassment, emotional anguish and extreme mental

3 stress, requiring him to seek the services of medical professionals for appropriate treatment to his

4 damage, in an amount to be determined according to proof.

5      112.   Plaintiff was required to obtain legal counsel to protect his rights, and thereby will

6 incur attorneys fees in an amount to be ascertained after trial.  Pursuant to Government Code §

7 12965(b) Plaintiff requests an award of reasonable attorneys fees incurred against Defendants, and

8 each of them.

9          WHEREFORE, Plaintiff requests relief as hereinafter provided.

10           **SIXTH CAUSE OF ACTION**

11   **(Failure to Remedy Discrimination and Harassment in Violation of Gov. Code §12940(k)**

12           **against Defendant City of El Centro)**

13      113.   Plaintiff incorporates herein by reference each and every allegation contained in

14 paragraphs 1 through 112, inclusive, of this complaint as if fully set forth herein.

15      114.   As set forth above, at all times relevant, the California Government Code section

16 12900, et seq., was in force and effect. The Fair Employment and Housing Act, section 12940(k)

17 provides that it is an unlawful employment practice for "An employer...to fail to take all reasonable

18 steps necessary to prevent discrimination and harassment from occurring."

19      115.   As previously alleged in the Complaint, Commander Reel made several reports to

20 Defendant Johnson and Director of Human Resources that he reasonably believed that Chief

21 Johnson was subjecting women to sexist and degrading behavior in the workplace and as a direct

22 consequence of his reports, he was subjected to a hostile environment and adverse employment

23 actions.   From the time of  Commander Reel's first report of sexual discrimination and retaliation

24 towards him on August 16, 2019,  he was subjected to additional retaliatory adverse employment

25 actions. Despite Commander Reel's multiple reports, he continued to be discriminated and

26 retaliated against by Defendant Johnson through the time of his termination on April 15, 2021 over

27 a period of two years. Despite City of El Centro's knowledge of Plaintiff's complaints, they failed

28 to remedy his hostile environment caused by Chief Johnson.

FIRST AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF; DEMAND FOR JURY TRIAL

116.     By performing the acts and/or omissions as described above, among others, Defendants, and each of them, violated the Fair Employment and Housing Act, Section 12940(k), by failing to take all steps to prevent discrimination against Plaintiff, and others, from occurring on the basis of sex, retaliation, disability and request for medical leave pursuant to the California Family Rights Act.

117.     As a direct and proximate result of Defendant's failure to remedy the discrimination and retaliation against the Plaintiff, he has sustained losses in earnings, and other job benefits and have suffered and continues to suffer, humiliation, embarrassment, mental pain and anguish, and distress, all to his damage in the amount not as yet ascertained.

118.     As a further direct and proximate result of Defendants' conduct as described above, Plaintiff has been required to obtain legal counsel to protect his rights, and he has thereby incurred attorney's fees in an amount to be proven at the time of trial. Pursuant to Government Code Section 12900 et. seq., and specifically Section 12965(b), Plaintiff is entitled to an award of reasonable attorney's fees, costs, and expenses against Defendants, and each of them.

WHEREFORE, Plaintiff prays for relief as set forth herein.

### SEVENTH CAUSE OF ACTION

**(Violation of Statutory Duty pursuant to California Labor Code §6310 against All Defendants)**

119.     Plaintiffs incorporate by reference each and every allegation contained in paragraphs 1 through 118 as though fully set forth herein.

120.     Defendant City of El Centro is an "employer" and Defendants Johnson and Piedra are " persons" pursuant to California Labor Code Section 6310(a) who shall not discharge, or in any manner discriminate against an employee for complaining in good faith about working conditions or practices which he reasonably believes to be unsafe, whether or not there exists at the time of the complaint an occupational heath and safety standard or order which is being violated. This section specifically prohibited Defendants City of El Centro, Johnson and Piedra from discriminating and discharging Plaintiff Aaron Reel for his complaints that the Command Team at El Centro Police Department had created unsafe workplace conditions by not taking adequate

1  safety requirements for their high risk officers and follow the safety protocols recommended by the

2  CDC and other state and local regulations put in place to protect the public during the Covid-19

3  pandemic. Plaintiff is informed and believes that Defendants Johnson and Defendant Piedra were

4  persons acting on behalf of Defendant City of El Centro at the time the discriminatory actions

5  occurred.

6      121.    As aforementioned, Plaintiff filed a complaint internally with the HR Director of the

7  El Centro Police Department as well as the Labor Commissioner wherein he expressed his

8  reasonable belief that the failure of the command staff to follow the officer safety protocols

9  recommended by the CDC and other governmental agencies to not expose their high risk

10 employees to unnecessary risks and to secure N95 masks for their officers had contributed to the

11 death of an officer.

12     122.    Defendants discriminated against Plaintiff Aaron Reel  and discharged him, in part,

13 on account of his  health and safety complaints regarding the lack of officer safety protocols.

14     123.    As a proximate result of Defendants' conduct, Plaintiff has suffered, and will

15 continue to suffer, special damages (including, but not limited to past and future lost earnings and

16 employment benefits) in an amount to be proven at trial.

17     124.    California Labor Code Section 6310(b) also provides that any employee who

18 prevails on a claim under section 6310 is also entitled to reinstatement in addition to lost wages.

19     125.    In the event that Plaintiff is the prevailing party in this action, he will also be

20 entitled to recover attorneys fees under California Code of Civil Procedure Section 1021.5 in that

21 this action will have resulted in the enforcement of an important right affecting the public interest.

22     WHEREFORE, Plaintiffs pray for judgment against Defendants, and each of them, as more

23 fully set forth below.

24 / / /

25 / / /

26 / / /

27 / / /

28 / / /

FIRST AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF: DEMAND FOR JURY TRIAL

1

## **EIGHTH CAUSE OF ACTION**

2     **(Violation of California Labor Code §1102.5 Against Defendant City of El Centro)**

3       126.    Plaintiffs incorporate by reference each and every allegation contained in

4 paragraphs 1 through 125, as fully set forth herein.

5       127.    California Labor Code §1102.5 provides, amongst other things, that an employer,

6 or any person acting on behalf of the employer, shall not retaliate against an employee for

7 disclosing information about illegal activity or because the employer believes that the employee

8 disclosed or may disclose information. The Code specifically states: An employer, or any person

9 acting on behalf of the employer, shall not retaliate against an employee for disclosing information,

10 or because the employer believes that the employee disclosed or may disclose information, to a

11 government or law enforcement agency, to a person with authority over the employee or another

12 employee who has the authority to investigate, discover, or correct the violation or non-

13 compliance...if the employee has reasonable cause to believe that the information discloses a

14 violation of state or federal statute, or a violation of or noncompliance with a local, state, or federal

15 rule or regulation.

16       128.    As set forth above, Plaintiff Aaron Reel disclosed his reasonable belief that

17 Defendant City of El Centro Police Department and Defendant Brian Johnson had violated

18 California state and local regulations pursuant to the guidelines of the CDC and other state and

19 federal Health and Safety regarding protecting their high risk officers from being infected by

20 Covid-19 by taking the necessary precautions in assignments and in proper facial N-95 masks. As

21 set forth in detail in the above-referenced facts, Plaintiff Reel reported his reasonable belief that

22 Defendant Johnson's actions and the command staff in failing to follow CDC guideline and officer

23 safety protocols by protecting their high risk officers from coming into contact with potential

24 exposure to Covid-19 had resulted in an unnecessary death of an officer. Plaintiff reported this to

25 his own law enforcement agency, the City, by and through the HR Director and the Department of

26 Labor by opening a formal investigation.

27       129.    Defendants retaliated against Plaintiff Reel and discharged him on account of his

28 complaints that Defendants had not followed appropriate officer safety protocols in violation of

1 | Labor Code 1102.5.

2 |     130.   As a proximate result of Defendants' conduct, Plaintiff has suffered and will

3 | continue to suffer special damages (including, but not limited to past and future lost earnings and

4 | employment benefits), the exact amount to be proven at trial.

5 |     131.   In the event that Plaintiff is the prevailing party in this action, he will also be

6 | entitled to recover attorneys fees under California Labor Code Section 1102.5(j) which specifically

7 | authorizes the court to award reasonable attorneys fees to a Plaintiff who brings a successful action

8 | for violation of these provisions. In addition, Plaintiff would also be entitled to attorneys fees

9 | pursuant to California Code of Civil Procedure Section 1021.5 in that this action will have resulted

10 | in the enforcement of an important right affecting the public interest.

11 |     WHEREFORE, Plaintiffs pray for judgment against Defendants, and each of them, as more

12 | fully set forth below.

## NINTH CAUSE OF ACTION

**(Violation of 42 U.S.C. § 1983 First Amendment Retaliation Against All Defendants)**

15 |     132.   Plaintiff incorporates herein by reference each and every allegation contained in

16 | paragraphs 1 through 131, inclusive, of this complaint as though fully set forth herein.

17 |     133.   California state law permits municipalities to enact regulations creating a "City

18 | Manager form of government." Defendant City of  El Centro has enacted such regulations as part

19 | of their city charter. Pursuant to the City of El Centro's Municipal Code Sections 2-81 and 2-82,

20 | City Manager, Marcela Piedra was the "administrative head of the government of the city. The City

21 | of El Centro has delegated to the City Manager Piedra the authority to control, order, and give

22 | directions to all heads of departments and to subordinate officers and employees of the City. More

23 | specifically, it is the City Manager's duty to appoint, discipline, remove, promote and demote any

24 | and all officers and employee's of the city except the city clerk and the city attorney. In addition,

25 | City Manager Piedra had the duty and power to exercise control over all departments of

26 | government of the city and over all appointive officers and employees thereof. Accordingly, City

27 | Manager Marcela  Piedra had final policymaking authority over police employment decisions,

28 | including, the termination of Plaintiff.

134.    Plaintiff is a public employee of The City of El Centro, an entity of the County of Imperial and State of California, and he has a right guaranteed to engage in constitutionally protected speech on matters of public concern pursuant to the First Amendment to the United States Constitution, through 42 U.S.C. §1983. Plaintiff's rights to be free from retaliation for exercising his right to report matters of sex discrimination, retaliation and  health and safety violations were also clearly established under the First Amendment, by judicial precedent at all times, and at all times relevant to the events stated in this Complaint.

135.    Plaintiff exercised his First Amendment right to report his public concerns, including that Defendant Johnson was sexually discriminating against female employees and that he had been illegally subjected to retaliation for his reports. In addition, Plaintiff engaged in his first amendment right to speak out regarding his reasonable belief that the El Centro Police Department Command Staff did not have the proper infection control procedures in place to protect their high risk officers from the transmission of the deadly Covid-19 virus. As such, Commander Reel engaged in constitutionally protected speech on matters of public concern.

136.    As a direct and proximate result of Plaintiff's reports, Defendant Chief of Police Brian Johnson retaliated against Commander Reel for engaging in protected speech by subjecting him to false accusations regarding his performance. Defendant City Manager was on actual notice that Commander Reel had engaged in first amendment protected activity and that Defendant Johnson's accusations were false. The HR Director told Defendant City Manager, Defendant Piedra that Chief Johnson was lying and that she had reduced the suspension of  Plaintiff to three days . However,  Defendant Piedra was also retaliating against Commander Reel and she reversed the HR Director's decision and reinstated the twenty day suspension resulting in a monetary loss of approximately $10,000.00 to Commander Reel.

137.    In addition, both the HR Director and the City Attorney informed City Manager Piedra that they disagreed with the Defendant Chief Johnson's decision to terminate Commander Reel because the reasons did not substantiate a termination of Commander Reel's twenty-five year employment career. HR Director also informed the City Attorney, City Manager Piedra and the City Council that it was the Chief of Police that should be fired for lying and that Commander Reel

FIRST AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF; DEMAND FOR JURY TRIAL

1   should retain his position.  HR Director also told City Manager Piedra that the allegations against

2   Commander Reel for dishonesty were ridiculous and that there was not one instance regarding any

3   of the allegations that Commander Reel that would lead to a termination.  In fact, HR Director

4   resigned after complaining to City Manager Piedra regarding Chief Johnson's conduct and

5   discriminatory behavior. Despite HR's reports, Defendant City Manager Piedra ignored the

6   recommendations of  HR Director and the City Attorney and terminated Commander Reel effective

7   April 15, 2021.

8          138.    Plaintiff is informed and believes and based thereupon allege that both Defendant

9   Johnson and Defendant Piedra were involved in a personal relationship and acted in concert to

10  deprive Plaintiff of his constitutional rights and such actions were taken intentionally exposing

11  each of these Defendants to punitive damages. Defendant Piedra, as the final decision maker,

12  allowed Defendant Chief Johnson the discretion to choose the Commander he wished to be in

13  charge in the event of his absence against the policies of the police department. Defendant Piedra

14  approved the official policy change in the department manual causing Commander Reel to be

15  permanently blocked from exercising his right to act in the capacity of Acting Chief for the

16  remainder of his tenure. Plaintiff is informed and believes that this decision was done intentionally

17  to deprive Plaintiff of his rights and was in violation of the law.  These actions demonstrate that

18  Defendant City Manager Piedra delegated Defendant Chief of Police Johnson to change policy in

19  order to further discriminate and retaliate against Plaintiff.

20         139.    Any reasonable public official such as Defendant Johnson and Defendant Marcela

21  Piedra in their respective positions would have known that retaliating against a public employee for

22  engaging in reporting sex discrimination, retaliation, and health and safety violations regarding the

23  transmission of Covid-19 was illegal, unlawful, and in violation of constitutionally protected First

24  Amendment rights. As such, Defendants are not entitled to qualified immunity for their intentional

25  retaliatory acts taken against the Plaintiff in their official capacities as the Chief of Police and the

26  City Manager. In addition, Plaintiff has sued Defendants Johnson and Piedra in their individual

27  capacities for retaliating against him for exercising his First Amendment rights.

28  / / /

FIRST AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF: DEMAND FOR JURY TRIAL

140.    Defendants Johnson and Piedra were integral participants in taking adverse actions against Plaintiff, because of his first amendment speech by engaging in retaliatory actions which included, but were not limited to: interfering with the investigations of Plaintiff, accusing Plaintiff's of performance deficiencies; falsely accusing Plaintiff of lying and insubordination; placing him on administrative leave with inadequate notice and lying about the reasons in violation of his due process; and terminating his employment after 25 years of exceptional service without adequate justification and based upon willful misrepresentations.

141.    Plaintiff's protected speech was a substantial and motivating factor for the adverse employment actions taken against the Plaintiff. Defendants cannot demonstrate by clear and convincing evidence that they would have taken the adverse action against the Plaintiff even absent the protected speech.

142.    Defendants Johnson and Piedra acted intentionally and exhibited an extreme reckless disregard of, and callous indifference to Plaintiff's clearly established constitutionally protected right to express matters of public concern pursuant to the First Amendment. Here, Plaintiff has been stigmatized in his law enforcement career and his personal reputation by being terminated for false reasons of dishonesty and insubordination.

143.    Defendants' actions as described above have injured Plaintiff by causing him loss of income, pain and suffering, public humiliation and damaged his standing as a member of the law enforcement community, entitling him to compensatory damages against the individual Defendants.

144.    Defendants' conduct, as described herein, was done maliciously, with unlawful purpose to cause such damage and loss and without right or justifiable cause, thereby warranting punitive damages against Defendants Johnson and Piedra.

145.    Plaintiff is further informed and believes that Defendant City of El Centro is liable to Plaintiff under a Monell theory of liability based upon Defendant Marcela Piedra's ratification of her subordinate Defendant Brian Johnson's retaliatory conduct and her authority as a final decision-maker. Not only did Defendant Piedra condone and ratify Defendant Johnson's retaliatory conduct, she directly participated in it justifying liability against all Defendants.

1    WHEREFORE, Plaintiff prays for relief as set forth herein

2                              **PRAYER FOR RELIEF**

3        1.      For compensatory damages including lost wages, lost employee benefits, bonuses,

4    vacation benefits, the cost of Plaintiff's clothing that was destroyed, and other miscellaneous

5    special damages, according to proof;

6        2.      Mental and emotional distress, and other general damages according to proof;

7        3.      For an award of punitive damages against the individual Defendants where allowed

8    according to proof;

9        4.      For an award of attorney's fees and costs where allowed by each statutory cause of

10   action;

11       5.      For the injunctive and declaratory relief  including, but not limited to, expunge any

12   negative personnel documents relating to any adverse actions taken against the Plaintiff including

13   his termination;

14       6.      For the court to take any and all necessary and reasonable steps to remove the

15   stigma and negative perception of Plaintiff created by Defendants' illegal conduct and false

16   comments made about him, including his honesty as a law enforcement officer;

17       7.      For such other relief as the court may deem necessary and proper.

18

19                              Respectfully submitted,

20                              LAW OFFICES OF SUZY C. MOORE

21   Dated: November 28,  2022    By:

22

23                              Suzy C. Moore, Esq.
                                Attorney for Plaintiff

24

25

26

27

28

FIRST AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF: DEMAND FOR JURY TRIAL