1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| AARON REEL,<br><br>                              Plaintiff,<br><br>v.<br><br>THE CITY OF EL CENTRO, et. al,<br><br>                              Defendants. | Case No.:  22-cv-00526-W-KSC<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT [DOC. 27]** |

Pending before the Court is Defendants' Motion to Dismiss Plaintiff's First Amended Complaint under Federal Rule of Civil Procedure 12(b)(6) [Doc. 27].  Plaintiff opposes the motion.

The Court decides the matter on the papers submitted and without oral argument. See Civ. L.R. 7.1(d.1).  For the following reasons, the Court **GRANTS IN PART AND DENIES IN PART** Defendants' motion [Doc. 27] **WITHOUT LEAVE TO AMEND**.

1

## I.   BACKGROUND

Plaintiff filed his initial complaint on April 15, 2022, bringing nine causes of action against Defendants City of El Centro ("El Centro"), Chief of Police Brian Johnson ("Johnson"), and Marcela Piedra ("Piedra").  The Defendants collectively filed a motion to dismiss the initial complaint [Doc. 7], which the Court granted in part and denied in part, with leave to amend.  (*See Order on First Mot. to Dismiss* [Doc. 18].)  Plaintiff thereafter filed the First Amended Complaint ("FAC") [Doc. 24].  Defendants City and Piedra[1] (collectively, "Defendants") now move to dismiss the FAC under Federal Rule of Civil Procedure 12(b)(6).  (*Mot.* [Doc. 27].)

The underlying factual allegations in the FAC are essentially the same as those in Plaintiff's initial complaint.  (*See Lined Version Amended Complaint* [Doc. 25] ¶¶ 1-67.)  The Court will not recite the alleged facts again here.  The Court refers the party to the Court's order on Defendant's first motion to dismiss [Doc. 18] for a full recitation of Plaintiff's allegations.  If any new allegations are the subject of Defendants' arguments in their motion, the Court will address them below.

## II.   LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) allows a defendant to file a motion to dismiss for failing "to state a claim upon which relief can be granted."  FED. R. CIV. P. 12(b)(6).  A motion to dismiss under Rule 12(b)(6) tests the complaint's sufficiency.  *See N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F. 2d 578, 581 (9th Cir. 1983).  A complaint may be dismissed as a matter of law either for lack of a cognizable legal theory or for insufficient facts under a cognizable theory.  *Balisteri v. Pacifica Police Dep't.*, 901 F.2d 696, 699 (9th Cir. 1990).  In ruling on the motion, a court must "accept all material

---

[1] Johnson has obtained separate counsel and answered the FAC on December 5, 2022.  (*See* Doc. 26.)

allegations of fact as true and construe the complaint in a light most favorable to the non-moving party." *Vasquez v. L.A. Cnty.*, 487 F. 3d 1246, 1249 (9th Cir. 2007).

To survive a motion to dismiss, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). The Supreme Court has interpreted this rule to mean that "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555 (2007). The allegations in the complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

Well-pled allegations in the complaint are assumed true, but a court is not required to accept legal conclusions couched as facts, unwarranted deductions, or unreasonable inferences. *Papasan v. Allain*, 478 U.S. 265, 286 (1986); *Sprewell v. Golden State Warriors*, 266 F. 3d 979, 988 (9th Cir. 2001).

## III.   DISCUSSION

### A.   First Cause of Action: Failure to Perform Mandatory Duty Under Cal. Gov. Code § 815.6

California Government Code § 815.6 provides that "[w]here a public entity is under a mandatory duty imposed by an enactment that is designed to protect against the risk of a particular kind of injury, the public entity is liable for an injury of that kind proximately caused by its failure to discharge the duty unless the public entity establishes that it exercised reasonable diligence to discharge the duty." CAL. GOV. CODE § 815.6. To state a cause of action under this section, Plaintiff must plead that (1) El Centro was under a "mandatory duty" imposed by statute (2) the enactment "is designed to protect against the risk" of the particular injury alleged here, and (3) El Centro failed to discharge the duty. CAL. GOV. CODE § 815.6; *see also Haggis v. City of Los Angeles*, 22 Cal. 4th 490, 499–500 (2000).

3

### 1.    Cal. Gov. Code § 1031

Plaintiff first argues that California Government Code § 1031 satisfies the requisite elements of section 815.6.

The Court agrees that section 1031 imposed a mandatory duty on El Centro to perform a background check prior to hiring Johnson as Chief of Police.  An enactment creates a mandatory duty within the meaning of section 815.6 if it requires a public agency to "take a particular action" and "affirmatively imposes the duty and provides implementing guidelines." *San Mateo Union High Sch. Dist. v. Cnty. of San Mateo*, 213 Cal. App. 4th 418, 429 (2013) (citation omitted).  A mandatory duty is imposed "when an enactment requires an act that is clearly defined and not left to the public entity's discretion or judgment." *State Dep't of State Hosps. v. Superior Ct.*, 61 Cal. 4th 339, 350 (2015).  Section 1031 states that peace officers must be "of good moral character, as determined by a thorough background investigation." CAL. GOV. CODE § 1031.  This provision satisfies the first prong of section 815.6 because it requires public entities to "take a particular action," i.e., perform a background check on all peace officers. *San Mateo Union High Sch. Dist.*, 213 Cal. App. 4th at 429.

But section 1031 fails at the second element of California Government Code § 815.6 because section 1031 is not designed to protect against the particular kind of injury Plaintiff suffered.  The injury must be "'one of the consequences which the [enacting body] sought to prevent through imposing the alleged mandatory duty.'" *Hoff v. Vacaville Unified School Dist.*, 19 Cal. 4th 925, 939, (1998) (fn. omitted).  This inquiry is about "the legislative *purpose* of imposing the duty." *Haggis*, 22 Cal. 4th at 499 (emphasis in original).

Here, the injury suffered was "retaliatory and adverse employment actions" by Defendant Johnson.  (*FAC* ¶ 78.)  Both the text of the statute and its legislative history demonstrate that it is not designed to protect against this type of harm.  The text of the statute states that the enactment is about ensuring the minimum standards of competence for public officers to "hav[e] powers of peace officers[.]" CAL. GOV. CODE § 1031.  And

4

the legislative history indicates that the background check serves the purpose of ensuring that "peace officers meet certain minimum standards, including being found free from any emotional or mental condition that might adversely affect the exercise of the powers of a peace officer." *See* 2003 Cal. Legis. Serv. Ch. 777 (A.B. 1669).  Plaintiff has not identified anything in either the text of the law or its legislative history indicating that retaliatory and/or adverse employment actions is one of the consequences that the California legislature sought to prevent through section 1031.

Plaintiff argues that *Sager v. Cnty. of Yuba*, 156 Cal. App. 4th 1049 (2007) supports the position that section 1031 was designed to protect against the risk of harm alleged.  The Court disagrees.  *Sager* arose from a county's decision that a police officer was unfit to exercise police powers under section 1031.  The portion of the case cited by Plaintiff was analyzing harms potentially arising from a public entity employing an officer who does not satisfy section 1031 and says nothing about the purpose behind the law.  The case, in fact, does not discuss the purpose or "design" of the law at all; its discussion of harms reinforces that the provisions of that law are intended to prevent harms that may occur when a peace officer exercises his or powers as a peace officer.  *See Sager*, 156 Cal. App. 4th at 1061 ("It is not the appropriate public policy to wait until Sager actually shoots the other woman in the courtroom, kills herself on duty, overreacts to a perceived threat or loses her temper in a dangerous situation to conclude that she is mentally unfit for duty.").

In short, the Court is not persuaded that preventing retaliatory and/or adverse employment actions was one of the purposes behind the enactment of section 1031, as both the text and the legislative history indicate that the law was intended to set minimum standards for a person to exercise the powers of a peace officer.  Section 1031 therefore does not provide a basis for a cause of action under section 815.6.

### 2.    Cal. Penal Code § 832.12

Plaintiff next argues that California Penal Code § 832.12 satisfies all the necessary elements of section 815.6.  (*Opp.* at 4.)  But the key provision cited by Plaintiff was not

law until January 2022, after Defendant Johnson was hired in 2018 and fired in 2021. The first version of Penal Code §832.12 was enacted in January 2019, but that version did not impose a mandatory duty on El Centro to obtain personnel files of prospective or current employees at any time during Defendant Johnson's employment. The law's initial iteration, which is now subsection (a), states that an agency is required to maintain files but says nothing about obtaining files from elsewhere. Only the current subsection (b) refers to an agency obtaining files, but that subsection was not in force until January 2022. That law, therefore, cannot stand as the basis for a cause of action under section 815.6.

### 3.    11 Cal. Code Regs. § 1953

Plaintiff offers 11 CCR § 1953 as the final option to satisfy section 815.6. Like section 1031, this law is not designed to protect against the harm alleged in this case. Here, again, the text of the law shows that the enactment is designed to "verify" characteristics required "to perform the duties of a peace officer." CAL. CODE REGS. tit. 11, § 1953. Related California laws likewise indicate that the law is designed to protect the public's interest in having peace officers who meet the standards set by statute. *See* CAL. CODE REGS. tit. 11, § 1950 ("The purpose of these regulations is to implement the minimum peace officer selection standards set forth in California Government Code sections 1029, 1031 and 1031.4, and as authorized by California Penal Code section 13510.") (emphasis added); CAL. PENAL CODE § 13510 (a)(1) ("For the purpose of raising the level of competence of local law enforcement officers . . . . [with] rules establishing and upholding minimum standards relating to physical, mental, and moral fitness that shall govern [their] recruitment"). The Court finds that this statute does not satisfy section 815.6.

Since none of the cited statutes meet the requirements of California Government Code § 815.6, the first cause of action is **DISMISSED WITHOUT LEAVE TO AMEND**.

**B.      Second Cause of Action: Negligent Hiring, Supervision & Training against Defendant Piedra and City of El Centro pursuant to Gov. Code § 815.2(a)**

Plaintiff's second cause of action alleges that Piedra and El Centro are liable for negligent hiring, supervision, and training.  (*FAC* ¶ 81-95.)  Defendants moves to dismiss this cause of action, arguing that Piedra and (vicariously) El Centro are not liable because Piedra did not have a "special relationship" with Plaintiff and that they both have immunity from liability.  (*Mot.* at 25.)

### 1.      Sufficiency of Negligent Hiring Allegations

California Government Code § 820 provides that unless "a public employee is liable for injury caused by his act or omission to the same extent as a private person." Cal. Gov. Code § 820(a).  California Government Code § 815.2 provides that "[a] public entity is liable for injury proximately caused by an act or omission of an employee of the public entity within the scope of his employment if the act or omission would . . . have given rise to a cause of action against that employee[.]"  Cal. Gov. Code § 815.2(a).  In short, when a public employee's act or omission occurs in the scope of his or her employment, the public entity that employs that individual can be held vicariously liable for the injury.  *See French v. City of Los Angeles*, 2021 WL 6752229, *7 (C.D. Cal. 2021) ("[I]f Plaintiffs adequately allege a negligent hiring, supervision, and retention claim against the City's personnel, they can proceed on a theory of vicarious liability.").  Thus, under California Government Code § 815(a), El Centro can be vicariously liable if Plaintiff sufficiently states a claim for negligent hiring as to Piedra.[2]

---

[2] Defendants argue that El Centro should be dismissed from this cause of action because the Court held that El Centro could not be held directly liable for negligent hiring.  *See Order on First Mot. to Dismiss* [Doc. 18] at 15.  Defendants are correct that El Centro cannot be held directly liable for this cause of action, but that does not preclude vicarious liability through Piedra's actions.  *See* Cal. Gov. Code § 815.2(a).

To state a cause of action for negligence against Piedra (and vicariously against El Centro), Plaintiff must plead that Piedra had a duty to use due care, that she breached that duty, and that the breach was the proximate or legal cause of the resulting injury. *Hayes v. County of San Diego*, 57 Cal. 4th 622, 629 (2013) (brackets omitted). Defendants argue that Plaintiff fails to allege a duty of care in this case because there was no "special relationship" between Piedra and Plaintiff. (*Mot.* at 28.)

"As a general rule, one owes no duty to control the conduct of another." *Davidson v. City of Westminster*, 32 Cal. 3d 197, 203 (1982). But "courts have carved out an exception to this rule in cases in which the defendant stands in some special relationship to either the person whose conduct needs to be controlled or in a relationship to the foreseeable victim of that conduct." *Tarasoff v. Regents of Univ. of California*, 17 Cal. 3d 425, 435 (1976). Thus, Plaintiff can satisfy the duty of care element by alleging facts that, if true, would establish that Defendant Piedra had a "special relationship" with Plaintiff. *C.A. v. William S. Hart Union High School Dist.*, 53 Cal. 4th 861, 875 (2012); *accord Kendrick v. County of San Diego*, No. 15-cv-2615-GPC(AGS), 2018 WL 1316618, at *10 (S.D. Cal. Mar. 14, 2018) ("[A] plaintiff must allege a special relationship in order to bring a negligent hiring claim"); *Lindsay v. Fryson*, No. 2:10-cv-02842-LKK-KJN, 2012 WL 2683019, at *6 (E.D. Cal. July 6, 2012) (noting that *William S. Hart* "limited the viability of type of vicarious liability claim at issue ... to situations where the supervisory or administrative personnel have a 'special relationship' with the plaintiff or class of plaintiffs"), *findings and recommendations adopted*, 2012 WL 3727157 (E.D. Cal. Aug. 27, 2012).

Plaintiff pleads facts sufficient to demonstrate such a relationship. Relationships between "employers and employees" are "special relationships that give rise to an affirmative duty to protect." *Brown v. USA Taekwondo*, 11 Cal. 5th 204, 216 (2021). Plaintiff alleges that Piedra "was at all times relevant the City Manager for the City of El Centro" (*FAC* ¶ 4), had "official policy-making authority over actions such as the ones at issue in this Complaint" (*id.*), and was "responsible for the hiring, supervision and control

of [the city's] employees" (*FAC* ¶ 83).  Furthermore, Plaintiff alleges that, pursuant to the City of El Centro's Municipal Code, Piedra was the "administrative head of the government of the city" and had "the authority to control, order, and give directions to all heads of departments and to subordinate officers and employers of the city[,]" which includes Plaintiff.  (*Id.*)

### 2.    Discretionary Immunity

Under California Government Code § 820.2, "a public employee is not liable for an injury resulting from his act or omission where the act or omission was the result of the exercise of the discretion vested in him, whether or not such discretion be abused."  If Piedra has immunity under this provision, then El Centro has immunity under California Government Code § 815.2, which states that "a public entity is not liable for an injury resulting from an act or omission of an employee of the public entity where the employee is immune from liability."  Defendants argue that Piedra has discretionary act immunity for the negligent hiring, supervision, and training claim because "[h]ow background investigations are carried out, and more importantly the decisions reached as a result thereof, are discretionary."  (*Mot.* at 29.)

The California Supreme Court has noted "that virtually every public act admits of some element of discretion."  *Tarasoff*, 17 Cal. 3d 425 at 445.  There is a difference "between basic policymaking or planning on the one hand and ministerial or operational levels of decisionmaking on the other hand[.]  *Perez-Torres v. State of California*, 42 Cal. 4th 136, 142–143 (2007) (internal quotations omitted).  The basic policy decisions warrant immunity while the "subsequent ministerial actions in the implementation of that basic decision still must face case-by-case adjudication on the question of negligence."  *Johnson v. State*, 69 Cal. 2d 782, 797 (1968).  "[G]overnment defendants have the burden of establishing that they are entitled to immunity for an actual policy decision made by an employee who 'consciously balanc[ed] risks and advantages[.]'"  *AE ex. rel Hernandez v. Cty. of Tulare*, 666 F. 3d 631, 639 (9th Cir. 2012) (second alteration in original) (quoting *Johnson v. State of Cal.*, 69 Cal. 2d 782, 794 n. 8 (1968)).  "The fact that an employee

9

normally engages in 'discretionary activity' is irrelevant if, in a given case, the employee did not render a considered decision." *Id.* (quoting *Johnson*, 69 Cal. 2d at 794 n. 8). Accordingly, "[i]t would be odd indeed if a plaintiff included in a Complaint allegations that would establish a basis for finding discretionary act immunity on the part of government defendants." *Id.* at 640; *see Elton v. Cty. of Orange*, 3 Cal. App. 3d 1053, 1058 (1970) (explaining that the required showing of balancing the risks and advantages could not have been made by the county at the demurrer stage); *Uriarte v. Bostic*, No. 15cv1606-MMA (PCL), 2017 WL 2312084, at *9, (S.D. Cal. May 26, 2017) ("[T]he Ninth Circuit has indicated that it may be inappropriate for courts to find discretionary act immunity applies at the pleadings stage.").

In this case, Plaintiff's allegations do not establish that Piedra made a discretionary decision that consciously balanced the risks and benefits of different alternatives. *See AE ex. rel Hernandez*, 666 F. 3d at 640 (concluding that "the County was not entitled to a dismissal of AE's derivative liability claims on the basis of discretionary act immunity for the allegedly negligent placement and supervision of [a foster child] by [defendant government social workers]"). Plaintiff alleges that Piedra failed to administer a background check (*FAC* ¶¶ 84, 85, 87, 88) and failed to protect Plaintiff from a foreseeable risk of harm (*FAC* ¶ 89) but does not allege any facts regarding Piedra's decision-making. As such, there are no facts upon which the Court can analyze to determine whether Piedra consciously balanced risks and advantages. The Court therefore finds that Defendants have not established that they are entitled to immunity from Plaintiff's negligent hiring claim at this stage in the proceedings.

Based on the foregoing, Defendants' motion to dismiss Plaintiff's second cause of action is **DENIED**.

22-cv-00526-W-KSC

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### C.    Seventh and Eighth Causes of Action: Labor Code § 6310 & Labor Code § 1102.5

#### 1.    Compliance with Cal Gov. Code §§ 910 and 945.4

Defendants ask the Court to revisit its earlier ruling holding that Plaintiff adequately stated a claim for violations of Labor Code § 6310 and Labor Code § 1102.5, arguing again that Plaintiff failed to comply with Cal. Gov. Code sections 910 and 945.4 before filing this lawsuit.  (*Mot.* at 29-31.)  The Court again disagrees.

The California Government Code provides that, subject to statutory exceptions inapplicable here, "no suit for money or damages may be brought against a public entity on a cause of action for which a claim is required to be presented [to the public entity] until a written claim therefor has been presented to the public entity...."  CAL. GOV. CODE § 945.4.  Section 910 prescribes the information that the claim must contain, requiring that the claimant set forth: "(c) The date, place and other circumstances of the occurrence or transaction which gave rise to the claim asserted. [¶] (d) A general description of the ... injury, damage or loss incurred ... [¶] (e) The name or names of the public employee or employees causing the injury ... if known."  CAL. GOV. CODE § 910.

According to the California Supreme Court, the purpose of the claim is to present sufficient detail "to reasonably enable the public entity to make an adequate investigation of the merits of the claim and to settle it without the expense of a lawsuit."  *City of San Jose*, 12 Cal. 3d at 456.  "The claim [] need not specify each particular act or omission later proven to have caused the injury."  *Stockett v. Ass'n of Cal. Water Agencies Joint Powers Ins. Auth.*, 34 Cal. 4th 441, 447 (2004).

California recognizes the doctrine of "substantial compliance" with respect to the claim presentation requirement.  *See State v. Superior Court*, 32 Cal. 4th 1234, 1245 (2004).  Under the doctrine of substantial compliance, "two tests shall be applied: [1] Is there *some* compliance with *all* of the statutory requirements; and, [2] if so, is this compliance sufficient to constitute *substantial* compliance."  *City of San Jose v. Superior Court*, 12 Cal. 3d 447, 456-57 (1974) (emphasis in original).

22-cv-00526-W-KSC

Plaintiff's claim [Exhibit 4 to FAC] (the "Claim") satisfies sections 910 and 945.4. The Claim states the date and time of the injury, names the persons he believed responsible (Piedra, Johnson, and Former Director of Human Resources, Teri Brownlee), and generally details the "circumstances" (§ 910, subd. (c)) of Plaintiff's termination. Specifically, Plaintiff stated that the city failed to conduct a "POST background which would have demonstrated that Chief Johnson had a pattern of retaliating against subordinate employees who have engaged in protected activity exposing Claimant to a foreseeable risk of harm" (Claim at p. 1), that he "had complained of retaliatory adverse employment actions[,] (Claim at p. 3), and that the city failed to remedy the environment proximately causing harm to his career" (Claim at p. 3). These descriptions informed the city that Plaintiff believed he had been retaliated against for engaging in protected activity, notifying the city of the present retaliation causes of action under sections 6310 and 1102.4.

Defendants argue that Plaintiff's causes of action are a complete "shift" from the allegations in the Claim because they contain allegations regarding unsafe working conditions, inadequate safety precautions, and violations of safety protocols regarding Covid-19 (*FAC* ¶¶ 120-121, 128-129) that are not included in the Claim. A complaint should be barred only when there has been a "*complete* shift in allegations, usually involving an effort to premise civil liability on acts or omissions committed *at different times* or *by different persons* than those described in the claim[.]" *Stockett*, 34 Cal. 4th at 447 (citing *Blair v. Superior Ct.*, 218 Cal. App. 3d 221, 226 (Ct. App. 1990)) (emphasis added). When a complaint merely elaborates or adds further detail to a claim but is predicated on the same fundamental actions or failures to act by the defendants, the cause of action should generally not be barred. *Id.*

Plaintiff's causes of action do not shift liability to other parties nor premise liability on acts committed a different times or places. *See Stockett*, 34 Cal. 4th at 448; *Fall River v. Superior Court*, 206 Cal. App. 3d 431, 433-34 (1998). To the contrary, the allegations in the FAC track with what Plaintiff stated in his Claim. The FAC alleges that

Defendants were responsible for the harm resulting from the alleged violations (*see FAC* ¶¶ 120, 122, 129); the Claim named Piedra, Johnson, and El Centro's HR Director as the persons involved in his alleged injury.  The FAC alleges that Defendants "retaliated against [Plaintiff] and discharged him on account of his complaints that Defendants had not followed appropriate officer safety protocols" (*FAC* ¶ 129; *see also* ¶ 122 (alleging that he was discharged "on account of his health and safety complaints regarding the lack of officer safety protocols")); the Claim stated Plaintiff lost his career at the El Centro police department (i.e., discharge) and that he "had complained of retaliatory adverse employment actions [that] the city failed to remedy[.]"  The additional specific details in the FAC regarding the health and safety complaints do not constitute a "shift" from the allegations in the Claim—they elaborate on and add further detail to the claim but do not change the original fundamental actions by the Defendants.

At bottom, the Plaintiff's Claim provided El Centro sufficient information to enable it to adequately investigate the claims, which is the purpose of the claim presentation requirements.  *See City of San Jose*, 12 Cal. 3d at 455; *Stockett*, 34 Cal. 4th at 446.  Plaintiff's Claim specifically stated that he "had complained of retaliatory adverse employment actions" and mentioned that he was exposed to "a foreseeable risk of harm" due to Chief Johnson's "pattern and practice of retaliating against subordinate employees who engaged in protected activity[.]"  These claims of retaliation for engaging in protected activity can reasonably read to encompass the health and safety complaints detailed in the FAC.  Any reasonable investigation of Plaintiff's Claim would have necessarily involved an inquiry into the alleged retaliation and the reasons for the retaliation.  Since an inquiry into the alleged retaliation would have involved an investigation into the reasons for the retaliation (at least in part, Plaintiff's health and safety complaints), Plaintiff's Claim gave El Centro notice sufficient for it to investigate and evaluate the claims that now form the basis of these causes of action.  The Court is persuaded that Plaintiff's Claim satisfies California's claim presentment statutes.

22-cv-00526-W-KSC

1

## 2.   Section 6310 Immunity

2

Defendants further challenge Plaintiff's seventh cause of action on the basis that

3 public entities are immune from such claims.  (*Mot.* at 31.)  Defendants' only cited

4 authority is *Donoho v. Cnty. of Sonoma*, No. 15-CV-01392-WHO, 2015 WL 3866228

5 (N.D. Cal. June 22, 2015), an unpublished District Court decision.  *Donoho,* in turn,

6 relies on *Miklosy v. Regents of Univ. of California,* 44 Cal. 4th 876, 188 P.3d 629 (2008)*,*

7 arguing that *Miklosy* barred section 6310(a) claims against public entities.  Other courts

8 have not read *Miklosy* so broadly.  *See Creighton v. City of Livingston,* 628 F. Supp. 2d

9 1199 (E.D. Cal. 2009); *Doe v. Cal. State Senate*, Cal. Super LEXIS 31116 (2018)

10 ("While Government Code § 815(a) may prohibit a wrongful termination claim against a

11 public entity … Defendants have not presented any binding legal authority indicating

12 *Miklosy* has been expanded to preclude a statutory claim against a public entity brough

13 pursuant to § 6310"); *see also Sargent v. Bd. of Trustees of California State Univ.*, 61

14 Cal. App. 5th 658, 665 (2021) (reversing the jury's decision in part but not disturbing the

15 jury's findings on section 6310 claim against a public entity).

16

In *Creighton v. City of Livingston*, the court addressed multiple causes of action

17 against the City of Livingston, a public entity.  The plaintiff brought one claim pursuant

18 Cal. Labor. Code § 6310(a) and a separate common law tort claim for wrongful

19 termination in violation of public policy.  628 F. Supp. 2d at 1223-1224.  The court

20 ultimately held that *Miklosy* barred the common law tort claim but, conversely, decided

21 the section 6310(a) claim on its merits.  *Id.*

22

The Court agrees with *Creighton's*, *Cal. State Senate's*, and *Sargent*'s reading that

23 *Miklosy* bars only common law tort liability claims against public entities and allows

24 statutory claims to proceed.  The court in *Miklosy* did not directly address section 6310(a)

25 claims and a plain reading of *Miklosy* does not preclude statutory claims brought under

26 that section.

27

28

### 3.    Sufficiency of the Section 1102.5 Allegations

Finally, Defendants assert that Plaintiff's eighth cause of action fails because Plaintiff's complaint does not satisfy Cal. Labor Code § 1102.5.  (*Mot.* at 31.) Defendants assert that Plaintiff was required to provide a specific rule or regulation that he believed Defendants were in violation of and Plaintiff failed to do so.  (*Id.*)

Under section 1102.5, an employer may not retaliate against an employee when the employee reports information and has reasonable cause to believe that the information discloses a violation of state or federal statute or of a local, state, or federal rule or regulation, regardless of whether disclosing the information is part of the employee's job duties.  *Killgore v. SpecPro Professional Services*, *LLC*, 51 F. 4th 973, 986 (9th Cir. 2022).  "[T]he employee must be able to point to some legal foundation for his suspicion—some statute, rule or regulation which may have been violated by the conduct he disclosed."  *Ross v. County of Riverside*, 36 Cal. App. 5th. 580, 592 (2019) (quoting *Fitzgerald v. El Dorado County*, 94 F. Supp. 3d 1155, 1172 (E.D. Cal. 2015).

Plaintiff states that he was "whistleblowing" because he believed El Centro was not following CDC regulations with regards to COVID-19 safety and N-95 masks.  (*FAC* ¶ 128.)  The relevant question therefore is whether "CDC regulations" qualifies as a "state or federal statute or of a local, state, or federal rule or regulation" and thus satisfies the requirements of Cal. Labor Code § 1102.5.

In *Rodriguez v. Lab'y Corp. of Am.*, No. CV2100399MWFJCX, 2022 WL 4597420 (C.D. Cal. Aug. 25, 2022), a Central District of California court agreed that complaints about failing to follow "CDC regulations" were sufficient to form the basis of a 1102.5 claim.  In *Rodriguez*, the court considered a section 1102.5 claim on a motion for summary judgment.  *Id.*  The basis of that claim was a workplace complaint in which the employee was concerned that CDC regulations were not being followed.  *Id.*  Although the claim failed on other grounds, the court's consideration of the motion for summary judgment tacitly declared that CDC regulations qualify as "local, state, or federal rules or regulations" sufficient to form the basis of a section 1102.5 claim.

15

The Court agrees with that assessment. The statute does not state that a plaintiff is required to name a specific statute or regulation and Defendants cite no authority to support that stringent reading of section 1102.5.

For the reasons stated above, the Court **DENIES** Defendants' motion to dismiss as to the seventh and eighth causes of action.

### D.   Ninth Cause of Action: Violation of 42 U.S.C. § 1983 First Amendment Retaliation

In the Court's prior order, the Court dismissed Plaintiff's 42 U.S.C. § 1983 First Amendment Retaliation claim against El Centro because Plaintiff failed to allege sufficient facts as to "Piedra's or Johnson's final policy-making authority," and "whether Piedra had actual knowledge of the alleged violation of constitutional rights or whether Piedra 'approve[d] the subordinate's decision and the basis for it.'" (*Order on First Mot. to Dismiss* [Doc. 18]).  In the FAC, Plaintiff adds new allegations, which it avers contain the necessary facts to satisfy the requirements for a claim under Monell liability.  (*See FAC* ¶¶ 132-145).  Defendants argue that Plaintiff's new allegations still fail to state a claim for § 1983 First Amendment Retaliation against El Centro and Piedra.  (*Mot.* at 32.)

#### 1.   El Centro's Monell Liability

Defendants contend El Centro is not liable under a Monell theory because she did not have final policymaking authority over personnel decisions.  Monell liability can be demonstrated through "decisions of a final policy-making official who commits the federal law violation himself or ratifies the unlawful act of a delegate." *Lytle v. Carl*, 382 F. 3d 978, 986 (9th Cir. 2004).  A plaintiff must establish that a municipal employee bearing "final policy-making" authority ratified the violation of the plaintiff's constitutional rights with actual knowledge of the violation. *Christie v. Iopa*, 176 F. 3d. 1231, 1239 (9th Cir. 1999).

"Whether a particular official has final policy-making authority is a question of state law," determined by the judge, not the jury. *Gillette v. Delmore*, 979 F.2d 1342,

1346 (9th Cir. 1992).  The court must first "identify the particular area or issue for which the official is alleged to be the final policymaker." *Cortez v. Cty. of Los Angeles*, 294 F. 3d 1186, 1189 (9th Cir. 2002) (citing *McMillian v. Monroe Cty.*, 520 U.S. 781, 785 (1997)).  Next, the court must "analyze state law to discern the official's actual function with respect to that particular area or issue." *Id.*  Courts consider whether the official's discretionary decisions are "constrained by policies not of that official's making" and whether the official's decisions are 'subject to review by the municipality's authorized policymakers." *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988); *see also Christie*, 176 F. 3d at 1237.  Courts look to applicable state laws and regulations to determine if the defendant is a final policymaker.  *See Lytle*, 382 F. 3d 978; *Ellins v. City of Sierra Madre*, 710 F. 3d 1049, 1066 (9th Cir. 2013).  In the Ninth Circuit, "local ordinances and regulations" can establish that a city manager "possesses final policymaking authority over police employment decisions." *Ellins v. City of Sierra Madre*, 710 F. 3d 1049, 1066 (9th Cir. 2013).

Defendants argue that the City Council, not Piedra, had final policymaking authority under the El Centro City Charter[3] and that Piedra was merely exercising discretion within the confines of the City Council's authority.  (*Mot.* at 33-34.) Defendants contend that "the determination of who is a municipal policymaker is a question of law, which is determined by the City's Charter." (*Mot.* at 33.)  The City Charter states that the "City Council will establish the policy of the City and the City Manager will carry out that policy." (*City Charter, Article 2, Form of Government*.)

Plaintiff's response is that Piedra's policymaking authority lies within the non-limiting enumerated powers of the City Manager granted by El Centro Municipal Code sections 2-53, 2-56, 2-57, 2-81 and 2-82.  (*Opp. to Mot.* at 18.)  Plaintiff argues that Piedra was the final policymaker over city personnel because the enumerated powers of

---

[3] The Court grants Defendants' Request for Judicial Notice filed concurrently with the Motion and hereby takes judicial notice of the City Charter, attached as Exhibit 1 to the Request for Judicial Notice.

17

the City Manager give Piedra the authority to "control, order, and give directions to all heads of departments and to subordinate officers and employees of the City," and "appoint, discipline, remove, promote and demote any and all officers and employees of the City[.]"  (*FAC* ¶ 133; *see* El Centro Mun. Code § 2-82.)  Additionally, the City Manager serves as the Chief Executive Officer advisor on policy, is responsible for serving as "Ex Officio Personnel Officer," prepares personnel rules and policies, and oversees appointments and separation of employment.  (*Opp. to Mot.* at 17; *see* El Centro Mun. Code § 2-53, 2-56, 2-57.)

Plaintiff argues that these ordinances are nearly identical to the ordinances in *Ellins v. City of Sierra Madre*, which "establish[ed] that [the] city manager…possesse[d] final policymaking authority over police employment decisions."  *Ellins*, 710 F. 3d at 1066.  In *Ellins*, the city enacted municipal codes delegating to the City Manager the "authority to control, order, and give directions to all heads of departments and to subordinate officers and employees of the city" and giving the City Manager the power to "appoint, discipline, remove, promote, and demote any and all officers and employees of the city except the city clerk, city treasurer, or city attorney[.]"  710 F. 3d at 1066.  These provisions were reinforced by charging the city manager with administering the city's personnel rules.  *Id.*  The provisions here are the same.  Just like the city manager in *Ellins*, Piedra was granted the authority to "control" all officers and employees of the city and the power to "appoint, discipline, and remove" all officers and employees of the city (with some exceptions not applicable here).  *See* El Centro Mun. Code § 2-82.

Defendants do not point to any policy limitations on these powers or any provisions stating these powers were subject to review by the City Council.  Defendants contend that, while Section 2-82 of the Code enumerates to the city manager a number of powers and duties in addition to their status as head of the City government, it does not specify the authority to make policy.  (*Mot.* at 33:5-6.)  However, because Section 2-82 of the Code explicitly states that these enumerated powers do not serve as a limitation on the city manager's authority and duties, this argument is not convincing.  In other words,

18

Section 2-82 granted powers without "constrain[ing ]the powers] [with] policies not of" the City Manager's making. *See Praprotnik*, 485 U.S. at 127.    Moreover, the Court is not aware of anything indicating that Piedra's personnel decisions were, indeed, reviewed by the City Council.  Piedra had the authority to determine when and how employees would be disciplined or removed, which is the City's personnel policy; she was making decisions without limits or confines on her authority, which means these decisions were not merely discretionary.  Taken together, this establishes that the Piedra had final policymaking authority of the personnel decisions at issue in this case.

The case cited by Defendants, *Gillette v. Delmore*, 979 F.2d 1342, 1348 (9th Cir. 1992), does not support Defendants' position.  Addressing the question of a fire chief's authority over the city's employment policy, the *Gillette* court found that the fire chief's authority to hire and fire employees was merely "discretionary" because it was limited by the applicable municipal law (the city charter and city ordinances) giving policymaking authority to the city manager and city council.  979 F.2d at 1348.  Here, on the issue of authority over city personnel, there is no applicable municipal law suggesting that Piedra's authority was limited or subject to review in any way.  The only thing that could possibly be interpreted as limiting Piedra's authority in this case is the City Charter's reference to the City Council making policy, which Defendants argue is analogous to the "applicable municipal law" in *Gillette*.  But this argument ignores the El Centro Municipal Code and suggests that a single, general reference to "policy" forecloses the question of final policymaking authority over the specific area at issue in this case.  The Court elects to include the municipal code in its analysis and does not agree that the City Charter grants policymaking authority over personnel policy.  The City Charter's broad reference to "policy" did not constrain Piedra's authority or operate as a limitation in any way.  Even if the Court agreed that the City Charter provision does grant the City Council policymaking authority over personnel, the Court would find that the City Council delegated this policymaking authority to the City Manager when it enacted the municipal codes without any limits or guidance within which the City Manager had to operate.

For the reasons stated above, the Court finds that Piedra was the final policymaker over city personnel.

## 2. First Amendment Claim Against Piedra

Defendants also argue that the First Amendment claim fails because Plaintiff did not speak on a "matter of public concern."  In evaluating a public employee's First Amendment retaliation claim, the Ninth Circuit "uses a sequential five-step series of questions… (1) whether the plaintiff spoke on a matter of public concern; (2) whether the plaintiff spoke as a private citizen or public employee; (3) whether the plaintiff's protected speech was a substantial or motivating factor in the adverse employment action; (4) whether the state had an adequate justification for treating the employee differently from other members of the general public; and (5) whether the state would have taken the adverse employment action even absent the protected speech." *Gibson v. Off. of Atty. Gen., State of California*, 561 F. 3d 920, 925 (9th Cir. 2009) (quoting *Eng v. Cooley*, 552 F. 3d 1062, 1070 (9th Cir. 2009)).  Defendants' only argument is that Plaintiff did not speak on a matter of public concern, so the Court will address only that element.

Speech involves a matter of public concern when, "based on the content, form, and context of a given statement," it relates to "any matter of political, social, or other concern to the community." *Desrochers v. City of San Bernardino*, 572 F. 3d 703, 709 (9th Cir. 2009) (internal quotations and citations omitted); *Connick v. Myers*, 461 U.S. 138, 146 (1983).  The Ninth Circuit has "not articulated a precise definition of public concern." *Desrochers,* 572 F. 3d at 709 (internal quotations and citations omitted).  However, "[t]his circuit and other courts have defined public concern speech broadly to include almost *any* matter other than speech that relates to internal power struggles within the workplace." *Tucker v. State of Cal. Dep't of Educ.*, 97 F. 3d 1204, 1210 (9th Cir. 1996) (emphasis in original).  Whether speech involves a matter of public concern is purely a matter of law. *Gibson*, 561 F. 3d at 925 (citations omitted).  The plaintiff "bears the burden of showing that the speech addressed an issue of public concern," *Eng*, 552 F.

3d at 1070, based on "the content, form, and context of a given statement, as revealed by the whole record[.]" *Connick*, 461 U.S. at 147–48.

### a) *Content*

"First and foremost, we consider the content of the speech[.]" *Weeks v. Bayer*, 246 F. 3d 1231, 1234 (9th Cir. 2001). "[T]o address a matter of public concern, the content of the… speech must involve 'issues about which information is needed or appropriate to enable the members of society to make informed decisions about the operation of their government.'" *Desrochers*, 572 F. 3d at 710 (citations omitted).

Plaintiff argues that he was engaged in protected speech related to matters of public concern by reporting Johnson was discriminating against women, and that Johnson and police management failed to protect the health and safety of its officers due to its insufficient COVID-19 protocols. (*Opp.* at 20.) Plaintiff also contends that he was berated and humiliated by Johnson's loud, inappropriate, and vulgar language. (*FAC* ¶ 25.)

When speech "relates to internal power struggles within the workplace," it generally does not rise to the level of public concern. *Tucker*, 97 F. 3d at 1210. In *Desrochers*, two members of the San Bernardino Police Department filed suit against the city under 42 U.S.C. § 1983 after one officer was transferred and the other was subjected to a disciplinary action. 572 F. 3d at 703. The court affirmed the district court's grant of summary judgment, reasoning the officers' complaints, which mentioned the competency, preparedness, efficiency, and morale of the police department, did not address a matter of public concern because "a simple reference to government functioning [does not] automatically qualif[y] as speech on a matter of public concern." *Id.* at 710-711. Some of Plaintiff's complaints here—his complaints of Johnson's choice of language—involve a private matter because they merely expressed dissatisfaction with Johnson's management style. *See Desrochers*, 572 F. 3d at 713-714.

But our analysis does not conclude simply because *some* of Plaintiff's complaints involve private matters.  In *Robinson v. York*, a police sergeant filed suit against El Centro and several of its officers alleging a civil rights complaint under 42 U.S.C. § 1983 after he was denied a promotion because he reported department misconduct.  566 F. 3d 817, 820 (9th Cir. 2009).  The court analyzed each of the plaintiff's reports, finding that some "clearly addressed" matters of public concern—such as police misconduct, whether the misconduct was being investigated, and the plaintiff's testimony in a class action against the county—while others "addressed individual personnel disputes, not matters of public concern."  *Id*. at 823.

Additionally, in *McKinley v. City of Eloy*, a police officer publicly criticized the city's decision not to give its officers an annual raise.  705 F. 2d 1110, 1112 (9th Cir. 1983).  The police officer then filed suit against his employer, a police department, for violating 42 U.S.C. § 1983 after he was fired.  *Id*.  Though the court acknowledged that compensation rates may be an internal issue, the court nevertheless found that the plaintiff's speech was protected, reasoning that "compensation levels undoubtedly affect the ability of the city to attract and retain qualified police personnel, and the competency of the police force is surely a matter of great public concern."  *Id*. at 1114.

Here, similar to *Robinson* and *McKinley*, Plaintiff's complaints concern both public and private matters.  The COVID-19 protocols implemented by the police department that resulted in the death of an officer certainly involves an issue "about which information is needed or appropriate to enable the members of society to make informed decisions about the operation of their government."  *Desrochers*, 572 F. 3d at 710 (citations omitted).  Unlike the claims in *Desrochers*, which primarily concerned police department morale and efficiency, Plaintiff's speech rises to a level beyond "a simple reference to government functioning" because it implicates the physical safety of police officers.  Additionally, whether Johnson, as chief of police, discriminates against women certainly has "wider societal implications," *Desrochers, *572 F. 3d at 717 (quoting *Roe v. City and County of San Francisco*, 109 F. 3d 578, 586 (9th Cir. 1997)) and

involves more than a "passing reference[] to public safety, incidental to the message conveyed." *Id.* at 711.

Citing to Exhibit 4 to the *FAC*, Defendants argue that Plaintiff did not report any improper treatment of female employees nor of a failure to implement proper COVID-19 procedures. Defendants are correct that Exhibit 4 does not include specific reference insufficient COVID-19 protocol in his external reports. But in Plaintiff's first three exhibits, he does allege retaliation based on his previous reports of discrimination and harassment. Moreover, the FAC indicates that when Plaintiff formally placed his written complaints with the Director of Human Resources, he included the retaliation claims based both on his previous reports of Johnson's conduct as well as his concerns over officer safety violations that contributed to an officer's death. (*FAC* ¶ 49.)

Because the speech at issue involved conduct that would guide the general public's opinion of how their police department functions, this portion of the *Connick* test supports a finding of public concern.

### b) *Form*

Turning to the form of the speech, whether the speech was made publicly is a factor this Court must consider—though it is not dispositive. *See Garcetti v. Ceballos*, 547 U.S. 410, 420 (2006) ("[t]hat [plaintiff] expressed his views inside his office, rather than publicly, is not dispositive.").

The Ninth Circuit has recognized that "[i]n a close case, when the subject matter of a statement is only marginally related to issues of public concern, the fact that it was made … to co-workers rather than to the press may lead the court to conclude that the statement does not substantially involve a matter of public concern." *Johnson v. Multnomah County, Or.*, 48 F. 3d 420 (9th Cir. 1995).

However, the Ninth Circuit has also recognized "[i]n the context of 'good-faith whistleblowing' involving reports within a government department rather than to the public, the breadth of one's audience is irrelevant because it would be absurd to extend First Amendment protection only to those whistleblowers who immediately appear on the

23

local news." *Robinson*, 566 F. 3d at 824 (quoting *Hufford v. McEnaney*, 249 F. 3d 1142, 1150 (9th Cir. 2001)) (internal quotations omitted).

Plaintiff contends he filed several complaints regarding retaliation internally, as well as externally with the Department of Fair Employment and Housing, and Labor Commission. (*Opp.* at 20.) Plaintiff's complaints were never explicitly made public, and the Department of Fair Employment and Housing declined to investigate the claims due to insufficient evidence.

Defendants argue that Plaintiff's complaints did not relate to a matter of public concern because, though they involved discrimination against female employees and command staff failure to follow proper procedures to protect high-risk officers from COVID-19, the complaints were made within the confines of Plaintiff's employment. (*Mot.* at 35.) In making this argument, Defendants seem to acknowledge that the content matter of Plaintiff's allegations rise to the level of a matter of public concern, and instead focus on the form of the complaints, and the limited audience they received. As the Supreme Court stated in *Garcetti*, that a plaintiff's speech is not directly made to the public is not dispositive in determining whether the speech was made pursuant to a matter of public interest. *See Garcetti*, 547 U.S. at 420.

Here, though Plaintiff's complaints were primarily made internally, the complaints at issue were formally made to the Director of Human Resources, as opposed to the remark made to a co-worker in *Johnson*. Additionally, by filing multiple complaints with external State of California departments, Plaintiff did not confine his complaints solely to an internal setting. As such, this prong of the *Connick* test also supports a finding of public concern.

### c)      *Context*

The final consideration in determining whether speech relates to a matter of public concern involves a contextual inquiry. "In other words, why did the employee speak …?" *Desrochers,* 572 F. 3d at 715. In doing so, the Ninth Circuit has looked at whether

the plaintiffs' speech had "altruistic motivation," or if it was motivated by "a personal vendetta." *Id*.

The Ninth Circuit has recognized that reports involving internal personnel matters can still be protected by the First Amendment if they pertain to the discriminatory treatment of colleagues. *See Robinson*, 566 F. 3d at 823 (explaining that "[r]eports pertaining to others, even if they concern personnel matters including discriminatory conduct, can still be 'protected under the public concern test'"); *see also Cochran v. City of Los Angeles,* 222 F. 3d 1195, 1207 (9th Cir. 2000) (holding that two police sergeants' speech was a matter of public concern even though it "focused on one employee and not addressed directly to the public," because it involved "matters which are relevant to the public's evaluation of its police department.").

In *Desrochers*, the plaintiffs' allegations contended that their superior was "controlling," "critical," and "manipulative." The court concluded that, while there appeared to be some altruistic motive behind the complaints, the plaintiffs ultimately "were motivated by their dissatisfaction with their employment situation brought on by a difference of personalities." 572 F. 3d at 715. The court reasoned that the "ultimate source of the grievances can be traced to the simple fact that the [parties] did not get along." *Id.* at 716.

Here, Plaintiff's complaints regarding the treatment of female employees as well as his concern over individuals at high-risk of contracting serious COVID-19 complications were inherently altruistic. Plaintiff also contends that at least two people quit as a result of Johnson's behavior—Executive Commander Alvaro Ramirez and the Director of Human Resources. As in *Robinson* and *Cochran*, Plaintiff's speech addresses the disparate treatment of his colleagues, which has been recognized as relevant to the public's evaluation of its police department.

The context in *Desrochers* is distinguishable based on the gravity of the allegations. Here, the FAC shows Plaintiff and Johnson initially got along. (*FAC* ¶ 22.) As time passed, and, notably, after Plaintiff had made comments to Johnson regarding his

treatment of the female staff, Plaintiff complained of feeling accosted, attacked, discredited, and isolated in the workplace.  Plaintiff further contends that Johnson interfered with and generated false investigations against Plaintiff.  These allegations are more serious and have less to do with differences in personalities than the allegations at issue in *Desrochers*.  Because the context of Plaintiff's speech is attributable to altruistic motives and not mere "dissatisfaction with [his] employment situation," this portion of the *Connick* test supports a finding of public concern.

Based on the content, form, and context of Plaintiff's speech, the Court concludes that Plaintiff has met his burden to demonstrate that the speech at issue related to a matter of public concern.  Defendants' motion to dismiss the ninth cause of action is **DENIED**.

## IV.   CONCLUSION & ORDER

For the foregoing reasons, the Court **GRANTS** Defendants' motion to dismiss [Doc. 27] as to the first cause of action **WITHOUT LEAVE TO AMEND** and **DENIES** the motion as to the other causes of action.

**IT IS SO ORDERED.**

Dated:  February 8, 2023

_____
Hon. Thomas J. Whelan
United States District Judge

22-cv-00526-W-KSC